**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| RADIOSHACK CORPORATION, *et al.*, | : | Case No. 15-10197 (BLS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **RE: D.I. 52 & 65** |
| | : | |

**LIMITED RESPONSE OF STANDARD GENERAL L.P.**
**TO PRELIMINARY OBJECTION OF CERTAIN SCP LENDERS**
**TO DEBTORS' DIP FINANCING MOTION**

Standard General L.P. ("Standard General") hereby submits this limited response to the Preliminary Objection of Cerberus Levered Loan Opportunities Fund II, L.P., Cerberus NJ Credit Opportunities Fund, L.P., and Cerberus ASRS Holdings LLC (collectively, "Cerberus") to Debtors' DIP Financing Motion (D.I. 65) (the "Cerberus Objection"). As a DIP Lender and Pre-Petition ABL Lender, Standard General supports Debtors' DIP Financing Motion (D.I. 52) and responds in order to correct mischaracterizations of fact in the Cerberus Objection with respect to Standard General.[1]

Standard General, directly or through its affiliates, has stepped in to provide financing and liquidity for the Debtors at two crucial junctures: first, to support their turnaround efforts during a liquidity crisis in October 2014 in advance of the holiday shopping season, and then again upon filing of these Chapter 11 cases, as a DIP Lender and Stalking Horse bidder. Neither those facts nor any other assertions in the Cerberus Objection support Cerberus's contention that Standard General is an "insider" or benefitted unfairly in connection with the ABL or DIP Credit

---

[1] All capitalized terms used herein and not defined have the meanings set forth in the proposed Interim Order and the Declaration of Carlin Adrianopoli in Support of First Day Pleadings (D.I. 17) ("Adrianopoli Decl.").

Agreements.  Indeed, assertions of insider status are irrelevant because both the ABL and DIP Credit Agreements and the Recapitalization and Investment Agreement were on fair, arm's-length terms consistent with market practice.  Nevertheless, Standard General submits this response to correct Cerberus' mischaracterization of the record.

It is undisputed that neither Standard General nor any of its affiliates is a director, officer, or general partner of RadioShack, or that any of the Debtors is a general partner of Standard General or any of its affiliates.  Instead, Cerberus contends that Standard General is an "insider" because it: (i) is a substantial lender to the Debtors under the 2013 Credit Agreement; (ii) "holds approximately 10% of the Debtors' common stock"; and (iii) "has *de facto* control over the Debtors by virtue of the broad range of powers granted to Standard General" under the Recapitalization and Investment Agreement.  *See* Cerberus Objection at 7.  None of these arguments is accurate or has merit.

*First*, GRH and its finance subsidiary, GRF, acquired the existing interests in the 2013 Credit Agreement.  An affiliate of Standard General is the general partner of GRH but Standard General is not GRH's sole investor.  *See, e.g.,* Adrianopoli Decl. ¶ 27.  In any event, lenders are not insiders *per se*, and neither GRH nor Standard General has the "high level of control" required to support a finding of insider status.  *In re Champion Enters.*, Case No. 09-14014 (KG), 2010 Bankr. LEXIS 2720 at *18, 23 (Bankr. D. Del. Sept. 1, 2010) (citation omitted) (dismissing allegations that lender defendants were statutory or nonstatutory insiders as "indicative of nothing more than a normal distressed-borrower/lender relationship").

*Second*, Standard General owns less than 10% of RadioShack's outstanding common stock.  *See, e.g.,* Adrianopoli Decl. ¶ 27.  This level of stock ownership does not provide Standard General with any indicia of control.  Moreover, the Bankruptcy Code provides that an

entity must "directly or indirectly own, control or hold with power to vote" 20% or more of the debtor's voting securities to constitute an "affiliate" and therefore an "insider." 11 U.S.C. § 101(2). Neither Standard General nor any entity affiliated with it could be considered an "insider" based on stock ownership.

*Third*, Standard General's affiliate, GRH, does have certain rights under the Recapitalization and Investment Agreement but they were the subject of extensive negotiation, remain largely unexercised, and are focused on financial controls. In any event, lenders are not insiders per se, and neither GRH nor Standard General has the high level of control required to support a finding of insider status. *See In re Winstar Commc'ns*, 554 F.3d 382, 396 (3d Cir. 2009) ("actual control (or its close equivalent) is necessary for a person or entity to constitute an insider under § 101(31)'s 'person in control' language."). *See also id.* at 396 & n.5 (noting the application of this standard by the court below, which found that "[th]ere must be day-to-day control, rather than some monitoring or exertion of influence regarding financial transactions in which the creditor has a direct stake") (quoting 348 B.R. 234, 279 (Bankr. D. Del. 2005) (citation omitted)).

Under the Recapitalization and Investment Agreement, GRH had the right to propose a single director for appointment to RadioShack's board – but never exercised that right. The "transaction committee" formed pursuant to that Agreement provided a mechanism for GRH and RadioShack to coordinate discussions with respect to the progress of the turnaround plan, but played no management or control function. Although GRH could have become a majority shareholder of RadioShack if the potential rights offering had gone forward, the pre-conditions to conversion were never met.

3

*Finally*, in a further attempt to impugn Standard General, Cerberus drastically mischaracterizes the fees connected to the October 2014 transaction. Its claim that Standard General "extracted a $31.8 million fee" for the October 2014 transaction overstates the fee received by tens of millions of dollars and should not be credited.

Standard General does not dispute that it saw – and still sees – potential in RadioShack and backed that vision by stepping in with essential financing and liquidity, first through the GRH investment and again with the DIP financing and Stalking Horse bid. In each case, its investment involved taking on substantial risk to support the turnaround plan of an iconic company. It supports the Debtors and their Motion and disputes any efforts to mischaracterize the nature and extent of that support.

Dated: February 8, 2015
       Wilmington, Delaware      MORRIS, NICHOLS, ARSHT & TUNNELL LLP

            */s/ Gregory W. Werkheiser*
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
Matthew B. Harvey (No. 5186)
1201 North Market Street, Suite 1600
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

         and

DEBEVOISE & PLIMPTON LLP
Richard F. Hahn (admitted *pro hac vice*)
Shannon R. Selden (admitted *pro hac vice*)
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Facsimile: (212) 909-6836

         and

DLA PIPER
Gregg M. Galardi

1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel to Standard General*