## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| RADIOSHACK CORPORATION, *et al.*,[1] | ) |
|  | ) Case No. 15-10197 (BLS) |
| Debtors. | ) |
|  | ) Jointly Administered |
|  | ) **Related Docket Nos.: 52, 183** |

### ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN FINANCING ON AN INTERIM BASIS AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES ON AN INTERIM BASIS, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363(C), (D) & (E), 364(C), (D) & (E) AND 507(B), AND (V) SCHEDULING A FINAL HEARING AUTHORIZING FINANCING ON A FINAL BASIS PURSUANT TO BANKRUPTCY RULE 4001

Upon the motion (the "**Motion**"), dated February 5, 2015, of RadioShack Corporation, a

Delaware corporation ("**RadioShack**" also referred to as "**Borrower**"), and its affiliated debtors

("**Affiliate Debtors**", together with RadioShack, collectively the "**Debtors**" and each

individually the "**Debtor**") on behalf of the Debtors party to the DIP Financing Documents (as

defined below), each as a debtor and debtor-in-possession in the above-captioned chapter 11

cases (collectively, the "**Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3), 364(d), 364(e) and 507(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, et

seq. (the "**Bankruptcy Code**") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of Bankruptcy Practice

---

[1] The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417). The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things:

(1)      authorization and approval for the Borrower to obtain post-petition loans, advances and other financial accommodations (the "**Post-Petition Financing**") from the several financial institutions from time to time party to the DIP Credit Agreement (as defined below) as lenders (collectively, the "**DIP Lenders**") and Cantor Fitzgerald Securities LLC ("**Cantor**"), in its capacity as administrative agent (in such capacity, the "**DIP Agent**") for itself and on behalf of the DIP Lenders, under or in connection with the senior secured superpriority credit facility (the "**DIP Facility**"), (x) on an interim basis in an aggregate principal amount of up to $29,000,000, comprised of (a) New Money Loans (as defined below) in a principal amount of $10,000,000 and (b) letters of credit obligations not to exceed $15,000,000 pursuant to a letter of credit facility (any such letters of credit, together with any letters of credit issued under the Pre-Petition ABL Credit Agreement (as defined below) ("**Letters of Credit**") (additionally, in accordance with the DIP Credit Agreement, the Borrower may procure the issuance of new Letters of Credit under the DIP Facility for the purpose of renewing, replacing or otherwise extending, upon the expiration thereof, any letters of credit issued pursuant to the Pre-Petition ABL Credit Agreement (as defined below), provided that the obligations with respect to such new Letter of Credit are not greater than the obligations with respect to the Letter of Credit being renewed, replaced or extended), in all cases as described in this clause (x) as permitted under the DIP Financing Documents, the Budget attached hereto as **Exhibit 1** and this Interim Order, and (y) on a final basis in an aggregate principal amount up to $285,334,031, comprised of (a) an amount up to $20,000,000 in respect of new money funding (the "**New Money Loans**"), (b) Letters of Credit in an aggregate amount of up to $15,000,000, and (c) a dollar-for-dollar roll-up of up to $250,334,031 in respect of outstanding loan and letter of credit and related obligations

-2-

under the Credit Agreement dated as of December 10, 2013 (as amended, amended and restated, supplemented, or otherwise modified from time to time, the "**Pre-Petition ABL Credit Agreement**"), by and among RadioShack (the "**Pre-Petition ABL Borrower**"), certain subsidiaries of RadioShack designated as credit parties thereto, the several financial institutions party thereto (collectively, the "**Pre-Petition ABL Lenders**") and Cantor as successor to General Electric Capital Corporation, as the administrative agent (in such capacity, the "**Pre-Petition ABL Agent**") for the Pre-Petition ABL Lenders, in all cases as described in this clause (y) as permitted under the DIP Financing Documents, the Budget and any Final Order (as defined below);[2]

(2)   authorization for the Borrower, RadioShack Customer Service LLC ("**RCS**"), SCK, Inc. ("**SCK**"), Tandy Finance Corporation ("**TFC**"), RadioShack Global Sourcing Limited Partnership ("**RGSLP**"), TE Electronics LP ("**TELP**"), Ignition L.P. ("**ILP**"), TRS Quality, Inc. ("**TRSQ**"), RadioShack Global Sourcing Corporation ("**RGSC**"), Merchandising Support Services, Inc. ("**MSS**"), ITC Services, Inc. ("**ITCS**"), Tandy International Corporation ("**TIC**"), Tandy Holdings, Inc. ("**TH**"), and RadioShack Global Sourcing, Inc. ("**RGSI**" and together with RCS, SCK, TFC, RGSLP, TELP, ILP, TRSQ, RGSC, MSS, ITCS, TIC and TH, collectively, the "**Guarantors**") to enter into that certain Debtor-In-Possession Credit Agreement with the DIP Agent and the DIP Lenders, substantially in the form attached as Exhibit B to the Support Agreement (as defined below) (the "**DIP Credit Agreement**" and together with this order (the "**Interim Order**"), the Final Order (as defined

---

[2] The Pre-Petition ABL Credit Agreement and all other agreements, documents and instruments executed or delivered with, to, or in favor of the Pre-Petition ABL Agent and the Pre-Petition ABL Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with the Pre-Petition ABL Credit Agreement or related thereto, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date, are collectively referred to herein as the "**Pre-Petition ABL Financing Documents**".

-3-

below) and all the other agreements, documents and instruments to be executed or delivered in connection therewith, collectively, the "**DIP Financing Documents**");

(3)     the grant to the DIP Agent, for the benefit of itself and the other DIP Lenders, of superpriority administrative claim status pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code in accordance with the terms of this Interim Order;

(4)     authorization of the Debtors' use of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code derived from ABL Priority Collateral (as defined in the Intercreditor Agreement) (the "**Cash Collateral**"), which Cash Collateral is subject to a perfected security interest of the Pre-Petition ABL Secured Parties (as defined below) and the SCP Secured Parties (as defined below) and shall include the Debtors' cash and cash on deposit in any deposit account or securities account of the Debtors, but which shall exclude identifiable proceeds of Residual Accounts (as defined in the Intercreditor Agreement) and other SCP Priority Collateral;

(5)     the grant of adequate protection to each of the Pre-Petition ABL Lenders (together with the Pre-Petition ABL Agent, the "**Pre-Petition ABL Secured Parties**") under and in connection with the Pre-Petition ABL Financing Documents in accordance with the terms set forth herein;

(6)     the grant of adequate protection to Salus Capital Partners, LLC "**SCP**"), as agent (in such capacity, the "**SCP Agent**"), and each of the several financial institutions (the "**SCP Lenders**" and together with the SCP Agent, the "**SCP Secured Parties**") from time to time party to that certain Credit Agreement dated as of December 10, 2013 (as amended, restated, modified or supplemented from time to time, the "**SCP Credit Agreement**"), by and among RadioShack, certain subsidiaries of RadioShack designated as credit parties thereto, the SCP Agent and the SCP Lenders, and pursuant to which RadioShack obtained a term

-4-

loan in the original principal amount of $250,000,000 (the "**SCP Loan**") in accordance with the terms set forth therein;[3]

(7)     modification of the automatic stay to the extent hereinafter set forth and waiving the fourteen (14) day stay provisions of Bankruptcy Rule 6004(h); and

(8)     the setting of a final hearing on the Motion (the "**Final Hearing**") for entry of an order authorizing the financing and use of cash collateral on a final basis (the "**Final Order**").

Notice of the Motion, the relief requested therein, and the Interim Hearing (as defined below) (the "**Notice**") having been served by the Debtors in accordance with Bankruptcy Rules 4001(b) and (c) and the Local Rules on: (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) the Debtors' largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (iii) counsel to the Pre-Petition ABL Agent and the DIP Agent; (iv) counsel to the SCP Agent, (v) counsel to Wilmington Trust, N.A., in its capacity as the trustee under the indenture governing the unsecured notes; (vi) all landlords of the Debtors; (vii) any party known to the Debtors who hold any liens or security interest in the Debtors' assets who have filed UCC-1 financing statements against the Debtors, or who, to the Debtors' knowledge, have asserted any liens on any of the Debtors' assets; (viii) the Internal Revenue Service; and (ix) all parties entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "**Noticed Parties**").

The initial hearing on the Motion having been held by this Court on February 6, 2015 and continued on February 9, 2015 (the "**Interim Hearing**").

---

[3] The SCP Credit Agreement and all other agreements, documents and instruments executed or delivered with, to, or in favor of the SCP Agent and the SCP Lenders, including, without limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection with the SCP Credit Agreement or related thereto, as all of

Upon the record made by the Debtors at the Interim Hearing, including the Motion, and the filings and pleadings in the Cases, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]:

       A.    Petition. On February 5, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition (each a "**Petition**") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

       B.    Jurisdiction and Venue. The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

       C.    Notice. Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing and the relief sought pursuant to this Interim Order, constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is required.

       D.    Debtors' Acknowledgments and Agreements. Without prejudice to the rights of any other party (but subject to the limitations contained in Section 5.1 below), each of the Debtors admits, stipulates, acknowledges and agrees that:

---

the same have heretofore been amended, supplemented, modified, extended, renewed, restated or replaced at any time prior to the Petition Date, are collectively referred to herein as the "**SCP Financing Documents**".

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact pursuant to Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Interim Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Interim Order to the extent non inconsistent herewith.

-6-

(i) <u>Pre-Petition ABL Financing Documents</u>. Prior to the commencement of the Cases, the Pre-Petition ABL Lenders made loans and provided letters of credit and other financial accommodations pursuant to the Pre-Petition ABL Financing Documents to the Pre-Petition ABL Borrower. RGSI, RCS, SCK, TFC, RGSLP, TELP, ILP, TRSQ, RGSC, MSS, ITCS, TIC and TH (collectively, the "**Pre-Petition ABL Guarantors**") guaranteed the obligations of the Pre-Petition ABL Borrower under the Pre-Petition ABL Credit Agreement pursuant to that certain Guaranty and Security Agreement executed by each of the Pre-Petition ABL Guarantors.

