## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11
                                              :
RADIOSHACK CORPORATION, et al.,               :   Case No. 15-10197 (BLS)
                                              :   (Jointly Administered)
          Debtors.¹                           :
                                              :   ECF Nos. 52, 300, 308, 372, 433, 436, 510
-----------------------------------------------------------------x
```

## JOINT OMNIBUS REPLY OF THE ADMINISTRATIVE AGENT FOR THE DEBTOR-IN-POSSESSION CREDIT FACILITY AND THE FIRST OUT ABL LENDERS TO THE OBJECTIONS TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN POST-PETITION FINANCING, (B) USE CASH COLLATERAL; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (III) SCHEDULING A FINAL HEARING; (IV) APPROVING ENTRY INTO DIP FINANCING SUPPORT AGREEMENT AND (V) GRANTING <u>RELATED RELIEF</u>

Cantor Fitzgerald Securities LLC, as administrative agent (the "<u>Agent</u>") under that

certain Debtor-In-Possession Credit Agreement, dated as of February 5, 2015, among

RadioShack Corporation, as Borrower, the Agent, certain subsidiaries and affiliates of

RadioShack Corporation as Credit Parties thereunder, and several financial institutions party

thereto as Lenders (as the same may be amended and restated, supplemented or otherwise

modified from time to time, the "<u>DIP Credit Agreement</u>") and the First Out Lenders party thereto

---

¹ The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417). The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

(the "First Out ABL Lenders")[2] hereby file this Omnibus Reply to (i) the objection (the "Committee Objection") of the official committee of unsecured creditors (the "Committee") [ECF No. 433], (ii) the joinder of Wilmington Trust, National Association ("Wilmington Trust") to the Committee Objection [ECF No. 436],[3] (iii) the limited objection of certain Texas taxing entities (the "Taxing Entities Objection") [ECF No. 300], and (iv) the objection of Digital Stream Technology (the "Digital Stream Objection") [ECF No. 308].[4]

## PRELIMINARY STATEMENT

1.      The Debtor's motion seeks final approval of an arm's-length, third-party, heavily negotiated financing under the DIP Credit Agreement (the "DIP Financing") entered into by the Debtors in the reasonable exercise of their business judgment.  While the Committee may disagree with the need for the DIP Financing and its terms, it is well established that the Committee cannot substitute its business judgment for that of the Debtors.

2.      The First Out ABL Lenders have liens on substantially all of the Debtors' assets, including first priority liens on the cash that the Debtors propose to use to operate their businesses during the chapter 11 cases.[5]  In addition, the Debtors have advised the First Out ABL

---

[2] The First Out ABL Lenders are funds managed or advised by BlueCrest Capital Management (New York) LP; DW Partners, L.P.; Macquarie Credit Investment Management Inc., Mudrick Capital Management, LP; Saba Capital Management, L.P.; T. Rowe Price Associates, Inc. and Taconic Capital Advisors L.P.

[3] Wilmington Trust simply concurs with and joins in the legal arguments advanced in the Committee Objection.

[4] The Agent and the First Out ABL Lenders understand that the parties are working to resolve the Taxing Entities and Digital Stream Objections.  The Agent and the First Out ABL Lenders are committed to working with the parties to resolve the outstanding issues.  The Agent and the First Out ABL Lenders reserve all rights with respect to these objections pending review of the final settlements thereof.

[5] The Credit Agreement, dated as of December 10, 2013 (as amended by that certain First Amendment to Credit Agreement, dated as of October 3, 2014, and as further amended, restated, supplemented or otherwise modified from time to time, the "ABL Credit Agreement"), originally by and among RadioShack Corporation, as Borrower, certain subsidiaries and affiliates of RadioShack Corporation as Credit Parties thereunder, the several financial institutions party thereto as Lenders and General Electric Capital Corporation, as the original administrative agent for the Lenders, is structured as a "unitranche" loan governed by an Agreement Among (….continued)

Lenders that they require incremental liquidity of $20 million to meet their postpetition liquidity

needs and up to $15 million of additional letter of credit capacity to operate their business.

[Adrianopoli Affidavit ¶ 51]  The terms of the DIP Financing and the Final Order[6] represent the

highly negotiated outcome between the Debtors and the DIP Lenders, and are the terms on which

the First Out ABL Lenders are willing to provide the DIP Financing and consent to the use of

their cash collateral.

3.    In asserting that the Debtors do not need incremental financing, the Committee

assumes that the Debtors would have free use of the First Out ABL Lenders' cash collateral to

operate the Debtors' business.  This assumption is premised on a fantasy hypothetical wherein

the First Out ABL Lenders consent to the use of their cash collateral as the Debtors liquidate

inventory, close stores and attempt to sell a portion of their business in return for nothing more

than replacement liens.  Replacement liens alone are not customarily relied upon by secured

lenders even when debtors are selling inventory, generating cash and replenishing inventory in

---

(continued….)