(ii) <u>Pre-Petition ABL Obligations Amount</u>. As of February 5, 2015, the Pre-Petition ABL Borrower and the Pre-Petition ABL Guarantors were justly and lawfully indebted and liable in the aggregate amount of all Obligations (as defined in the Pre-Petition ABL Credit Agreement) owing to the Pre-Petition ABL Secured Parties under and in connection with the Pre-Petition ABL Financing Documents, consisting of Term Loans, Term Out Revolving Loans and L/C Reimbursement Obligations outstanding under (and each as defined in) the Pre-Petition ABL Credit Agreement, in an amount of not less than $250,334,031 (the "**ABL Claim**"), plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto under the Pre-Petition ABL Credit Agreement (collectively, the "**Pre-Petition ABL Obligations**"). The Pre-Petition ABL Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Pre-Petition ABL Borrower and Pre-Petition ABL Guarantors, and enforceable in accordance with their terms, and no portion of the Pre-Petition ABL Obligations or any payments made to the Pre-Petition ABL Agent or any of the other Pre-Petition ABL Secured Parties or applied to the Obligations owing under the Pre-Petition ABL Financing Documents is subject to any offset, challenge,

-7-

objection, defense, counterclaim, avoidance, recharacterization or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law, and the Debtors and their estates do not possess and shall not assert any claim, counterclaim, right of recoupment, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability, priority and nonavoidability of any of the Pre-Petition ABL Obligations or any claim or cause of action, including, without limitation, "lender liability" causes of action or avoidance actions under chapter 5 of the Bankruptcy Code, against the Pre-Petition ABL Lenders or any of their respective affiliates arising out of, based upon or related to the Pre-Petition ABL Financing Documents or the Pre-Petition ABL Obligations.

(iii)   Pre-Petition Collateral.   As of the Petition Date, the Pre-Petition ABL Obligations were secured pursuant to the Pre-Petition ABL Financing Documents by valid, binding, perfected, enforceable and non-avoidable security interests in and liens on the Collateral (as defined in the Pre-Petition ABL Credit Agreement) (the "**Pre-Petition Collateral**") as follows: (a) first priority security interests and liens granted by the Pre-Petition Borrower and the Pre-Petition Guarantors to the Pre-Petition ABL Agent, for the benefit of itself and the other Pre-Petition ABL Secured Parties, upon the ABL Priority Collateral (as defined in the Intercreditor Agreement); and (b) subject to first priority security interests and liens in favor of the SCP Agent, for the benefit of itself and the other SCP Secured Parties (the "**Permitted SCP Priority Liens**"), second priority security interests and liens granted by the Pre-Petition Borrower and the Pre-Petition Guarantors to the Pre-Petition ABL Agent, for the benefit of itself and the other Pre-Petition ABL Secured Parties, on the SCP Priority Collateral (as defined in the Intercreditor Agreement); provided that the security interests and liens described in both of the preceding clauses (a) and (b), are subject only to any valid, perfected and unavoidable lien or security interest existing as of the Petition Date in favor of any third

-8-

#32478730 v1

party creditor (other than the SCP Secured Parties), to the extent that such lien or security interest is senior to the security interest of the Pre-Petition ABL Secured Parties as of the Petition Date (collectively, the "**ABL Permitted Third Party Liens**" and, together with the Permitted SCP Priority Liens, the "**ABL Permitted Liens**"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition ABL Secured Parties' liens, claims or security interests in the Pre-Petition Collateral.

(iv)    Agreement Among Lenders. General Retail Holdings L.P. ("**GRH**"), General Retail Funding LLC ("**GRF**"), Wells Fargo Bank, N.A. ("**Wells Fargo**"), the Pre-Petition ABL Lenders and the Pre-Petition ABL Agent are parties to that certain Agreement Among Lenders, dated as of October 3, 2014 (as has been amended, restated, supplemented or otherwise modified from time to time, the "**AAL**"), which governs the respective rights, obligations and priorities of each class of the Pre-Petition ABL Secured Parties with respect to the matters referred to therein, including, without limitation, the use of Cash Collateral and the DIP Facility.

(v)    SCP Financing Documents. Prior to the commencement of the Cases, RadioShack obtained the SCP Loan from the SCP Lenders pursuant to the SCP Credit Agreement and the other SCP Financing Documents. RGSI, RCS, SCK, TFC, RGSLP, TELP, ILP, TRSQ, RGSC, MSS, ITCS, TIC and TH (collectively, the "**SCP Guarantors**") guaranteed the obligations of RadioShack under the SCP Credit Agreement pursuant to that certain Guaranty and Security Agreement executed by each of the SCP Guarantors.

(vi)    SCP Obligations Amount. As of the Petition Date, RadioShack and the SCP Guarantors were justly and lawfully indebted and liable in the aggregate amount of

-9-

all Obligations (as defined in the SCP Credit Agreement) owing to the SCP Secured Parties under and in connection with the SCP Financing Documents, consisting of the SCP Loan in an amount of not less than $250,000,000 (the "**SCP Claim**"), plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto under the SCP Credit Agreement (collectively, the "**SCP Obligations**").  The SCP Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of RadioShack and the SCP Guarantors, and enforceable in accordance with its terms, and no portion of the SCP Obligations or any payments made to the SCP Agent or any of the other SCP Secured Parties or applied to the Obligations owing under the SCP Financing Documents is subject to any offset, challenge, objection, defense, counterclaim, avoidance, recharacterization or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law, and the Debtors and their estates do not possess and shall not assert any claim, counterclaim, right of recoupment, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability, priority and nonavoidability of any of the SCP Obligations or any claim or cause of action, including, without limitation, "lender liability" causes of action or avoidance actions under chapter 5 of the Bankruptcy Code, against the SCP Lenders or any of their respective affiliates arising out of, based upon or related to the SCP Financing Documents or the SCP Obligations.

(vii)    As of the Petition Date, the SCP Obligations were secured pursuant to the SCP Financing Documents by valid, binding, perfected, enforceable and non-avoidable security interests in, and liens on, the Pre-Petition Collateral as follows: (a) first priority security interests and liens granted by the Debtors to the SCP Agent, for the benefit of itself and the other SCP Secured Parties, upon the SCP Priority Collateral (as defined in the

-10-

Intercreditor Agreement); and (b) subject to first priority security interests and liens in favor of the Pre-Petition ABL Agent, for the benefit of itself and the other Pre-Petition ABL Secured Parties (the "**Permitted ABL Priority Liens**"), second priority security interests and liens granted by the Debtors to the SCP Agent, for the benefit of itself and the other SCP Secured Parties, on the ABL Priority Collateral; provided that the security interests and liens described in both of the preceding clauses (a) and (b), are subject to any valid, perfected and unavoidable lien or security interest existing as of the Petition Date in favor of any third party creditor (other than the Pre-Petition ABL Secured Parties), to the extent that such lien or security interest is senior to the security interests of the SCP Secured Parties as of the Petition Date (collectively, the "**SCP Permitted Third Party Liens**" and, together with the Permitted ABL Priority Liens, the "**SCP Permitted Liens**"). The Debtors do not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the SCP Secured Parties' liens, claims or security interests in the Pre-Petition Collateral.

(viii) Intercreditor Agreement. The Pre-Petition ABL Agent and the SCP Agent are parties to that certain Intercreditor Agreement, dated as of December 10, 2013 (as has been amended, restated, supplemented or otherwise modified from time to time, the "**Intercreditor Agreement**"), which governs the respective rights, obligations and priorities of the Pre-Petition ABL Secured Parties and the SCP Secured Parties with respect to the matters referred to therein, including, without limitation, the priority of rights in respect of the Pre-Petition Collateral, the use of Cash Collateral and the DIP Facility. The Borrower and the Guarantors have acknowledged and agreed to be bound by the terms of the Intercreditor Agreement.

#32478730 v1

(ix)    Debtor-In-Possession Financing Support Agreement. SCP, Salus

CLO 2012-1, LTD., RadioShack, Standard General Master Fund, L.P. and GRH are parties to

that certain Debtor-In-Possession Financing Support Agreement dated as of February 5, 2015

(the "**DIP Support Agreement**"), which is attached to the Motion as Exhibit C and is

incorporated by reference herein. The Borrower and the Guarantors have acknowledged and

agreed to be bound by the terms of the DIP Support Agreement. To the extent of any

inconsistency between the terms set forth in the DIP Support Agreement and the terms set forth

in this Interim Order, the terms set forth in this Interim Order shall govern and control.

E.    Adequate Protection.

(x)    Adequate Protection Obligations. The Debtors acknowledge and

agree that the Pre-Petition ABL Secured Parties and the SCP Secured Parties are entitled to

adequate protection as a result of the (a) provisions of this Interim Order granting first priority

and/or priming liens on the ABL Priority Collateral and second priority security interests in and

liens on the SCP Priority Collateral to the DIP Agent, for the benefit of the DIP Lenders, with

respect to the DIP Facility; (b) use of the Cash Collateral, (c) use, sale, lease, or depreciation or

other diminution in value of the Pre-Petition Collateral, (d) subordination to the Carve-Out, or

(e) imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise

pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code (the amount

of any such use and diminution being referred to hereafter as the "**Adequate Protection**

**Obligations**").

(xi)    ABL/SCP Adequate Protection. Pursuant to sections 361, 363 and

507(b) of the Bankruptcy Code, as adequate protection for the Adequate Protection Obligations,

the Debtors have agreed to provide the Pre-Petition ABL Secured Parties with the ABL

Adequate Protection Liens (as defined below) and the ABL Adequate Protection Claim (as

-12-

defined below), and the SCP Lenders with the SCP Adequate Protection Liens (as defined below) and the SCP Adequate Protection Claims (as defined below).

(xii) <u>Necessity for Adequate Protection</u>. The adequate protection and other treatment proposed to be provided by the Debtors pursuant to this Interim Order are consistent with, *inter alia*, the Intercreditor Agreement and the AAL, and authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, and facilitate the Debtors' ability to continue their business operations because of the need for the DIP Facility.