Lenders, dated as of October 3, 2014, (as amended, the "AAL") originally among General Retail Holdings L.P. ("GRH"), General Retail Funding LLC ("GRF"), Wells Fargo Bank, N.A. ("Wells Fargo"), certain other lenders party thereto, and Cantor Fitzgerald Securities in its capacity as successor administrative agent under the ABL Credit Agreement.  Upon information and belief, GRH and GRF are entities affiliated with or managed by Standard General L.P.  ("Standard General").  [Adrianopoli Aff. ¶ 26]  All of the First Out ABL Lenders acquired their claims in the secondary market from Wells Fargo Bank, N.A., at the time of the October 2014 transactions.  [Adrianopoli Aff. ¶¶ 26-29]

Under the AAL, the Lenders under the ABL Credit Agreement are classified into three tranches:  First Out Lenders, Second Out Lenders and Last Out Lenders.  The First Out ABL Lenders herein are the First Out Lenders under the AAL and hold both Term Loans and Term Out Revolving Loans (each as defined under the Pre-Petition ABL Credit Agreement).  GRH and GRF are the Second Out Lenders and the Last Out Lenders, respectively.  As such, despite the Committee's characterization of the First Out ABL Lenders as "co-investors" of Standard General, the First Out ABL Lenders are secondary market purchasers that have interests in these cases separate and apart from those of Standard General.

[6] Capitalized terms not defined herein have the same meanings ascribed to such terms in the Order (I) Authorizing the Debtors to (A) Obtain Financing on an Interim Basis and (B) Utilize Cash Collateral of Pre-Petition Secured Parties on an Interim Basis, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363(C), (D) & (E) and 507(B), and (V) Scheduling a Final Hearing Authorizing Financing on a Final Basis Pursuant to Bankruptcy Rule 4001 (the "Interim DIP Order").

the ordinary course of business.  But here the Debtors are not turning over inventory in the ordinary course—in many cases, they are liquidating it.  Mere replacement liens could never adequately protect the First Out ABL Lenders for the use of their collateral, including the cash generated from sales of their collateral, during these cases, and for those reasons the Committee knows well the DIP Lenders would never consent to the use of their cash collateral on those terms.

4.      The Committee Objection is filled with fiery rhetoric intended to conflate the proposed sale transaction and the Debtors' proposed DIP Financing.  But the sale transaction and the DIP Financing are separate transactions.  In the DIP Financing transaction, the DIP Lenders are offering an incremental $35 million of financing on terms that were negotiated at arm's length by and between the Debtors and third-party lenders and under circumstances where the Debtors are operating even now at a loss.  When you cut through the dramatic innuendo of the Committee Objection, it becomes apparent that the Committee's issues with particular provisions of the DIP Financing and Final Order, in addition to being wholly inappropriate cherry-picking, are factually and legally incorrect.  Nonetheless, the Agent and the First Out ABL Lenders are willing to work collaboratively with the Committee, the Debtors, the SCP Lenders and other parties in interest in an attempt to resolve specific concerns raised in the Committee Objection.

## JOINDER

5.      The Agent and the First Out ABL Lenders join in the arguments and relief requested in the Debtors' reply in support of the Final Order (the "Debtor's Reply").  In addition, the Agent and the First Out ABL Lenders additionally respectfully submit as follows:

## ARGUMENT

**I.**   **The Terms of the DIP Financing, Including the Adequate Protection Provided to the First Out ABL Lenders, Are an Interconnected Package, Fair and Reasonable, and the Result of Arm's-Length Negotiations**

6.      As described in the Debtors' Reply, the DIP Financing was the result of extensive and arm's length negotiation between the Debtors and the DIP Lenders.  The economics and other terms of the DIP Financing, as well as the specific provisions, milestones and covenants of the DIP Credit Agreement, were specifically negotiated and tailored.  Moreover, neither the Debtors nor the Committee has identified any other party that was willing to extend new-money financing secured only by unencumbered assets or on more favorable terms.  While every debtor (and every official committee of unsecured creditors) would wish for more favorable terms, that is not the standard to be applied when considering a given debtor-in-possession financing.  Instead, DIP financings are to be considered as a whole based on the availability of alternatives and the Debtors' business judgment.  *See In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 888 (Bankr. S.D.N.Y. 1990) ("[The objecting creditor] did not negotiate the Agreement and the Court is not to second guess the inclusion of some provisions as long as the Agreement as a whole is within reasonable business judgment, and the subject provisions do not distort the balance Congress struck in Chapter 11").