F.           <u>Consent to Financing/Cash Collateral/Non-Impairment</u>.   The security interests and liens granted hereunder to (a) the DIP Agent, for the benefit of the DIP Lenders, under section 364(c) and (d) of the Bankruptcy Code, (b) to the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Secured Parties, and (c) the SCP Agent, for the benefit of the SCP Secured Parties, under sections 105, 361 and 363 of the Bankruptcy Code, are appropriate because, among other things: (a) the Pre-Petition ABL Secured Parties do not object to the entry of this Interim Order; (b) the SCP Secured Parties have consented to the entry of this Interim Order, and (c) the holders of ABL Permitted Liens and the SCP Permitted Liens, to the extent they are legal, valid, binding, continuing, enforceable and fully perfected, are not being impaired by this Interim Order.

G.           <u>Findings Regarding the Post-Petition Financing</u>.

(xiii) <u>Post-Petition Financing</u>.    Borrower and the Guarantors have requested from the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders are willing to extend, certain loans, advances and other financial accommodations, as more particularly described, and on the terms and conditions set forth, in this Interim Order and the DIP Financing Documents. Notwithstanding the DIP Agent's and the DIP Lenders' willingness

-13-

#32478730 v1

to extend such financial accommodations, (x) the Pre-Petition ABL Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the Pre-Petition ABL Financing Documents, and (y) the SCP Obligations shall be deemed to have been automatically accelerated on the Petition Date as a result of the commencement of the Cases in accordance with the terms of the SCP Financing Documents.

(xiv) <u>Fair and Reasonable</u>. Based upon the record presented to the Court by the Debtors, it appears that the terms of the DIP Credit Agreement, the DIP Financing Documents and the DIP Facility are fair and reasonable and reflect the Borrower's and Guarantors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(xv) <u>Need for Post-Petition Financing</u>. The Debtors do not have sufficient available sources of working capital to operate the Debtors' businesses in the ordinary course without the Post-Petition Financing and the ability to use the Pre-Petition Collateral (including Cash Collateral) as described in this Interim Order. The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise fund their operations is essential to the Debtors' continued viability. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed Post-Petition Financing and the use of Cash Collateral on the terms set forth in the DIP Financing Documents and this Interim Order is vital to the preservation and maximization of the going concern value of the Debtors' currently operating businesses pending a sale of the assets of the Debtors. Accordingly, the Debtors have an immediate need to obtain authorization to use Cash Collateral for the limited purpose set forth herein and obtain the Post-Petition Financing in order to, among other things, permit the orderly continuation of the operation of their operating

-14-

businesses, preserve jobs for their employees, maintain vendor support and minimize the disruption of their business operations and manage and preserve the assets of the Debtors' bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "**Estates**") in order to maximize the recoveries to creditors of the Estates.

(xvi)   No Credit Available on More Favorable Terms.  The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code, without the grant of liens on all or substantially all of the Borrower's and Guarantors' assets, pursuant to section 364(c) and section 364(d) of the Bankruptcy Code.  The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Agent and the DIP Lenders pursuant to the DIP Financing Documents and this Interim Order.

(xvii)   Budget.   Based on the record presented to the Court by the Debtors, it appears the Debtors have prepared and delivered to the DIP Agent and the DIP Lenders the Budget (as defined in the DIP Credit Agreement). A copy of the Budget is annexed hereto as **Exhibit 1**. The Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby.   The Debtors believe in good faith that the Budget is achievable. The DIP Agent and the DIP Lenders, and the Pre-Petition ABL Secured Parties and the SCP Secured Parties, are relying upon the Debtors' compliance with the Budget in determining to consent to the use of Cash Collateral for the limited purposes expressly set forth herein and to enter into the Post-Petition Financing provided for herein.

-15-

(xviii) <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u> <u>and Section 363(m).</u>  Based upon the record presented to the Court by the Debtors, it appears the terms of the DIP Financing Documents and this Interim Order are fair, just, reasonable and appropriate under the circumstances, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Based on the record before this Court, it appears (and the Debtors have stipulated) that the Debtors, the DIP Agent and the DIP Lenders' have negotiated at arms' length and in good faith regarding the terms of the DIP Financing Documents and the DIP Facility, all subject to the terms of this Interim Order.  Any credit extended under the terms of this Interim Order shall be deemed to have been extended in "good faith" by the DIP Agent and the DIP Lenders as that term is used in sections 364(e) and 363(m) of the Bankruptcy Code, and in express reliance upon the protections set forth therein and shall be entitled to the full protection of sections 364(e) and 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, revised or modified, on appeal or otherwise.

(xix)   <u>No Objection / SCP Consent.</u>  The Pre-Petition ABL Secured Parties have no objection to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Interim Order.  The SCP Secured Parties have consented to the DIP Facility and the use of Cash Collateral on the terms and conditions set forth in this Interim Order.  Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition ABL Secured Parties or the SCP Secured Parties are or will be adequately protected with respect to any additional financing, or any non-consensual use of Cash Collateral.  The DIP Agent and the DIP Lenders have indicated a willingness to provide

-16-

#32478730 v1

the DIP Facility, but solely on the terms and conditions set forth in this Interim Order and in the DIP Financing Documents.

(xx)    No Responsible Person. The Debtors stipulate that in making the decision to finance the Debtors' operations through the DIP Facility, to permit the Debtors to use Cash Collateral for the limited purposes set forth herein, in administering any loans, in approving the Budget, or in taking any actions permitted by this Interim Order or the DIP Financing Documents, none of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Agent, the Pre-Petition ABL Lenders, the SCP Secured Parties, as applicable, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person", "owner or operator" or part of any "control group" with respect to any of the Debtors or the management of the Debtors or owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates. The foregoing finding shall be effective upon entry of the Final Order.

(xxi)    Good Cause. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtors and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to the Debtors' on-going businesses and on-going operations and to permit the Debtors to sell their assets, (b) preserve and maximize the value of the Debtors' Estates, and (c) avoid immediate and irreparable harm to the Debtors, their businesses, their employees and their assets.

(xxii)    Immediate Entry. Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. No party appearing in the Cases has filed or made an objection to the relief sought in the Motion or the entry of this Interim Order, or any objections that were made (to the extent such

objections have not been withdrawn) are hereby overruled on the merits and denied with prejudice.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted. The Motion is granted on an interim basis in accordance with and to the extent provided in this Interim Order.

1.2    Authorization to Borrow and Use of Loan Proceeds. The Borrower is hereby authorized and empowered to immediately borrow and obtain the Borrowings (as defined in the DIP Credit Agreement), and the Borrower and the Guarantors are hereby authorized and empowered to incur indebtedness and obligations owing to the DIP Agent and the DIP Lenders, on the terms and subject to the conditions, lending formulae and sub-limits set forth in the DIP Financing Documents and this Interim Order, (a) during the interim period commencing on the date of this Interim Order through and including the date of the Final Hearing as set forth in Section 7 of this Interim Order (the "**Interim Financing Period**") in an aggregate principal amount of up to $29,000,000, comprised of New Money Loans in an aggregate amount of up to $10,000,000 and Letters of Credit in an aggregate amount of up to $15,000,000 (additionally, in accordance with the DIP Credit Agreement, the Borrower may procure the issuance of new Letters of Credit for the purpose of renewing, replacing or otherwise extending, upon the expiration thereof, any letters of credit issued pursuant to the Pre-Petition ABL Credit Agreement, provided that the obligations with respect to such new Letter of Credit are not greater than the obligations with respect to the Letter of Credit being renewed, replaced or extended), and (b) upon entry of the Final Order, in an aggregate principal amount up to

-18-

$285,334,031 comprised of (a) an amount up to $20,000,000 in respect of New Money Loans, (b) Letters of Credit in an aggregate amount of up to $15,000,000, and (c) a dollar-for-dollar roll-up of up to $250,334,031 in respect of outstanding loan and letter of credit and related obligations under the Pre-Petition ABL Credit Agreement. The Borrower may only use the proceeds of the Borrowings and any other credit accommodations provided to the Borrower pursuant to the terms and conditions of the DIP Financing Documents, the Budget and this Interim Order.

      1.3    Financing Documents.

      1.3.1   Authorization.  The Borrower and the Guarantors are hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Financing Documents, including without limitation, the DIP Credit Agreement and the DIP Support Agreement (as modified by this Interim Order).

      1.3.2   Approval.  The DIP Financing Documents, the DIP Support Agreement (as modified by this Interim Order) and each term set forth therein are approved to the extent necessary to implement the terms and provisions of this Interim Order; provided that, the "Milestones" set forth in Schedule 1.1(a) to the DIP Credit Agreement and Exhibit A to the DIP Support Agreement shall be deemed to require the Debtors to obtain an order approving bid procedures for a going concern sale or liquidation no later than 15 days (as opposed to 14 days) following the Petition Date.

      1.3.3   Amendment of DIP Financing Documents.  The Debtors, the DIP Agent and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP Financing Documents, any non-material modification of the DIP Financing Documents without further order of this Court or any other modification to the DIP Financing Documents; provided however, that notice of any material modification or amendment to the DIP Financing

-19-

Documents shall be provided by the Debtors to counsel to any official committee of creditors (the "**Committee**"), the SCP Secured Parties and the U.S. Trustee, each of whom shall have five (5) business days from the date of such notice within which to object in writing to such modification or amendment unless the Committee, the U.S. Trustee and the SCP Secured Parties agree to a shorter period but no less than three (3) business days. If any of the Committee, the SCP Secured Parties or the U.S. Trustee timely objects to any material modification or amendment to the DIP Financing Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

    1.4  Payment of Pre-Petition Debt. Upon entry of the Final Order and subject to Section 5.1 herein, the Borrower and the Guarantors will be deemed to have paid in full in cash by way of a dollar-for-dollar roll-up all Pre-Petition ABL Obligations to the Pre-Petition ABL Secured Parties, which Pre-Petition ABL Obligations will constitute Obligations (as defined below) owing under the DIP Credit Agreement and the other DIP Financing Documents.