7.      Here, the adequate protection provided to the First Out ABL Lenders, including the roll-up, in exchange for the DIP Financing and the lenders' consent to use of their cash and other collateral is firmly within the sound exercise of the Debtors' business judgment.  Adequate protection packages take many forms, and the adequate protection provided to the First Out ABL Lenders is customary and appropriate in light of the risks of diminution in the value of their collateral.  *See, e.g.*, *In re Panther Mountain Land Development, LLC*, 438 B.R. 169, 189 (E.D. Ark. 2010) (Section 361 "opens the door to a boundless array of protective measures").

5

Specifically, section 363(e) of the Bankruptcy Code requires that a debtor adequately protect a secured creditor's interest in property to be used by the debtor from any diminution in value of such secured creditor's interest resulting from the debtor's use of the property during the chapter 11 case.  11 U.S.C. § 363(e); *In re 354 E. 66th St. Realty Corp.*, 177 B.R. 776, 782 (Bankr. E.D.N.Y. 1995) ("The purpose or intent of granting adequate protection payments are to maintain the status quo for that creditor and to protect the creditor from diminution or loss of the value of its collateral during the ongoing Chapter 11 case.")   The Debtors here freely admit that, given their near-term business plan and strategy (including store closings and the liquidation of significant amounts of inventory outside of the ordinary course), they are simply unable to adequately protect the First Out ABL Lenders' interest in cash and other collateral.  [Debtor's Reply ¶ 17]

8.      Given the circumstances here, the dollar-for-dollar roll-up of the obligations under the Pre-Petition ABL Credit Agreement should not be "controversial from the technical perspective of the priority or satisfaction of liens [given that the DIP Lenders were] fully secured on the petition date." 3 Collier on Bankruptcy ¶ 364.04[2][e] (15th ed. rev. 2008).  This is particularly true since the rights of the Committee to investigate and challenge the liens of the Pre-Petition ABL Lenders are preserved under the Final Order.  And paydowns of the DIP Financing from the proceeds of the Debtors' inventory liquidation are not only necessary to adequately protect the First-Out ABL Lenders in an environment of decreasing inventory and operating losses, but they also in fact provide a benefit to unsecured creditors, since post-petition interest will not accrue with respect to amounts repaid.

9.      The Committee's suggestion that the First Out ABL Lenders might be adequately protected simply by having their liens attach to the proceeds of sales of their collateral, net of the

costs of preserving and disposing of the collateral, is patently false.  [Comm. Obj. ¶ 5]  The First

Out ABL Lenders already have liens on the proceeds of any sale of their collateral, and courts

have long recognized that granting "replacement liens" on a secured creditor's own collateral is

meaningless.  *See In re LTAP US, LLLP*, 2011 WL 671761, at \*3 (Bankr. D. Del. Feb. 18, 2011)

("Providing [secured creditor] with a replacement lien on assets against which it already has a

lien is illusory."); *In re Pac. Lifestyle Homes, Inc.*, 2009 WL 688908, at \*11 (Bankr. W.D. Wa.

Mar. 16, 2009) (rejecting proposed replacement lien on proceeds of future sales as adequate

protection where secured creditor already had first liens on such proceeds).  Moreover, the

Debtors are liquidating the First Out ABL Lenders' collateral *at a loss*. [Debtors' Reply ¶ 17]

As the Committee notes in its request for Bankruptcy Rule 2004 discovery [ECF No. 190] (the

"Committee's 2004 Motion"), prior to entering chapter 11, the Debtors were losing

approximately $1 million per day.  [Committee's 2004 Motion ¶ 41]  At present, by all

indications, the Debtors continue to burn cash and are, in certain instances, now selling

inventory—First Out ABL Lender collateral—at liquidation prices.  In such a circumstance, it is

beyond reasonable dispute that the Debtors are unable to adequately protect the First Out ABL

Lenders solely with recourse to the sale proceeds. *See United Sav. Ass'n of Tex v. Timbers of*

*Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988) ("[T]he right of a secured creditor to have

the security applied in payment of the debt upon completion of the reorganization . . . is not

adequately protected if the security is depreciating during the term of the stay.").

## II.    The Pledge of Proceeds of Avoidance Actions is Fair and Appropriate and Consistent with Orders Entered by Courts in this District and in this Circuit

10.    The Committee contends that the DIP Lenders are not entitled to liens on

proceeds of avoidance actions.  [Comm. Obj. ¶¶ 53-55]  Under the explicit terms of sections

541(a)(3) and (a)(4) of the Bankruptcy Code, avoidance proceeds are property of the estate.  Like

all other property of the estate, they may be pledged to secure the claims of senior creditors, and when received, must—by law—be paid to creditors in their statutory order of priority. To be clear, avoidance proceeds and other prepetition unencumbered property is being used to a large extent to protect unsecured creditors and holders of administrative claims. That secured creditors may receive some of the value is simply a function of the Bankruptcy Code's priority scheme.