    1.5  Payments and Application of Payments. Subject to the Intercreditor Agreement, the Debtors are authorized and directed to make all payments and transfers of the Debtors' property to the DIP Agent or the SCP Agent, as applicable, as provided, permitted and/or required under the DIP Financing Documents or the SCP Financing Documents, as applicable, which payments and transfers, subject to Section 5.1 herein, shall not be avoidable or recoverable from the DIP Lenders or the SCP Secured Parties, as applicable, under section 547, 548, 550, 553 or any other section of the Bankruptcy Code, except 506(c) as otherwise set forth herein, or subject to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise. Subject to the Intercreditor Agreement, the DIP Agent, the DIP Lenders and the SCP Secured Parties, as applicable, shall apply the proceeds of the DIP Collateral (as defined below), and any other amounts or payments

-20-

#32478730 v1

received by the DIP Agent in respect of the Pre-Petition ABL Obligations and the Post-Petition Obligations (as defined in the DIP Financing Documents) (collectively, the "**Obligations**"), or by the SCP Agent in respect of the SCP Obligations, in accordance with the DIP Financing Documents or the SCP Financing Documents, as applicable, and this Interim Order. Without limiting the generality of the foregoing, the Borrower and the Guarantors are authorized and directed, without further order of this Court, to pay or reimburse the DIP Agent and the DIP Lenders, in accordance with the DIP Financing Documents, for all present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Agent and the DIP Lenders in connection with the financing transactions as provided in the DIP Financing Documents and this Interim Order, all of which shall be and are included as part of the principal amount of the Obligations and secured by the DIP Collateral.

        1.6     Interest and Fees. The rate of interest to be charged for the Borrowings under the Post-Petition Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement. The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement (except that the fee described in the following clause (y) shall be payable as provided therein notwithstanding the provisions of the DIP Credit Agreement), including without limitation (x) unused commitment fees and (y) the $3,566,675.89 fee payable (x) $1,814,995.59 on the earlier of (i) the closing of a sale of substantially all of the assets of the Borrower and (ii) the effective date of a chapter 11 plan confirmed in the Cases and (y) $1,751,680.30 within one business day after the SCP Agent, for the benefit of the SCP Lenders, has been paid (including, without limitation, by way of receipt of proceeds of collateral dispositions) a principal amount of the SCP Loan equal to $100,000,000 (plus all accrued and unpaid interest, fees and expenses

-21-

owing in respect of such portion of the SCP Loan, in each case, calculated in accordance with the SCP Financing Documents). The rate of interest to be charged on the Pre-Petition ABL Obligations and the SCP Obligations shall be the rates set forth in the Pre-Petition ABL Financing Documents or, subject to the DIP Support Agreement, the SCP Financing Documents, as applicable, and shall accrue and be payable at the times and in the manner set forth in the Pre-Petition ABL Financing Documents or, subject to the DIP Support Agreement and Section 3.2.3 hereof, the SCP Financing Documents, as applicable. Any and all fees charged under the Pre-Petition ABL Financing Documents or the SCP Financing Documents, as applicable, shall be as set forth in the Pre-Petition ABL Financing Documents and the SCP Financing Documents, as applicable, and shall be payable at the times set forth in the Pre-Petition ABL Financing Documents or the SCP Financing Documents, as applicable. Upon entry of this Interim Order, the Debtors shall pay the DIP Agent the fee provided for in that certain Letter Agreement dated February 5, 2015.

    1.7  <u>Continuation of Prepetition Procedures</u>. Subject to the Intercreditor Agreement, all pre-petition practices and procedures for the payment and collection of proceeds of the ABL Priority Collateral and the SCP Priority Collateral, the turnover of cash, and the delivery of property to the Pre-Petition ABL Agent, the Pre-Petition ABL Lenders and the SCP Agent, including any lockbox and/or blocked depository bank account arrangements (including all amounts deposited in the Residual Deposit Account), are hereby approved and shall continue without interruption after the commencement of the Cases.

Section 2.  Collateralization, Adequate Protection and Superpriority Administrative Claim Status.

    2.1  Collateralization.

    2.1.1 <u>DIP Lien Grant</u>. To secure the prompt payment and performance of any and all Post-Petition Obligations (and upon entry of the Final Order, any and all

#32478730 v1

Obligations, including without limitation, all Pre-Petition ABL Obligations) of the Borrower and the Guarantors of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Agent, for the benefit of itself and the other DIP Lenders, shall have and is hereby granted, effective as of the date of this Interim Order, valid and perfected first or second priority (the priority of such liens as more fully described below), security interests and liens in and upon (such security interests and liens collectively, the "**DIP Liens**") all present and after acquired property of the Debtors of any nature whatsoever, including without limitation, all accounts receivable, inventory, general intangibles, chattel paper, real property, fixtures, machinery, equipment, deposit accounts, cash and cash equivalents, investments, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property, inter-company notes or receivables due to each Debtor, all of the Collateral as defined in the DIP Credit Agreement, all of the Collateral as defined in the Guaranty Agreement, and all causes of action whether pursuant to federal or state law, and upon entry of the Final Order, proceeds of any disposition of leaseholds, all proceeds, property or other amounts received or recovered (whether by judgment, settlement or otherwise) in respect of all claims and causes of action under chapter 5 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Actions**") of the Debtors or their Estates, and as to all of the foregoing, all rents issues, products, proceeds and profits generated by any of the foregoing (being sometimes collectively referred to in this Interim Order as the "**DIP Collateral**"). With respect to the Debtors' non-residential real property leases and notwithstanding anything to the contrary in this Interim Order or any of the DIP Financing Documents no liens or encumbrances shall be granted or extend to the Debtors' real property leases themselves except as expressly permitted in the applicable lease or pursuant to applicable law but rather any liens granted shall extend only to the

-23-

#32478730 v1

proceeds realized upon the sale, assignment, termination or other disposition of such real property leases. During the Interim Period, all proceeds from the disposition of leaseholds of the Debtors shall be held in escrow pending the entry of the Final Order. Subject to the provisions of Section 2.3.1, the DIP Liens shall be:

> (A) Liens on Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, continuing valid, perfected, enforceable, first priority, fully perfected liens on and security interests in all of the Debtors' right, title, and interest in and to and under all DIP Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date (the "**Unencumbered Property**").

> (B) Priming Liens on ABL Priority Collateral. Subject to ABL Permitted Third Party Liens, pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, fully perfected first priority, senior priming security interests in and senior priming liens upon all of the Debtors' right, title and interest in, to and under all ABL Priority Collateral, which priming security interests and priming liens shall be senior to (i) the security interests and liens held by the Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Secured Parties; (ii) the security interests and liens held by the SCP Agent, on behalf of the SCP Secured Parties on the ABL Priority Collateral, and (iii) the Adequate Protection Liens (as defined below) (other than SCP Adequate Protection Liens (as defined below) provided for in Section 3.2.1(x) herein).

-24-

(C) Junior Liens on SCP Priority Collateral. Pursuant to section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, fully perfected liens on and security interests in all of the Debtors' right, title, and interest, in and to and under all SCP Priority Collateral, which security interest and liens shall be junior to, but only to, (i) the Permitted SCP Priority Liens, (ii) the SCP Adequate Protection Liens (as defined below) and (iii) ABL Permitted Third Party Liens; provided that such liens and security interests shall be senior to (x) the security interests and liens held by the Pre-Petition ABL Agent, on behalf of the Pre-Petition ABL Secured Parties, and (y) the ABL Adequate Protection Liens (as defined below).

(D) Liens Senior to Certain Other Liens. Notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens and the ABL Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided or preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code (other than any liens in favor of the SCP Secured Parties), (ii) any liens arising after the Petition Date (other than SCP Adequate Protection Liens (as defined below) provided for in Section 3.2.1(x) herein) or (iii) any intercompany or affiliate liens of the Debtors.

2.1.2   Post-Petition Lien Perfection.   This Interim Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further

-25-

act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, Mortgages (as defined in the Pre-Petition ABL Credit Agreement) or other similar documents (each, a "**Perfection Act**"). Notwithstanding the foregoing, if the DIP Agent, the Pre-Petition ABL Agent and/or the SCP Agent shall, acting at the direction of the DIP Lenders, the Pre-Petition ABL Lenders or the SCP Lenders, as applicable, elect for any reason to file, record or otherwise effectuate any Perfection Act, each of the DIP Agent, the Pre-Petition ABL Agent and the SCP Agent is authorized to perform such act, and the Borrower is authorized to perform such act to the extent necessary or required by the DIP Agent, the Pre-Petition ABL Agent and/or the SCP Agent, which act or acts shall be deemed to have been accomplished as of the Petition Date notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. The DIP Agent, the Pre-Petition ABL Agent and/or the SCP Agent may choose to file, record or present a certified copy of this Interim Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Interim Order in accordance with applicable law. Should the DIP Agent, the Pre-Petition ABL Agent and/or the SCP Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Interim Order.

2.1.3   Reserved.

-26-

#32478730 v1

2.1.4   Intercreditor Agreement.   Notwithstanding anything to the contrary contained herein, except with respect to the Permitted SCP Priority Liens, the liens and security interests granted to the DIP Agent and the DIP Lenders to secure the Obligations shall have priority over any and all liens and security interests granted to the SCP Secured Parties to secure obligations of any of the Debtors owing to the SCP Secured Parties and the rights of the parties with respect to such liens and security interests shall be governed by the Intercreditor Agreement.

2.2   Superpriority Administrative Expense.   Except to the extent expressly set forth in this Interim Order in respect of the Carve-Out (as defined below) and the Bid Protections (as defined below), for all Post-Petition Obligations (and upon entry of the Final Order, for all Obligations, including without limitation, all Pre-Petition ABL Obligations and the Post-Petition Obligations) now existing or hereafter arising and for diminution in value of any Pre-Petition Collateral used by the Borrower and/or the Guarantors pursuant to this Interim Order, the DIP Financing Documents or otherwise, the DIP Agent, for the benefit of itself and the other DIP Lenders, is granted an allowed superpriority administrative claim against each of the Debtors pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of any of such Debtors, whether now in existence or hereafter incurred by any of such Debtors, and over any and all administrative expenses, adequate protection claims or priority claims of the kind specified in, or ordered pursuant to the Bankruptcy Code, including without limitation, inter alia, sections 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of the Final Order), 507, 364(c)(1), 546(c), 726 or 1114 of the Bankruptcy Code (the "**DIP Superpriority Claim**"), which DIP Superpriority Claim shall, subject to the Intercreditor Agreement, be payable from and have recourse to all prepetition and post-petition property of the Debtors and all proceeds thereof, including, without limitation,

-27-

#32478730 v1

subject to entry of the Final Order, all proceeds, property or other amounts received or recovered (whether by judgment, settlement or otherwise) in respect of the Avoidance Actions), subject only to the Carve-Out and any break-up fees and expense reimbursement obligations of the Debtors ("**Bid Protections**") approved by the Court under the Asset Purchase Agreement, dated as of February 5, 2015, among General Wireless Inc., RadioShack and the other parties signatory thereto; provided that nothing contained herein shall preclude any of the SCP Secured Parties from objecting to Bid Protections.