11.     The case law strongly supports the granting of liens on the proceeds of avoidance actions. Courts within this District, including this Court, have routinely approved the relief requested here. *See, e.g.*, *In re Mach Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, Case No. 14-10193 (KG) (Bankr. D. Del. Mar. 21, 2014); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Nov. 21, 2013); *In re Rural Metro Corp.*, Case No. 13-11952 (KJC) (Sept. 10, 2013); *In re Exide Tech.*, Case No. 13-11482 (KJC) (Bankr. D. Del. Jul. 25, 2013); *In re Conexant Sys., Inc.*, Case No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013); *In re School Specialty, Inc.*, Case No. 13-10125 (KJC) (Bankr. D. Del. Feb. 26, 2013); *In re Educ. Holdings 1, Inc.*, Case No. 13-10101 (BLS) (Bankr. D. Del. Feb. 7, 2013); *In re Delta Petroleum Corp.*, Case No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012); *In re Evergreen Solar, Inc.*, No. 11-12590 (MFW) (Bankr. D. Del. Sept. 8, 2011); *In re Xerium Tech., Inc.*, No. 10-11031 (KJC) (Bankr. D. Del. Apr. 28, 2010); *In re Source Interlink Co., Inc.*, No. 09-11424 (KG) (Bankr. D. Del. May 28, 2009); *In re Gottschalks Inc.*, Case No. 09-10157 (KJC) (Bankr. D. Del. Feb. 13, 2009).

12.     Courts in other jurisdictions have also reached the same conclusion. *See, e.g.*, *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 23, 2014); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 16, 2012) (approving the granting of liens on proceeds of avoidance actions); *In re Hostess Brands, Inc.*, No. 12-22052

(RDD) (Bankr. S.D.N.Y. Feb. 2, 2012) (same); *In re Sbarro, Inc.*, No. 11-11527 (SCC) (Bankr. S.D.N.Y. May 4, 2011) (same); *The Great Atl. & Pac. Tea Co., Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 11, 2011); *In re Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 1, 2009) (same); *In re Frontier Airlines Holdings, Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008) (same); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002) (same); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002) (same).

**III.    The Committee Has No Standing to Object to the Waiver of the Equitable Doctrine of Marshaling, and the Marshaling Waiver is Fair and Appropriate and Consistent with Orders Entered by Courts in this District and in This Circuit**

13.    The doctrine of marshaling is an equitable doctrine for the benefit of junior secured creditors.  As representative for the unsecured creditors in this Chapter 11 case, the Committee lacks standing to object to a marshaling waiver.  Pursuant to the marshaling doctrine, a court may require a secured creditor to first satisfy its claim from property of the debtor in which a junior creditor lacks an interest—thus protecting the junior creditors' interest in property subject to both a senior and junior claim.  *In re Tampa Chain Co.*, 53 B.R. 772, 777 (Bankr. S.D.N.Y. 1985).  Thus, only a secured creditor can invoke the doctrine of marshaling.  *Galey & Lord, Inc. v. Arley Corp.* (*In re Arlco, Inc.*), 239 B.R. 261, 274 (Bankr. S.D.N.Y. 1999) (holding that unsecured creditors have no right to invoke the doctrine of marshaling) (citing *Herkimer Cnty. Trust Co. v. Swimelar* (*In re Prichard*), 170 B.R. 41, 45 (Bankr. N.D.N.Y. 1994)).  No secured party in this case has objected to the marshaling waiver.

14.    None of the cases cited by the Committee are to the contrary.  Rather, the Committee's cases merely support the position that a *debtor* can invoke the doctrine of marshaling because a debtor is imbued with the rights and powers of a hypothetical holder of a judicial lien as of the petition date under section 544(a) of the Bankruptcy Code.  *See United*

9

*States v. Houghton* (*In re Szwyd*), 408 B.R. 547, 550 (D. Mass. 2009) ("A trustee in bankruptcy may seek marshaling on behalf of unsecured creditors, who cannot do so on their own, based on his or her status as a hypothetical lien holder as of the date of the petition."); *Kittay v. Atl. Bank of N.Y.* (*In re Global Serv. Grp. LLC*), 316 B.R. 451, 463 (Bankr. S.D.N.Y. 2004) ("The trustee has standing to invoke marshaling because he has the status of a hypothetical lien creditor"); *Official Comm. of Unsecured Creditors v. Lozinski* (*In re High Strength Steel, Inc.*), 269 B.R. 560, 573 (Bankr. D. Del. 2001) (same); *In re America's Hobby Ctr., Inc.*, 223 B.R. 275, 288 n.6 (Bankr. S.D.N.Y. 1998) ("I require court approval under *STN Enterprises* of any amendment to the marshaling claim because the claim obviously belongs to the estate given that only a trustee may assert it as a hypothetical execution creditor and an unsecured creditor has no standing to do so.").