    2.3    Carve-Out.

    2.3.1    Carve-Out.    The DIP Liens, DIP Superpriority Claim, ABL Adequate Protection Liens, ABL Adequate Protection Claims, SCP Adequate Protection Liens and SCP Adequate Protection Claims shall be subject only to the right of payment of the following expenses (collectively, the **"Carve-Out"**):

    a.    all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a) plus interest pursuant to 31 U.S.C. § 3717 (the "**Statutory Fees**"); and

    b.    all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $100,000.00; and

    c.    to the extent allowed at any time by the Court, but subject in all respects to the Budget, all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals or professional firms retained by the Debtors and any Committee before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below); and

    d.    to the extent allowed at any time by the Court, but subject in all respects to the Budget, all accrued and unpaid fees, disbursements, costs and expenses

-28-

#32478730 v1

incurred by professionals or professional firms retained by the Debtors and any official committee of unsecured creditors at any time after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice in an aggregate amount not to exceed $4,000,000 (the amount set forth in this clause (d) being the "**Post-Carve Out Trigger Notice Cap**"). For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel, the U.S. Trustee, the SCP Secured Parties, and lead counsel to any Committee, which notice may be delivered following the occurrence and during the continuance of an Event of Default, and stating that the Post-Carve Out Trigger Notice Cap has been invoked. Notwithstanding anything to the contrary contained in this Interim Order, the Carve-Out shall be senior to the DIP Liens, the DIP Superpriority Claim, the ABL Adequate Protection, the SCP Adequate Protection, and all liens and claims (including, without limitation, administrative and superpriority claims) securing the Obligations and all other forms of adequate protection, liens, security interests and other claims granted herein.

       2.4     Excluded Professional Fees. Notwithstanding anything to the contrary in this Interim Order, neither the Carve-Out, nor the proceeds of any Borrowings, Cash Collateral, Letters of Credit or DIP Collateral shall be used to pay any allowed professional fees or any other fees or expenses incurred by any professional in connection with any of the following: (a) object to or contest the validity or enforceability of this Interim Order or any obligations outstanding under the DIP Financing Documents, the Pre-Petition ABL Financing Documents or the SCP Financing Documents; provided, that the Committee may expend up to $50,000 for the fees and expenses incurred in connection with the investigation of, but not litigation, objection or any challenge to, any prepetition secured claims and liens under the Pre-Petition ABL Financing Documents and the SCP Financing Documents; (b) assert or prosecute any claim or cause of action against the DIP Agent or any of the DIP Lenders or the Pre-Petition ABL Agent or any of

-29-

the Pre-Petition ABL Lenders or any of the SCP Secured Parties, other than to enforce the terms of the DIP Facility or this Interim Order; (c) seek to modify any of the rights granted under this Interim Order to the DIP Agent or any of the DIP Lenders or the Pre-Petition ABL Agent or any of the Pre-Petition ABL Lenders or any of the SCP Secured Parties; (d) make any payment in settlement or satisfaction of any prepetition or administrative claim, unless in compliance with the Budget and, with respect to the payment of any prepetition claim or non-ordinary course administrative claim, separately approved by the Court upon notice to the DIP Agent on behalf of the DIP Lenders and the SCP Agent on behalf of the SCP Lenders; (e) object to, contest, delay, prevent or interfere with in any way with the exercise of rights and remedies by the DIP Agent, any of the DIP Lenders, the Pre-Petition ABL Agent, any of the Pre-Petition ABL Lenders or any of the SCP Secured Parties with respect to the DIP Collateral once an Event of Default (as defined below) has occurred (except that the Borrower may contest or dispute whether an Event of Default has occurred and the Borrower shall be entitled to any notice provisions provided in this Interim Order); or (f) except as expressly provided or permitted hereunder or in the Budget, make any payment or distribution to any non-Debtor affiliate, equity holder, or insider of any Debtor; provided that in no event shall any management, advisory, consulting or similar fees be paid to or for the benefit of any Debtor affiliate, equity holder or insider.

2.5     Carve Out Reserve.  Pursuant to the DIP Credit Agreement, the DIP Agent shall establish (and adjust) a reserve against the amount of Borrowings or other credit accommodations that would otherwise be made available to the Borrower pursuant to the lending formulae contained in the DIP Credit Agreement in respect of the Carve-Out.  Subject to the Intercreditor Agreement, nothing contained herein shall limit, modify or restrict in any way the

-30-

#32478730 v1

DIP Agent's rights to establish (and adjust) any other reserves in accordance with the DIP Financing Documents.

   2.6  Payment of Carve Out.

     2.6.1 The Debtors shall maintain a reserve account in the aggregate amount of $6.0 million for the payment of the Carve-Out (the "**Carve-Out Reserve Account**") which account shall be funded from the proceeds of Borrowings made upon entry of the Final Order. Subject to the Budget, the Debtors shall pay Carve-Out compensation and reimbursement of expenses that accrue following the Petition Date in compliance with and subject to the Carve-Out provisions of Section 2.3 as the same may be due and payable; provided however, that, prior to the delivery of a Carve Out Trigger Notice, the Debtors shall pay Carve-Out compensation and reimbursement of expenses first by the application by the applicable professional of any retainer then held, and second from the Carve-Out Reserve Account only to the extent funds are not otherwise available to the Debtors. After payment in full of Carve-Out compensation and reimbursement of expenses in compliance with and subject to the Carve-Out provisions of Section 2.3, any excess amounts in the Carve-Out Reserve Account shall be remitted to the DIP Agent to apply to reduce the Pre-Petition ABL Obligations and/or the Post-Petition Obligations in accordance with the DIP Credit Agreement or, upon payment in full of the foregoing, to the SCP Agent to apply to reduce the SCP Obligations. Funds held in the Carve-Out Reserve Account shall be applied in the manner set forth in this Interim Order in accordance with the procedures established in the Cases with the excess, if any, to be remitted to the DIP Agent or the SCP Agent, as applicable, as set forth in the preceding sentence. Provided that once the amounts the DIP Agent is obligated to allocate to the Carve Out as required in Section 2.3 have been funded, all obligations of the DIP Agent and the DIP Lenders with respect to the Carve-Out shall

-31-

#32478730 vt

be terminated. In no event shall any SCP Secured Party have any obligation to fund any portion of the Carve-Out.

2.6.2   To the extent the Carve-Out Reserve Account has not been fully funded in accordance with the Budget prior to delivery of a Carve Out Trigger Notice, the DIP Agent, on behalf of the DIP Lenders, shall remit the difference from DIP Collateral proceeds actually received by the DIP Agent.  Payment of any amounts on account of the Carve-Out, whether by or on behalf of the DIP Agent or any DIP Lender, shall not and shall not be deemed to reduce the Obligations, and shall not and shall not be deemed to subordinate any of the DIP Agent's and the DIP Lenders' liens and security interests in the DIP Collateral or their DIP Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.  The DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors or the Committee (or any other party) or the  incurred in connection with the Cases under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4, 2.5 or 2.6 of this Interim Order shall be construed to obligate the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement.

Section 3.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral, in accordance with the DIP Financing Documents and the Budget, provided that in no event shall the Debtors use Cash Collateral in a manner that would allow the aggregate principal amount of the pre-petition loans and letters of credit included in the ABL

-32-

Claim, including after giving effect to the roll-up of such pre-petition loans and letters of credit pursuant to Section 1.4 of this Interim Order, to exceed the Maximum ABL Facility Amount (as defined in the Intercreditor Agreement), after giving effect to the provisions of Section 9.1(a)(ii) of the Intercreditor Agreement. Absent entry of the Final Order by the Court, the Debtors shall no longer be authorized to use Cash Collateral at the expiration of the period from the entry of this Interim Order through the Final Hearing (the "**Interim Period**"). Nothing in this Interim Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtors' use of any Pre-Petition Collateral, Cash Collateral or other proceeds resulting therefrom, except as provided for herein.

      3.1    Pre-Petition ABL Agent's Adequate Protection. As adequate protection for the interests of the Pre-Petition ABL Agent in the Pre-Petition Collateral, for the benefit of the Pre-Petition ABL Lenders, on account of the Adequate Protection Obligations, the Pre-Petition ABL Agent is being provided with adequate protection.

      3.1.1    ABL Adequate Protection Liens. Solely to the extent of any diminution in value of such interests pursuant to sections 361 and 363(e) of the Bankruptcy Code, and subject and subordinate to the Carve-Out and the DIP Liens, the Debtors shall grant to the Pre-Petition ABL Agent, for itself and for the benefit of the Pre-Petition ABL Lenders, valid and perfected replacement security interests in, and liens on (the "**ABL Adequate Protection Liens**"), the DIP Collateral. Subject to the Carve-Out and the ABL Permitted Third Party Liens, the ABL Adequate Protection Liens shall be (x) a second priority perfected lien upon all of the DIP Collateral that is not otherwise encumbered by a validly perfected, non-avoidable security interest or lien on the Petition Date, junior only to the DIP Liens, (y) a second priority, senior, priming and perfected lien upon the DIP Collateral that is comprised of ABL Priority Collateral,

-33-

#32478730 v1

junior only to the DIP Liens and (z) a fourth priority, junior perfected lien upon all DIP Collateral that is comprised of SCP Priority Collateral, junior to the liens securing the SCP Obligations, the SCP Adequate Protection Liens (as defined below) and the DIP Liens.

        a.      The ABL Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the date of entry of this Interim Order and, subject to Section 5.1 hereof, not subject to subordination or avoidance, for all purposes in the Cases.

        b.      The ABL Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Cases or any successor cases. Except for the DIP Liens, the ABL Permitted Liens, the SCP Adequate Protection Liens, and the Carve-Out, the ABL Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases (unless with the consent of the Pre-Petition ABL Agent and the Pre-Petition ABL Lenders). The ABL Adequate Protection Liens shall not be subject to sections 506(c) (subject to the entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari* passu with or senior to the ABL Adequate Protection Liens.