15.     Just as the Debtors may invoke the marshaling doctrine, they may also waive the right to invoke the doctrine as part of a DIP financing transaction.  Marshaling waivers are the market norm for a DIP facility of this size and type and are routinely approved.  *See, e.g., In re Mach Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, Case No. 14-10193 (KG) (Bankr. D. Del. Mar. 21, 2014); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Nov. 21, 2013); *In re Rural Metro Corp.*, Case No. 13-11952 (KJC) (Sept. 10, 2013); *In re Exide Tech.*, Case No. 13-11482 (KJC) (Bankr. D. Del. Jul. 25, 2013); *In re Conexant Sys., Inc.*, Case No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013); *In re Ormet Corp.*, Case No. 13-10334 (MFW) (Bankr. D. Del. Mar. 22, 2013); *In re THQ Inc.*, Case No. 12-13398 (MFW) (Bankr. D. Del. Jan. 11, 2013); *In re WP Steel Venture LLC*, Case No. 12-11661 (KJC) (Bankr. D. Del. June 21, 2012); *In re A123 Sys., Inc.*, Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 26, 2012); *In re AFA Inv., Inc.*, Case No.

12-11127 (MFW) (Bankr. D. Del. Apr. 30, 2012); *In re Delta Petroleum Corp.*, Case No. 11-

146006 (KJC) (Bankr. D. Del. Jan. 11, 2012); *In re Xerium Tech., Inc.*, Case No. 10-11031

(KJC) (Bankr. D. Del. Apr. 28, 2010); *In re Source Interlink Co.*, Case No. 09-11424 (KG)

(Bankr. D. Del. May 28, 2009); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr.

S.D.N.Y. Feb. 16, 2012); *In re Hostess Brands, Inc.*, No. 12-22052 (RDD) (Bankr. S.D.N.Y.

Feb. 2, 2012); *The Great Atl. & Pac. Tea Co., Inc.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan.

11, 2011); *In re Lyondell Chem. Co.*, Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Mar. 1, 2009).

**IV.    Section 506(c) May Be Waived at the Sole Discretion of the Debtors**

16.     Although the Committee does not expressly object to the Debtors' section 506(c)

waiver, the Committee Objection attempts to cast aspersions on this provision in the Final DIP

Order.  *See* Comm. Obj. ¶ 4 ("The estates surrender fundamental bankruptcy protections that are

especially appropriate in these cases, such as marshalling and the ability to surcharge purported

collateral for the costs of preserving and disposing of it under section 506(c)"); Comm. Obj. ¶ 26

("The Proposed Final Order provides for a complete waiver of the Debtors' ability to surcharge

any collateral for the administration of these cases.")  However, the decision to grant a section

506(c) waiver resides entirely with the Debtors and is appropriate in this Case.

17.     Section 506(c) of the Bankruptcy Code permits a debtor to recover from property

securing an allowed claim the reasonable costs of preserving such property.  As consideration for

the DIP Financing and the agreement by the Pre-Petition ABL Secured Parties and the SCP

Secured Parties to use cash collateral to fund the chapter 11 cases, the Final DIP Order includes a

waiver of section 506(c) by the Debtors. It is well established that the Debtors are vested with the

discretion to waive section 506(c), and the Committee has not cited any authority to the contrary.

18.     As a threshold matter, section 506(c) claims are available to, and are an asset of,

the Debtors, and not to any other creditor or party in interest.  *See Hartford Underwriters Ins.*

*Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) ("the trustee is the only party empowered to

invoke" section 506(c)); *see also In re Smart World Techs., LLC*, 423 F.3d 166, 181-82 (2d Cir.

2005) ("Section 506(c) . . . allows only the 'trustee,' or debtor-in-possession, to take advantage

of this exception . . . . We read *Hartford Underwriters* to stand for the proposition that § 1109(b)

does not entitle parties in interest, such as Smart World's creditors, to usurp the debtor-in-

possession's role as legal representative of the estate."); *In re River Ctr. Holdings, LLC*, 394

B.R. 704, 717 (Bankr. S.D.N.Y. 2008) ("The Supreme Court has made clear that only the trustee

has the power, under the plain language of the Code, to assert a section 506(c) claim.").  There is

simply no reason whatsoever that these claims cannot be settled or traded for valuable

consideration by the Debtors.