        3.1.2   <u>ABL Adequate Protection Claim</u>. As further adequate protection, to the extent of a diminution in the value of the liens and security interests of the Pre-Petition ABL Secured Parties in the Pre-Petition Collateral, and subject to the Carve-Out, the Bid Protections and the DIP Superpriority Claim, the Pre-Petition ABL Agent, for itself and for the benefit of the Pre-Petition ABL Lenders, shall be granted pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases with respect to the Debtors and any successor cases (the "**ABL Adequate Protection Claim**" and

together with the ABL Adequate Protection Liens, the "**ABL Adequate Protection**") and, subject to the Carve-Out, the Bid Protections and the DIP Superpriority Claim, shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and provided further, that prior to the entry of the Final Order, the ABL Adequate Protection Claim shall not be payable from or have recourse to proceeds, property or other amounts received or recovered (whether by judgment, settlement or otherwise) in respect of the Avoidance Actions.

3.1.3   Interest.   As further adequate protection, the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Secured Parties, shall be entitled to interest at the default contract rate on account of the outstanding Pre-Petition ABL Obligations, which shall be accrued and payable and paid in accordance with the Pre-Petition ABL Financing Documents.

3.2   SCP Agent's Adequate Protection.   As adequate protection for the interests of the SCP Agent in the Pre-Petition Collateral, for the benefit of the SCP Lenders, on account of the SCP Adequate Protection Obligations, the SCP Agent is being provided with adequate protection.

3.2.1   SCP Adequate Protection Liens.   Solely to the extent of any diminution in value of such interests pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors shall grant to the SCP Agent, for itself and for the benefit of the SCP Lenders, valid and perfected replacement security interests in, and liens on (the "**SCP Adequate Protection Liens**"), the DIP Collateral. Subject to the SCP Permitted Third Party Liens, the SCP Adequate Protection Liens shall be (x) a second priority, junior perfected lien upon the DIP

-35-

Collateral that is comprised of SCP Priority Collateral, junior in priority to the liens securing the SCP Obligations, (y) subject and subordinate to the Carve-Out, a fifth priority, junior perfected lien upon the DIP Collateral that is comprised of ABL Priority Collateral, junior in priority to the DIP Liens, the ABL Adequate Protection Liens, the liens securing the ABL Claim and the liens securing the SCP Obligations, and (z) subject and subordinate to the Carve-Out, a third priority, junior perfected lien upon the DIP Collateral that is not otherwise encumbered by a validly perfected, non-avoidable security interest or lien on the Petition Date, junior in priority to the DIP Liens and the ABL Adequate Protection Liens.

a.     The SCP Adequate Protection Liens are valid, binding enforceable and fully perfected as of the date of entry of this Interim Order and, subject to Section 5.1 hereof, not subject to subordination or avoidance, for all purposes in the Cases.

b.     The SCP Adequate Protection Liens shall be enforceable against the Debtors, their Estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Cases or any successor cases. Except as provided herein, the SCP Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore entered in the Cases, and shall be valid and enforceable against any trustee appointed or elected in any of the Cases or successor cases, or upon the dismissal of any of the Cases or successor cases. The SCP Adequate Protection Liens shall not be subject to sections 506(c) (subject to entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the SCP Adequate Protection Liens.

3.2.2   SCP Adequate Protection Claim.  As further adequate protection, the SCP Secured Parties are hereby granted an allowed superpriority administrative claim (the

-36-

"**SCP Adequate Protection Claim**", and together with the ABL Adequate Protection Claim, the "**Adequate Protection Claims**") against the Debtors' Estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the SCP Adequate Protection Liens do not adequately protect the diminution in the value of the SCP Secured Parties' interest in the Pre-Petition Collateral, which SCP Adequate Protection Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or the Estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code; provided, however, that the SCP Adequate Protection Claim shall be subject and subordinate only to (i) the DIP Superpriority Claim, (ii) the ABL Adequate Protection Claim, (iii) the Carve-Out and (iv) the Bid Protections; and provided further, that prior to entry of the Final Order the SCP Adequate Protection Claim shall not be payable from or have recourse to proceeds, property or other amounts received or recovered (whether by judgment, settlement or otherwise) in respect of the Avoidance Actions.

           3.2.3   Interest. As further adequate protection, the SCP Agent, for the benefit of the SCP Secured Parties, shall be entitled to interest on account of the outstanding SCP Obligations, which shall be accrued and payable and paid in accordance with the SCP Financing Documents; provided, however, that interest shall be calculated at the non-default contract rate (provided further that the SCP Secured Parties shall have the right to assert interest at the default rate in connection with any claims asserted in these Cases) and beginning with the monthly interest payment that would otherwise be due on the first business day of April 2015 and for any calendar month thereafter, such interest payment may only be made to the SCP Lenders if and

-37-

only to the extent all Obligations have been paid in full (other than contingent indemnity obligations).

               3.2.4  SCP Additional Adequate Protection.  As further adequate protection, (a) the Milestones set forth in the DIP Credit Agreement (as modified herein) shall not be amended in any material respect without the consent of the SCP Secured Parties, (b) the Budget shall not be amended or modified in any material respect without the consent of the SCP Secured Parties, (c) the Debtors shall deposit, and shall cause any other applicable Person to deposit, proceeds of the Residual Accounts received after the Petition Date into the Residual Account Deposit Account, (d) the SCP Secured Parties shall have the right to credit bid in any sale under Section 363 of the Bankruptcy Code or under any plan of reorganization (subject to any limitations set forth in the Intercreditor Agreement), (e) the SCP Secured Parties shall receive all information required to be provided to the DIP Agent and the DIP Lenders under the DIP Financing Documents, including, without limitation, budget variance reports, and (f) the Debtors shall retain, subject to Court approval, by no later than entry of the Final Order, broker(s) acceptable to the SCP Secured Parties to facilitate the sale of the debtors' owned real property, intellectual property and furniture, fixtures and equipment.

               3.3  Additional Adequate Protection.  As further adequate protection, and without limiting any rights of the Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Secured Parties, or the SCP Agent, for the benefit of the SCP Secured Parties, or any of the Pre-Petition ABL Secured Parties or the SCP Secured Parties under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for the Adequate Protection Obligations, the Debtors shall pay or reimburse the Pre-Petition ABL Agent and the Pre-Petition ABL Secured Parties and the SCP Agent and the SCP Secured Parties for any and all accrued and payable reasonable fees, costs, expenses and charges payable to such

-38-

#32478730 v1

party under the Pre-Petition ABL Financing Documents or the SCP Financing Documents, as applicable, including, without limitation, (i) the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants and auditors) payable to or incurred by (x) the Pre-Petition ABL Agent and the Pre-Petition ABL Secured Parties under and pursuant to the Pre-Petition ABL Credit Agreement and the other Pre-Petition ABL Financing Documents and (y) the SCP Agent and the SCP Secured Parties under and pursuant to the SCP Credit Agreement and the other SCP Financing Documents, in each case arising prior to the Petition Date; and (ii) on a current basis, the reasonable professional fees and expenses (including, but not limited to, the fees and disbursements of counsel, third-party consultants, including financial consultants and auditors) payable to or incurred by (x) the Pre-Petition ABL Agent and the Pre-Petition ABL Secured Parties under and pursuant to the Pre-Petition ABL Credit Agreement and the other Pre-Petition ABL Financing Documents and (y) SCP Agent and the other SCP Secured Parties under and pursuant to the SCP Credit Agreement and the other SCP Financing Documents, in each case arising on or subsequent to the Petition Date; provided that, in the case of the SCP Agent and the SCP Secured Parties, payment and reimbursement of professional fees and expenses pursuant to this Section 3.3 shall be limited to the fees and expenses of those professionals specified in clauses (B) and (C) in the parenthetical in the immediately following sentence; and provided further, that the SCP Secured Parties shall have the right to seek payment of additional fees, costs, expenses and charges payable to the SCP Secured Parties under the SCP Financing Documents in connection with any claims asserted in these Cases. The payment of the fees, expenses and disbursements set forth in this paragraph of this Interim Order (including professional fees and expenses of (A) Kaye Scholer LLP, Potter Anderson and Carroon LLP, and any other professionals or advisors retained by or on behalf of the Pre-Petition ABL Agent and

#32478730 v1

the Pre-Petition ABL Secured Parties, (B) Choate, Hall & Stewart, LLP, Drinker Biddle & Reath LLP and, subject to the DIP Support Agreement, Moelis & Company, and (C) Schulte Roth & Zabel LLP and Landis Rath & Cobb LLP) shall be made within ten (10) days after the receipt by the Debtors, the Committee, the SCP Agent and the U.S. Trustee (the "**Review Period**") of invoices thereof (the "**Invoiced Fees**") (subject in all respects to applicable privilege or work product doctrines) and without necessity of filing formal fee applications, including such amounts arising before and after the Petition Date; provided, however, that the Debtors, the Committee and the U.S. Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, including the Disputed Invoices; and (ii) the Debtors, the Committee or the U.S. Trustee files with the Court a motion or other pleading, on at least ten (10) days prior written notice to the Pre-Petition ABL Agent and the Pre-Petition ABL Secured Parties or the SCP Agent or the SCP Secured Parties, as applicable, of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees.

Section 4.    Default; Rights and Remedies; Relief from Stay.

4.1    Events of Default.  The occurrence of any Event of Default as defined and under the DIP Credit Agreement shall constitute an "**Event of Default**" under this Interim Order.