      19.     Moreover, the primary rationale for application of 506(c) is to allow for a

surcharge of secured creditors' collateral to the extent that unencumbered assets are used during

the cases for the secured creditors' benefit.  *See, e.g., C.S. Assocs. v. Miller*, 29 F.3d 903, 907 (3d

Cir. 1994) ("Courts have narrowly construed § 506(c) to encompass only those expenses that are

specifically incurred for the express purpose of ensuring that the property is preserved and

disposed of in a manner that provides the secured creditor with a maximum return on the debt

and also apportions those costs to the secured creditor who, realistically, is assuming the asset.")

(citing *In re Parr Meadows Racing Ass'n*, 92 Bankr. 30, 35-36 (E.D.N.Y. 1998).  This rationale

is not applicable when, as in this Case, the estate is spending the ABL Lenders' cash collateral to

operate its business, the residual value of which would reside with unsecured creditors, and to

pay the expenses of the chapter 11 cases, including the fees of the Committee's professionals.

      20.     Courts in this District have regularly endorsed section 506(c) waivers in Final DIP

Orders, using virtually the same formulation that is in the proposed Final DIP Order before the

Court.  *See, e.g.*, *In re Mach Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27,

2014); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, Case No. 14-10193 (KG) (Bankr. D. Del. Mar.

21, 2014); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Nov. 21,

2013); *In re Rural Metro Corp.*, Case No. 13-11952 (KJC) (Sept. 10, 2013); *In re Exide Tech.*,

Case No. 13-11482 (KJC) (Bankr. D. Del. Jul. 25, 2013); *In re Rotech Healthcare Inc.*, No. 13-

10741 (PJW) (Bankr. D. Del. May 14, 2013); *In re Namco LLC*, No. 13-10610 (PJW) (Bankr. D.

Del. May 7, 2013); *Powerwave Tech., Inc.*, No. 13-10134 (MFW) (Bankr. D. Del. Apr. 23,

2013); *In re Conexant Sys., Inc.*, No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013); *In re

Ormet Corp.*, No. 13-10334 (MFW) (Bankr. D. Del. Mar. 22, 2013); *In re School Specialty, Inc.*,

No. 13-10125 (KJC) (Bankr. D. Del. Feb. 26, 2013); *In re Educ. Holdings 1, Inc.*, No. 13-10101

(BLS) (Bankr. D. Del. Feb. 7, 2013); *In re Carl's Patio, Inc.*, No. 13-10102 (KG) (Bankr. D.

Del. Feb. 5, 2013); *In re THQ, Inc.*, No. 12-13398 (MFW) (Bankr. D. Del. Jan. 11, 2013); *In re

Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012); *In re DSI Holdings,

Inc.*, No. 11-11941 (KJC) (Bankr. D. Del. July 21, 2011).

21.    Such provisions have regularly been authorized by courts outside this District as

well.  *See, e.g.*, *In re MPM Silicones, LLC*, Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 23,

2014); *In re Metro Affiliates, Inc.*, Case No. 13-13591 (SHL) (Bankr. S.D.N.Y. Dec. 4, 2013); *In

re Residential Capital, LLC*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. June 25, 2012); *In re

Metaldyne Corp.*, Case No. 09-13412 (MG) (Bankr. S.D.N.Y. June 23, 2009); *In re Chrysler

LLC*, Case No. 09-50002 (AJG) (Bankr. S.D.N.Y. May 20, 2009); *In re Gen. Growth Prop., Inc.*,

Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. Apr. 16, 2009); *In re Frontier Airlines Holdings,

Inc.*, No. 08-11298 (RDD) (Bankr. S.D.N.Y. Sept. 3, 2008); *In re Calpine Corp.*, No. 05-60200

(BRL) (Bankr. S.D.N.Y. Jan. 30, 2006); *In re Delphi Corp.*, No. 05-44481 (RDD) (Bankr.

S.D.N.Y. Oct. 28, 2005); *In re Delta Air Lines, Inc.*, No. 05-17923 (ASH) (Bankr. S.D.N.Y. Oct. 6, 2005); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG) (Bankr. S.D.N.Y. Aug. 23, 2002); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 2, 2002); *In re Citation Corp.*, No. 04-08130 (TOM) (N.D. Ala. Oct. 19, 2004); *In re Crown Vantage Inc.*, No. 00-41584 (RJN) (N.D. Cal. Apr. 18, 2000).

## V.    The Waiver of Section 552(b) of the Bankruptcy Code is Common and Consistent with Orders within this Circuit

22.    Like waivers of section 506(c), waivers of the "equities of the case exception" of section 552(b) of the Bankruptcy Code are common and typical.