4.2    Remedies Upon Occurrence of an Event of Default.

4.2.1    Upon the occurrence of and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay or any further Order of the Court (i) the DIP Agent and DIP Lenders shall no longer have any obligation to make any Borrowing under the DIP Facility; (ii) all amounts outstanding under the DIP Financing Documents shall be automatically accelerated; (iii) the DIP Agent and the Pre-Petition ABL Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral by not

-40-

#32478730 v1

less than five business days' written notice thereof to counsel for the Debtors, counsel for any Committee, counsel for the SCP Secured Parties, and the U.S. Trustee, without further application or order of this Court; (iv) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Interim Order, the DIP Credit Agreement and the other DIP Financing Documents, the Pre-Petition ABL Financing Documents and the SCP Financing Documents; (v) subject to the notice requirement and the Intercreditor Agreement, the DIP Agent, the Pre-Petition ABL Agent and the SCP Secured Parties shall be entitled to take any act or exercise any other right or remedy as provided in this Interim Order, the DIP Financing Documents, the Pre-Petition ABL Financing Documents, the SCP Financing Documents or applicable law, including, without limitation, setting off any Obligations or Pre-Petition ABL Obligations or SCP Obligations with DIP Collateral or Pre-Petition Collateral or proceeds in the DIP Agent's, and DIP Lenders', any Pre-Petition ABL Secured Parties' or SCP Secured Parties' possession, and enforcing any and all rights with respect to the DIP Collateral or Pre-Petition Collateral.

4.2.2   Additionally, upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent, the Pre-Petition ABL Agent or the SCP Agent of their respective rights and remedies under this Interim Order, the DIP Financing Documents, Pre-Petition ABL Financing Documents, or the SCP Financing Documents, as applicable, and subject to the Intercreditor Agreement, the Debtors shall assist the DIP Agent, the Pre-Petition ABL Agent and the SCP Secured Parties in effecting any sale or other disposition of the DIP Collateral or Pre-Petition Collateral required by the DIP Agent, the Pre-Petition ABL Agent or the SCP Secured Parties, including any sale of DIP Collateral or Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code or assumption and assignment of DIP Collateral or Pre-Petition Collateral consisting of contracts and leases

-41-

#32478730 v1

pursuant to section 365 of the Bankruptcy Code, in each case, upon such terms that are designed to maximize the proceeds obtainable from such sale or other disposition and otherwise acceptable to the DIP Agent, the Pre-Petition ABL Agent and the SCP Secured Parties, and the Debtors shall fully cooperate with the DIP Agent, the Pre-Petition ABL Agent and the SCP Secured Parties in their exercise of rights and remedies. The Debtors shall not seek to enjoin, hinder, delay or object to the DIP Agent's, the Pre-Petition ABL Agent's or the SCP Secured Parties' exercise of rights and remedies in accordance with the DIP Financing Documents, the Pre-Petition ABL Financing Documents or the SCP Financing Documents, as applicable, other than to challenge the occurrence of the relevant Event of Default.

4.2.3    Upon and after the occurrence of an Event of Default, and subject to (i) the five day notice provision provided above and (ii) the Intercreditor Agreement, in connection with a liquidation of any of the DIP Collateral, the DIP Agent, the Pre-Petition ABL Agent and the SCP Agent (or any of their respective employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (x) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors; and (y) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses.

4.2.4    The rights and remedies of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that such parties may have under the DIP Financing Documents, Pre-Petition ABL Financing Documents, the SCP Financing Documents or

-42-

otherwise. The fourteen day stay provisions of Federal Rules of Bankruptcy Procedure 6004(h) are hereby waived.

4.2.5   Notwithstanding of the rights and remedies set forth herein or in the Interim Order, the DIP Financing Documents, Pre-Petition ABL Financing Documents, or the SCP Financing Documents, as applicable, the DIP Agent's, the Pre-Petition ABL Agent's or the SCP Agent's right, as applicable, to use or occupy any of the Debtors' leased premises in connection with the exercise of any right or remedy upon the occurrence of an Event of Default shall be limited to (i) the existing rights of the DIP Agent, the Pre-Petition ABL Agent and the SCP Agent, and the applicable landlord under applicable non-bankruptcy law, (ii) the written consent of the applicable landlord, or (iii) the further order of the Court upon motion and notice appropriate under the circumstances.

4.3    Expiration of Commitment/Relief from Stay.  Upon the expiration of the Borrower's authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order (except if such authority shall be extended with the prior written consent of the DIP Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by the DIP Agent or any DIP Lender) or upon the events defined in clause (d) of the definition of Revolving Termination Date (as defined in the DIP Credit Agreement), unless an Event of Default occurs sooner and the automatic stay has been lifted or modified as provided herein, all of the Obligations shall immediately become due and payable and the DIP Agent and the DIP Lenders shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the DIP Agent and the DIP Lenders pursuant to the terms and conditions of the DIP Financing Documents or this Interim Order, and the DIP Agent, acting on

-43-

behalf of itself and the other DIP Lenders, shall be and is hereby authorized, in its sole discretion, but subject to the Intercreditor Agreement, to take any and all actions and remedies provided to it in this Interim Order, the DIP Financing Documents or applicable law which the DIP Agent may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Borrower's and Guarantors' Estates.

4.4     Landlord Waiver Agreements.    All rights and remedies granted in any landlord waiver executed and delivered in connection with the Pre-Petition ABL Obligations, Pre-Petition ABL Credit Agreement, the SCP Obligations, the SCP Credit Agreement and in the Intercreditor Agreement, and all rights granted to the Pre-Petition ABL Secured Parties and the SCP Secured Parties therein, including the right to access any premises leased by Debtors and access the Pre-Petition Collateral, shall be deemed to be continuing, enforceable and applicable to and binding upon the landlords and other parties to such agreements with respect to the DIP Collateral, the Obligations and the SCP Obligations.

Section 5.     Representations; Covenants; and Waivers.

5.1     Objections to Pre-Petition ABL Obligations and SCP Obligations.    The Debtors' admissions, stipulation, acknowledgements, agreements, releases and waivers contained in this Interim Order with respect to, among other things, the extent, legality, validity, perfection, enforceability and other matters noted in this Interim Order with respect to the Pre-Petition ABL Financing Documents, the SCP Financing Documents, the Pre-Petition ABL Secured Parties' and SCP Secured Parties' liens in the Pre-Petition Collateral and in the DIP Collateral as security for the Pre-Petition ABL Obligations, the SCP Obligations and the Adequate Protection Obligations, shall be binding upon all other parties in interest including any Committee, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors for all purposes subject only to the rights of any party in interest with standing for a period of the

-44-

earlier of (x) sixty (60) days after the appointment of the Committee or (y) seventy-five (75) days after entry of the Final Order if no Committee is appointed (such period hereafter referred to as the "**Challenge Period**") to seek to (a) challenge in any manner the Pre-Petition ABL Obligations or the SCP Obligations, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with, the Pre-Petition ABL Obligations or the Pre-Petition ABL Financing Documents or the SCP Obligations or the SCP Financing Documents, including, without limitation, any payments made in respect thereof, or (b) assert or allege any other matters in any way arising out of, relating to, or in connection with, the Pre-Petition ABL Obligations or the Pre-Petition ABL Financing Documents or the SCP Obligations or the SCP Financing Documents, or (c) challenge the extent, legality, validity, perfection and/or enforceability of any Pre-Petition ABL Secured Party's or SCP Secured Parties' pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code (the actions described in clause (a), (b) and/or (c) above, collectively referred to herein as an "**Objection**"). If an Objection is not timely filed within such Challenge Period or the Court does not rule in favor of the plaintiff or moving party in any such proceeding (I) the Pre-Petition ABL Obligations and the SCP Obligations, as applicable, shall be deemed allowed in full and the Pre-Petition ABL Secured Parties' and the SCP Secured Parties', as applicable, security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non-avoidable, perfected and senior to all other liens (subject only to Permitted Liens to the extent such liens are valid, perfected and unavoidable) upon and claims against the Pre-Petition Collateral with respect to all parties in these Cases and not be subject to any counterclaims, setoff, recoupment, deduction, subordination or claim of any kind or any defenses, or any further objection or challenge by any party at any time, and (II) the Pre-Petition ABL Secured Parties and the SCP Secured Parties, as applicable, and each their

-45-

respective affiliates, agents, officers, directors, employees, attorneys, professionals, successors, and assigns shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Pre-Petition ABL Obligations or the Pre-Petition ABL Financing Documents or the SCP Obligations or the SCP Financing Documents, as applicable, and shall not be subject to any further objection or challenge by any party at any time. If an Objection is timely filed within such Challenge Period, any payments of principal made by the Debtors following the entry of the Interim Order on account of the Pre-Petition ABL Obligations or the SCP Obligations are subject to disgorgement from the applicable Pre-Petition ABL Lender or SCP Lender or such other relief as provided for in any final order of a court of competent jurisdiction with respect to such Objection and any such amounts disgorged, if any, shall not be accorded administrative priority status. Nothing in this Interim Order shall be deemed to confer standing to commence any action or proceeding on either the Committee, or any other party-in-interest. After expiration of the Challenge Period, the release set forth in Section 5.4 with no Objection having been interposed on behalf of the Debtors' Estates, shall be binding on the Debtors' Estates, including any subsequently appointed trustee, fiduciary or successors and assigns. To the extent that the Committee or any other party in interest with standing timely files an Objection on behalf of any of the Estates against any Pre-Petition ABL Secured Party or SCP Secured Party, the releases set forth in Section 5.4 shall be binding other than with respect to specific matters asserted in the Objection.

5.2    Debtors' Waivers. The Debtors acknowledge and agree that they have no right or claims against any third party provider of letters of credit on behalf of the LC Facility Lenders (as defined in the DIP Credit Agreement and Pre-Petition ABL Credit Agreement), in its capacity as such (the "L/C Issuer"). At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek

-46-

authority: (i) to use Cash Collateral under section 363 of the Bankruptcy Code except to the extent expressly permitted in this Interim Order; (ii) until all Obligations and all SCP Obligations are indefeasibly paid and satisfied in full, to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, other than from the DIP Agent and the DIP Lenders on the terms and conditions set forth herein; (iii) to challenge the application of any payments authorized by this Interim Order pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the ABL Priority Collateral is less than the Pre-Petition ABL Obligations; (iv) to propose or support a plan of reorganization that does not provide for the indefeasible payment in full and satisfaction of all Post-Petition Obligations and, subject to entry of the Final Order and Section 5.1 hereof, all Pre-Petition Obligations on or before the effective date of such plan; or (v) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders or the SCP Secured Parties as provided in this Interim Order or the DIP Financing Documents or the SCP Financing Documents, as applicable, or the DIP Agent's, the DIP Lenders' and the SCP Secured Parties' exercise of such rights or remedies. The Debtors agree that the Post-Petition Obligations and, subject to the entry of the Final Order and Section 5.1 hereof, the Pre-Petition Obligations and the SCP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization and hereby waives any such discharge, unless all commitments of the DIP Lenders with respect to the DIP Facility under the DIP Financing Documents have been terminated, such obligations have been indefeasibly paid in full, in cash, and all Letters of Credit have been cancelled (or cash collateralized or otherwise back-stopped, in each case, to the satisfaction of each L/C Facility Lender (as defined in the DIP Credit Agreement) .