23.    Courts in this District regularly approve section 552 "equities of the case" waivers.  *See, e.g.*, *In re Mach Gen, LLC*, Case No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); *In re Tuscany Int'l Holdings (U.S.A.) Ltd.*, Case No. 14-10193 (KG) (Bankr. D. Del. Mar. 21, 2014); *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Nov. 21, 2013); *In re Rural Metro Corp.*, Case No. 13-11952 (KJC) (Sept. 10, 2013); *In re Exide Tech.*, Case No. 13-11482 (KJC) (Bankr. D. Del. Jul. 25, 2013); *In re Rotech Healthcare Inc.*, No. 13-10741 (PJW) (Bankr. D. Del. May 14, 2013); *In re Namco LLC*, No. 13-10610 (PJW) (Bankr. D. Del. May 7, 2013); *Powerwave Tech., Inc.*, No. 13-10134 (MFW) (Bankr. D. Del. Apr. 23, 2013; *In re Conexant Sys., Inc.*, No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013); *In re Ormet Corp.*, No. 13-10334 (MFW) (Bankr. D. Del. Mar. 22, 2013); *In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Feb. 26, 2013); *In re Educ. Holdings 1, Inc.*, No. 13-10101 (BLS) (Bankr. D. Del. Feb. 7, 2013); *In re Carl's Patio, Inc.*, No. 13-10102 (KG) (Bankr. D. Del. Feb. 5, 2013); *In re THQ, Inc.*, No. 12-13398 (MFW) (Bankr. D. Del. Jan. 11, 2013); *In re Delta Petroleum Corp.*, No. 11-14006 (KJC) (Bankr. D. Del. Jan. 11, 2012); *In re DSI Holdings, Inc.*, No. 11-11941 (KJC) (Bankr. D. Del. July 21, 2011).

## **CONCLUSION**

24.     For the foregoing reasons, the Agent and the First Out ABL Lenders respectfully

request that the Court enter the Final Order in the form submitted by the Debtors.

Dated:   Wilmington, Delaware
         February 23, 2015

POTTER ANDERSON & CORROON LLP


By:   /s/ *Jeremy W. Ryan*
      Jeremy W. Ryan (DE Bar No. 4057)
      R. Stephen McNeill (DE Bar No. 5210)

1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192

-and-

KAYE SCHOLER LLP
      Scott D. Talmadge, Esquire
      H. Stephen Castro, Esquire

250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-7039
Facsimile: (212) 836-6540

*Counsel to Cantor Fitzgerald Securities LLC, as
administrative agent under the Debtor-In-
Possession Credit Agreement dated as of
February 5, 2015*

BLANK ROME LLP

By:      /s/ *Stanley B. Tarr*
              Stanley B. Tarr (DE Bar No. 5535)
              Victoria Guilfoyle (DE Bar No. 5183)

1201 N. Market Street, Suite 800
Wilmington, DE  19801
Tel: (302) 425-6400
Fax:  (302) 425-6464
Email: tarr@blankrome.com
      guilfoyle@blankrome.com


              Lawrence F. Flick II, Esquire
              Rick Antonoff, Esquire
              Michael Kim, Esquire

The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
Tel:  (212) 885-5000
Fax:  (212) 885-5001
Email: flick@blankrome.com
      rantonoff@blankrome.com
      mkim@blankrome.com

-and-

DAVIS POLK & WARDWELL LLP

              Damian S. Schaible, Esquire
              Elliot Moskowitz, Esquire
              Darren S. Klein, Esquire

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 710-5800
Email: damian.schaible@davispolk.com
      elliot.moskowitz@davispolk.com
      Darren.klein@davispolk.com

*Counsel to First Out ABL Lenders*

<u>**CERTIFICATE OF SERVICE**</u>

I, Stanley B. Tarr, hereby certify that on February 23, 2015, I caused a copy of the *Joint Omnibus Reply of the Administrative Agent for the Debtor-In-Possession Credit Facility and the First Out ABL Lenders to the Objections to the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Post-Petition Financing, (B) Use Cash Collateral; (II) Granting Liens and Super-Priority Claims; (III) Scheduling a Final Hearing; (IV) Approving Entry into DIP Financing Support Agreement and (V) Granting Related Relief* to be served upon the parties listed on the attached service list via e-mail <u>and</u> hand delivery (local) or overnight mail (non-local):

 /s/ *Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)

**SERVICE LIST**

| | |
|---|---|