#32478730 v1

5.3     Section 506(c) Claims.     Effective upon the entry of a Final Order approving the Motion, no costs or expenses of administration which have or may be incurred in the Cases at any time shall be charged against the Pre-Petition ABL Agent or any Pre-Petition ABL Lender or the DIP Agent or any DIP Lender or any SCP Secured Party, their respective claims or the Pre-Petition Collateral or the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of the DIP Agent or the SCP Secured Parties, as applicable (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, the Pre-Petition ABL Agent, any Pre-Petition ABL Lender or any SCP Secured Party). Upon entry of a Final Order, the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or DIP Collateral.

5.4     Release.

5.4.1     Each Debtor, on behalf of itself, and other legal representatives (collectively, the "**Releasors**"), subject to Section 5.1 hereof, hereby absolutely releases, forever discharges and acquits each Pre-Petition ABL Secured Party, the L/C Issuer, each SCP Secured Party and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (all such parties being hereinafter referred to collectively as "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses rights of set-off, demands and liabilities whatsoever

-48-

#32478730 v1

(individually, a "**Pre-Petition Released Claim**" and collectively, the "**Pre-Petition Released Claims**") of every kind, name, nature and description, known or unknown, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses, that any of the Releasors may now or hereafter own, hold, have or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the date of this Interim Order, in respect to the Debtors, the Pre-Petition ABL Obligations, the Pre-Petition ABL Financing Documents, the SCP Obligations, the SCP Financing Documents and any Borrowing, letter of credit or other financial accommodations made by the Pre-Petition ABL Secured Parties or the SCP Secured Parties to the Debtors pursuant to the Pre-Petition ABL Financing Documents or the SCP Financing Documents, as applicable. In addition, upon the indefeasible payment in full of all Obligations owed to the DIP Agent and the DIP Lenders by the Debtors and termination of the rights and obligations arising under this Interim Order and the DIP Financing Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Agent), the DIP Agent and the DIP Lenders shall be released by the Releasors from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Financing Documents or this Interim Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated), on terms and conditions acceptable to the DIP Agent.

      5.4.2   Upon the entry of this Interim Order and subject to Section 5.1 herein, each of the Releasors hereby absolutely, unconditionally and irrevocably, covenants and agrees with each of the Releasees that it will not sue (at law, in equity, in any regulatory proceeding or otherwise) any of the Releasees on the basis of any Pre-Petition Released Claim

-49-

released and discharged by each of the Releasors pursuant to Section 5.4.1 above. If any of the Releasors violates the forgoing covenant, Debtors agree to pay, in addition to such other damages as any of the Releasees may sustain as a result of such violation, all attorneys' fees and costs incurred by any of the Releasees as a result of such violation.

Section 6.      Other Rights and Obligations.

6.1      No Modification or Stay of this Interim Order.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order, the DIP Financing Documents or any term hereunder or thereunder, (ii) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (iii) the dismissal or conversion of one or more of the Cases, the DIP Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and benefits in favor of the DIP Agent and the DIP Lenders pursuant to section 364(e) of the Bankruptcy Code, the Interim Order and the DIP Financing Documents.

6.2      Power to Waive Rights; Duties to Third Parties.  The DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of such party (the "**Lender Rights**"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s), subject to the AAL and the Intercreditor Agreement. Any waiver by any such party of any Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to any such party.

6.3      Disposition of Collateral   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without an order of this

-50-

Court (which shall include this Interim Order), except for sales of the Borrower's inventory in the ordinary course of their business.

      6.4    Inventory.  The Debtors shall not, without the prior written consent of the DIP Agent and the SCP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent or any DIP Lender or the SCP Agent or any SCP Lender), (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(l) of the Bankruptcy Code or otherwise.

      6.5    Reservation of Rights.  The terms, conditions and provisions of this Interim Order are in addition to and without prejudice to the rights of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Financing Documents, the Pre-Petition ABL Financing Documents, the SCP Financing Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estate.

      6.6    Modification of the Automatic Stay.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order and the DIP Financing Documents, including without

#32478730 v1

limitation the application of collections, authorization to make payments, granting of liens and perfection of liens.

  6.7  Binding Effect.

  6.7.1 The provisions of this Interim Order, the DIP Financing Documents, the Obligations, the DIP Superpriority Claim, ABL Adequate Protection Liens, ABL Adequate Protection Claims, the SCP Adequate Protection Liens, the SCP Adequate Protection Claims and any and all rights, remedies, privileges and benefits in favor of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties provided or acknowledged in this Interim Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Interim Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Cases.

  6.7.2 Any order dismissing one or more of the Cases under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Agent's, the DIP Lenders', the Pre-Petition ABL Secured Parties' and the SCP Secured Parties' liens on and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law and rules of this Court, notwithstanding such dismissal, for the purposes of enforcing the DIP Superpriority Claim, the ABL Adequate Protection Claims, the SCP Adequate Protection Claims and liens and security interests of the DIP Agent, the DIP

-52-

Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties in the DIP Collateral.

6.7.3   In the event this Court modifies any of the provisions of this Interim Order or the DIP Financing Documents following a Final Hearing: (a) such modifications shall not affect liens with respect to the DIP Collateral, the DIP Superpriority Claim, the ABL Adequate Protection Liens, the ABL Adequate Protection Claims, the SCP Adequate Protection Liens, and the SCP Adequate Protection Claims specifically provided pursuant to this Interim Order and the priorities of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties granted herein; (b) upon entry of the Final Order, such modifications shall not affect the rights or priorities of any portion of the Obligations which arises or is incurred or is advanced prior to such modifications; and (c) this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

6.7.4   This Interim Order shall be binding upon the Debtors, their Estates, all parties in interest in the Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Cases or any subsequently converted bankruptcy case(s) of any Debtors and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties and the SCP Secured Parties, the Debtors and their respective successors and assigns (collectively, the "**Successor Cases**").

6.8     Marshalling.   In no event shall the DIP Agent, the DIP Lenders, the Pre-Petition ABL Secured Parties or the SCP Secured Parties be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral.

6.9     Proofs of Claim.   Notwithstanding the entry of an order establishing a bar date in any of these Cases, the Pre-Petition ABL Secured Parties and the SCP Secured Parties

-53-

shall not be required to file proofs of claim in any of the Cases with respect to any of the Pre-Petition ABL Obligations or the SCP Obligations or any other claims or liens granted hereunder or created hereby. The Pre-Petition ABL Agent, for the benefit of the Pre-Petition ABL Secured Parties, and the SCP Agent, for the benefit of the SCP Secured Parties, are hereby authorized and entitled, in their sole and absolute discretion, but in no event are required, to file (and amend and/or supplement, as they sees fit) aggregate proofs of claim in each of the Cases on behalf of all of the Pre-Petition ABL Secured Parties in respect of the Pre-Petition ABL Obligations and on behalf of all of the SCP Secured Parties in respect of the SCP Obligations, as applicable. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition ABL Secured Parties or the SCP Secured Parties, as applicable. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases will so provide.

6.10   Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h). The notice requirements of Bankruptcy Rule 6004(a) and the 14 day stay of 6004(h) are hereby waived. Based upon the evidence submitted and presented to this Court, the Debtors have satisfied their burden under Bankruptcy Rule 6003(b).

6.11   Wireless Carrier Rights Preserved. Nothing in this Order or the DIP Financing Documents shall subordinate, diminish, impair or affect any rights, remedies, claims or defenses (collectively, the **"Wireless Carrier Rights"**) that (i) Cellco Partnership d/b/a Verizon Wireless and/or its affiliates, (ii) Sprint Nextel Corporation (and/or Sprint Solutions Inc.) and/or its affiliates or (iii) AT&T Inc. (and/or AT&T Mobility LLC) and/or its affiliates may have under agreements with the Debtors, the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, and all such Wireless Carrier Rights are hereby preserved.

#32478730 v1

6.12    Order Controls.  Unless this Interim Order specifically provides otherwise,
in the event of a conflict between (a) the terms and provisions of the DIP Financing Documents
and/or the Pre-Petition ABL Financing Documents or (b) the terms and provisions of this Interim
Order, then in each case the terms and provisions of this Interim Order shall govern, interpreted
as most consistent with the terms and provisions of the DIP Financing Documents.

6.13    Objections Overruled.  All objections to the entry of this Interim Order
are, to the extent not withdrawn, hereby overruled with prejudice.

Section 7.     Final Hearing and Response Dates.

The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is
scheduled for February 20, 2015 at 9:00 a.m. before this Court.  The Debtors shall promptly mail
copies of this Interim Order to the Noticed Parties, and to any other party that has filed a request
for notices with this court and to any Committee after same has been appointed, or Committee
counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief
sought at the Final Hearing shall serve and file written objections, which objections shall be
served upon (a) Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201 (Attn: Gregory M.
Gordon, Esq.); (b) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street,
Wilmington, Delaware 19801 (Attn: David M. Fournier, Esq.); (c) Kaye Scholer LLP, 250 West
55th Street, New York, New York 10019-9710 (Attn: Scott Talmadge, Esq.); (d) counsel to any
Committee; (e) Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022
(Attn: Richard Hahn, Esq.); (f) DLA Piper, LLP (US), 1251 Avenue of the Americas, New
York, New York 10020 (Attn: Gregg Galardi, Esq.); (g) Choate, Hall & Stewart LLP, Two
International Place, Boston, Massachusetts 02110 (Attn: John F. Ventola, Esq.); (h) Schulte
Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq.
and David M. Hillman, Esq.); and (i) the U.S. Trustee (Attn: Richard L. Schepacarter); and shall

-55-

#32478730 v1

be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, in each case, to allow actual receipt of the foregoing no later than February 17, 2015, by 4:00 p.m. prevailing Eastern time.

Dated: Feb 10 / 2015
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE

-56-