| David M. Fournier<br>Evelyn J. Meltzer<br>John H. Schanne, II<br>PEPPER HAMILTON LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>fournierd@pepperlaw.com<br>meltzere@pepperlaw.com<br>schannej@pepperlaw.com | Susheel Kirpalani<br>James C. Tecce<br>Benjamin Finestone<br>Scott Shelley<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue<br>New York, New York 10010<br>susheelkirpalani@quinnemanuel.com<br>jamestecce@quinnemanuel.com<br>benjaminfinestone@quinnemanuel.com<br>scottshelley@quinnemanuel.com |
| David G. Heiman<br>JONES DAY<br>901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>dgheiman@jonesday.com | Matthew Scheck<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, California 90017<br>matthewscheck@quinnemanuel.com |
| Gregory M. Gordon<br>JONES DAY<br>2727 N. Harwood Street<br>Dallas, Texas  75201<br>gmgordon@jonesday.com | Christopher M. Samis<br>L. Katherine Good<br>WHITEFORD, TAYLOR & PRESTON LLC<br>The Renaissance Centre<br>405 North King Street, Suite 500<br>Wilmington, Delaware 19801<br>csamis@wtplaw.com<br>kgood@wtplaw.com |
| Thomas A. Howley<br>Paul M. Green<br>JONES DAY<br>717 Texas Suite 3300<br>Houston, Texas 77002<br>tahowley@jonesday.com<br>pmgreen@jonesday.com | Adam C. Harris<br>David M. Hillman<br>Brian C. Tong<br>Taejin Kim<br>SCHULTE ROTH & ZABEL LLP<br>919 Third Avenue<br>New York, New York 10022<br>adam.harris@srz.com<br>david.hillman@srz.com<br>brian.tong@srz.com<br>tae.kim@srz.com |

144120.01000/40213923v.1

| | |
|---|---|
| Jeremy W. Ryan<br>R. Stephen McNeill<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, Sixth Floor<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>jryan@potteranderson.com<br>rmcneill@potteranderson.com | Adam G. Landis<br>Kerri K. Mumford<br>LANDIS RATH & COBB LLP<br>919 North Market Street<br>Wilmington, Delaware 19801<br>landis@lrclaw.com<br>mumford@lrclaw.com |
| Scott D. Talmadge<br>H. Stephen Castro<br>KAYE SCHOLER LLP<br>250 West 55th Street<br>New York, NY 10019-9710<br>scott.talmadge@kayescholer.com<br>stephen.castro@kayescholer.com | John Ventola<br>Douglas R. Gooding<br>Sean M. Monahan<br>CHOATE, HALL & STEWART LLP<br>Two International Place<br>Boston, Massachusetts 02110<br>jventola@choate.com<br>dgooding@choate.com<br>smonahan@choate.com |
| Mark R. Somerstein<br>ROPES & GRAY LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>mark.somerstein@ropesgray.com | Robert J. Dehney<br>Gregory W. Werkheiser<br>Matthew B. Harvey<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street, Suite 1600<br>Wilmington, DE 19801<br>rdehney@mnat.com<br>gwerkheiser@mnat.com<br>mharvey@mnat.com |
| Christopher A. Ward<br>Justin K. Edelson<br>Jarrett Vine<br>POLSINELLI PC<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>cward@polsinelli.com<br>jedelson@polsinelli.com<br>jvine@polsinelli.com | Richard F. Hahn<br>Shannon R. Selden<br>DEBEVOISE & PLIMPTON LLP<br>919 Third Avenue<br>New York, New York 10022<br>rfhahn@debevoise.com<br>srselden@debevoise.com |
| Richard L. Schepacarter<br>United States Department of Justice<br>Office of the United States Trustee<br>J. Caleb Boggs Federal Building<br>844 King Street, Suite 2207, Lockbox 35<br>Wilmington, DE 19801<br>richard.schepacarter@usdoj.gov | Gregg M. Galardi<br>DLA PIPER<br>1251 Avenue of the Americas<br>New York, NY 10020-1104<br>gregg.galardi@dlapiper.com |

3

| | |
|---|---|
| Owen M. Sonik<br>Elizabeth Calvo Banda<br>PERDUE, BRANDON, FIELDER, COLLINS<br>& MOTT, LLP<br>1235 North Loop West, Suite 600<br>Houston, Texas 77008<br>osonik@pbfcm.com<br>ebcalvo@pbfcm.com | Anthony M. Saccullo<br>Thomas H. Kovach<br>A. M. SACCULLO LEGAL, LLC<br>27 Crimson King Drive<br>Bear, Delaware 19701<br>ams@saccullolegal.com<br>kovach@saccullolegal.com |
| Michael S. Fox<br>Jordanna L. Nadritch<br>OLSHAN FROME WOLOSKY LLP<br>Park Avenue Tower<br>65 East 55th Street<br>New York, NY 10022<br>mfox@olshanlaw.com<br>jnadritch@olshanlaw.com | Howard A. Cohen, Esq.<br>DRINKER BIDDLE & REATH LLP<br>222 Delaware Ave., Ste. 1410<br>Wilmington, Delaware 19801-1621<br>howard.cohen@dbr.com |

4