# **<u>EXHIBIT B</u>**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| RADIOSHACK CORPORATION, *et al.*,[1] | : | Case No. 15-———10197 |
|  | : | (———BLS) |
| Debtors. | : |  |
|  | : | (Jointly Administered) |

### ORDER (I) APPROVING BID AND SALE PROCEDURES, ~~(II) APPROVING CERTAIN BIDDING PROTECTIONS,~~ (~~III~~II) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (~~IV~~III) SCHEDULING AN AUCTION AND SALE HEARING

This matter coming before the Court on the motion (the "Motion"),[2] filed by the

above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking,

pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), an order (i) authorizing and approving the procedures that are attached hereto as

Annex 1 (the "Bidding Procedures") for the sale of certain of the Debtors' assets (the "Sale"),

(ii) approving the Bid Protections (as defined below), (iii) scheduling an Auction and Sale

---

[1]     The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417).  The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

[2]     Capitalized terms not otherwise defined in this order shall have the meanings given to them in the Motion, the Bidding Procedures or the Stalking Horse APA, as applicable.

Hearing in connection with the Sale, and (iv) approving the form and manner of notice of the Auction and the Sale Hearing; the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); various parties having filed objections to the Motion or joinders thereto [D.I. 270, 298, 301, 307, 311, 313, 318, 319, 321, 324, 326, 328, 332, 334, 338, 364, 369, 371, 374, 382, 384, 387, 430, 434, 438 and 461] (collectively, the "Objections"); Standard General, L.P. and the Debtors having filed replies in support of the Motion [D.I. 502 and 509] (together, the "Replies"); and the Court having considered the Declaration of Carlin Adrianopoli in Support of First Day Pleadings ([D.I. 17], the "First Day Declaration") of David S. Kurtz in support of the Motion [D.I. 508] and the statements of counsel and the evidence presented at the Bidding Procedures Hearing;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtors have offered good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the Motion to the extent provided

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

in this Order, including approval of (i) the Bidding Procedures, attached hereto as <u>Annex 1</u>,

(ii) the ~~Bid Protections, (iii) the~~ procedures described below for the determination of the amounts

necessary to cure defaults under the Assumed and Assigned Agreements so as to permit the

assumption and assignment under section 365 of the Bankruptcy Code of the Assumed and

Assigned Agreements, and (~~iv~~<u>iii</u>) the form and manner of notice of the Auction and Sale Hearing

described in the Motion and this Order.

C.      Good and sufficient notice of the relief sought in the Motion has been

given under the circumstances, and no further notice is required except as set forth herein with

respect to the Auction and the Sale Hearing.  Subject to the immediately preceding sentence, a

reasonable opportunity to object or to be heard regarding the relief requested in the Motion was

afforded to all interested persons and entities.

D.      In accordance with Local Rules 6004-1(c) and 9006-1, <u>the</u> Debtors have

properly filed and noticed a motion to shorten notice with respect to the scheduling of the Motion

as to the relief to be granted pursuant to this Order.  The issuance and immediately effectiveness

of this Order as of the date hereof, including approval of the ~~Bid Protections and~~ Bidding

Procedures, is supported by evidence of compelling business justifications and other

circumstances demonstrating that the relief granted by this Order is necessary immediate and

irreparable harm to the Debtors and their estates.

E.      The proposed notice of the Auction, the Sale Hearing and the Bidding

Procedures, as set forth in the Motion and this Order, is appropriate and sufficient, and is

reasonably calculated to provide all interested parties with timely and proper notice of the

Auction, the Sale Hearing and the Bidding Procedures, and no other or further notice shall be

required for the Sale or the assumption and assignment of executory contracts and unexpired leases.

F. The Wireless Carriers (as defined below) have been advised by the Debtors that the Stalking Horse Bidder has been provided a copy of the Wireless Carrier Agreements (as defined below), subject to the confidentiality provisions contained therein. The Stalking Horse Bidder has represented to the Wireless Carriers that the Stalking Horse Bidder has not and will not disclose to any Wireless Carrier or provide access to any Wireless Carrier the terms of any other Wireless Carrier's Wireless Carrier Agreement.

~~F~~G. The Bidding Procedures were negotiated in good faith and at arms' length.

~~G~~H. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets and the Other Assets.

~~H. The Break-Up Fee, Expense Reimbursement and the Sprint Expense Reimbursement to be paid to the Stalking Horse Purchaser or Sprint, as applicable, under the circumstances described herein and in the Stalking Horse Agreement (collectively, the "Bid Protections"), are: (i) actual and necessary costs and expenses of preserving the Debtors' estates entitled to administrative expense status with priority over any and all administrative expenses of the kind specified in Sections 503(b)(1) and 507(a) of the Bankruptcy Code and senior to all other superpriority administrative expenses in these cases; (ii) commensurate with the real and substantial benefits conferred upon the Debtors' estates by the Stalking Horse Purchaser and Sprint; (iii) fair, reasonable and appropriate in light of the size and nature of the proposed Sale and comparable transactions; and (iv) necessary to induce the Stalking Horse Purchaser and Sprint to proceed with the Sale.~~

**THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Motion is GRANTED to the extent provided herein.

2.    The request pursuant to the Motion to approve (a) the Break-Up Fee and the Expense Reimbursement is hereby adjourned to a later date and (b) the Sprint Expense Reimbursement is hereby adjourned to March 12, 2015 at __:___ _.m. prevailing Eastern time.

23.    All objections to the entry of this Order or to the relief provided herein, including the Objections, that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice, except with respect to the Bid Protections which objections are preserved.

34.    The Bidding Procedures, as attached as Annex 1 hereto, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the Assets.  The Debtors and their claim agent are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

45.    The deadline for submitting a Qualified Bid shall be WednesdayTuesday, March 1117, 2015 at 4:005:00 p.m. prevailing Eastern Time (the "Bid Deadline"). Notwithstanding the foregoing, the SCP Secured Parties (as defined in the Interim DIP Financing Order, dated February 10, 2015 [D.I. 190] (the "Interim DIP Order")), shall be excused from compliance with the requirements of Section 7 of the Bidding Procedures and may make a bid at the Auction on all or any portion of the SCP Priority Collateral (as defined in the Interim DIP Order) without the requirement of submitting a Qualified Bid by the Bid Deadline; provided, however, that (a) the bid does not include any Acquired Assets and (b) if no Auction in respect to the applicable SCP Priority Collateral would otherwise be conducted pursuant to Section 9 of the Bidding Procedures, then the SCP Secured Parties will be required to make any bid on such SCP Priority Collateral by no later than one business day prior to the date scheduled for the Auction.

If the SCP Secured Parties submit any such bid for all or any portion of the Other Assets, the Debtors will conduct the Auction.

56.     The Stalking Horse APA, as attached as Annex 2 hereto, is a Qualified Bid and the Stalking Horse Purchaser is a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures.

67.     All bidders submitting a Qualified Bidbid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

78.     In the event the Stalking Horse Purchaser's bid is the only Qualified Bid in respect of the Acquired Assets received by the Debtors by the Bid Deadline, no Auction will be conducted for the Acquired Assets, and the Stalking Horse Purchaser will be the Successful Bidder for the Acquired Assets.

89.     If at least one Qualified Bid in respect of the Acquired Assets, other than that of the Stalking Horse Purchaser, is received by the Bid Deadline, the Debtors shallwill conduct the Auction for the Acquired Assets.  In addition, if at least two Qualified Bids in respect of thea particular Other AssetsAsset is received by the Bid Deadline (or as otherwise contemplated by Sections 6 or 7 of the Bidding Procedures), the Debtors shallwill conduct the Auction for such Other Assets.  The Auction will take place at the offices of Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, at 10:00 a.m. (prevailing Eastern time) on March 1623, 2015, or such other time as the Debtors, in consultation with the Stalking Horse PurchaserConsultation Parties, if the Auction is being conducted for the Acquired Assets, may notify Qualified Bidders, the Creditors'

Committee and the Agents.  Only the Stalking Horse Purchaser and any other Qualified Bidder will be permitted to participate in the Auction, the Agents and the SCP Secured Parties.

910.    Each Qualified Bidderbidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its Qualified Bidbid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

1011.    The Auction will be conducted openly and will be transcribed or videotaped, at the Debtors' option.

1112.    The Court shall convene the Sale Hearing on ————Thursday, March ——26, 2015 at —:—9:30 a.m. (prevailing Eastern Time) or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) and the entry of the Sale Order.  Any obligations of the Debtors set forth in the Stalking Horse Agreement, that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order.  The Debtors in their sole discretion (but subject to the consent of the Stalking Horse Purchaser or if after the Auction, the Successful Bidderafter consultation with the Consultation Parties) may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing.

1213.    Objections to approval of the Sale, including the sale of the Debtors' assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, must be in writing, state the basis of such objection with specificity and be filed with this Court and served so as to be received on or before March 1119, 2015 at 4:00 p.m.

(prevailing Eastern Time) (the "Objection Deadline") by:  (a) *the Debtors,* c/o RadioShack Corporation, RadioShack Circle, Fort Worth, Texas 76102 (Attn: Bob Donohoo, Esq.); (b) *Debtors' counsel,* (i) Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201 (Attn: Gregory M. Gordon, Esq.), and (ii) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, Delaware 19801 (Attn: David M. Fournier, Esq.); (c) *the Stalking Horse Purchaser's counsel,* (i) Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022 (Attn:  Richard Hahn, Esq.), (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19801 (Attn: Gregory Werkheiser, Esq.), and (iii) DLA Piper, LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Gregg Galardi, Esq.); (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and (e) ~~once it is formed,~~ *Creditors' Committee's* counsel ~~to the Committee~~, Quinn Emanuel Urguahart and Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn:  Susheel Kirpalani, Esq.) (collectively, the "Notice Parties"). Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

~~13~~14.   As soon as practicable, but no later than two business days following entry of this Order, the Debtors shall file a schedule of cure obligations (the "Cure Schedule") for the Assumed and Assigned Agreements.  The Cure Schedule will include a description of each Assumed and Assigned Agreement potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor

parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs").  A copy of the Cure Schedule, together with the Assumption and Assignment Notice, will be served on each of the non-Debtor parties listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court.  For the avoidance of doubt, the presence of an Assumed and Assigned Agreement on the Cure Schedule (a) does not constitute an admission that such Assumed and Assigned Agreement is an executory contract or unexpired lease and/or (b) shall not prevent the Debtors or the Stalking Horse Purchaser from subsequently withdrawing such assumption or rejecting such Assumed and Assigned Agreement at any time before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an Order of the Court.  Such Cure Schedule shall be without prejudice to the Stalking Horse Purchaser's rights under Section 7.8 of the Stalking Horse Agreement to subsequently exclude such item from assumption and assignment.

15.    Objections to the Cure Costs set forth in the Cure Schedule must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before Monday, March 16, 2015 at 4:00 p.m. Eastern Time by the Notice Parties.

1416.    Objections to (a) the Cure Costs  set forth in the Cure Schedule and (b) the assumption and assignment of any executory contract or unexpired lease identified in the Cure Schedule, on any basis permitted under the Bankruptcy Code or any other applicable law, must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before FridayThursday, March 619, 2015 at 4:00 p.m. Eastern Time by the Notice Parties; *provided, however*, that the deadline for objecting to the assignment of the Assumed and Assigned Agreements to the Stalking Horse Bidder or Sprint on the basis of

9

adequate assurance of future performance shall be March 24, 2015 at 4:00 p.m. Eastern Time. As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice identifying the Successful ~~Bidder~~Bidder(s) and the Next Best Bid(s), if any, with the Court and serve such notice upon each party identified in the Cure Schedules~~, and, if.~~  If the Successful Bidder is not the Stalking Horse Purchaser, the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing, and, as soon as practicable following the conclusion of the Auction, the Debtors shall file copies of the Successful Bid(s) and the Next Best Bid(s) with the Court.

17.     The Stalking Horse Bidder or Sprint, as applicable, shall provide adequate assurance information to the non-Debtor counterparties to each Assumed and Assigned Agreement that may be assumed and assigned to it under the Stalking Horse Agreement or Alliance Agreements by no later than March 16, 2015.  The Debtors shall provide or cause to be provided adequate assurance information regarding all Qualified Bidder(s) to the non-Debtor counterparties to each Assumed and Assigned Agreement that may be assumed and assigned to such Qualified Bidder(s) as soon as practicable following the Bid Deadline.  Each of the non-Debtor counterparties to the  Assumed and Assigned Agreements who receive adequate assurance information in the form of voluntary disclosures or discovery from the Debtors or a proposed assignee regarding a proposed assignment and/or assignee shall keep the adequate assurance information confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed assignee and/or object to a proposed assignment of the Assumed and Assigned Agreement.

1518.   Unless a non-Debtor party to an Assumed and Assigned Agreement has timely and properly filed and served an objection to the assumption and assignment of its Assumed and Assigned Agreement or the Cure Costs, all counterparties to thethat Assumed and Assigned Agreements shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreement.  In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed and Assigned Agreements for all purposes in these chapter 11 cases and otherwise, and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed and Assigned Agreements; *provided, however,* that the Cure Cost set forth in the Cure Schedule may be reduced by any amounts Debtors pay or value Debtors provide under an Assumed and Assigned Agreement on or after the Petition Date.

1619.   Where a non-Debtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amounts"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amounts prior to the Sale Hearing, and subject to the Successful

Bidder's consent to such resolution, the Debtors shall promptly provide the Creditors' Committee and the Successful Bidder notice and an opportunity to object to such proposed resolution or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing or, at the sole discretion of the Debtors (with the consent of the Successful Bidder, at such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

17. The Bid Protections are approved. The Debtors are authorized and directed to pay, without further order of the Court, to the Stalking Horse Purchaser or Sprint in accordance with the Stalking Horse Agreement or the Term Sheet, as applicable, without further order of the Court, the Bid Protections in the event they are payable under the terms of the Stalking Horse Agreement or the Term Sheet, as applicable. The Debtors' obligations to pay the Bid Protections and other amounts payable to the Stalking Horse Purchaser or Sprint under the Stalking Horse Agreement or the Term Sheet, as applicable, shall survive cancellation or termination of the Stalking Horse Agreement and/or the Term Sheet, as applicable. The Stalking Horse Purchaser and Sprint, as applicable, shall have allowed administrative expense claims for any amounts payable to them pursuant to the Bid Protections with priority over any and all administrative expenses of the kind specified in Sections 503(b)(1) and 507(a) of the Bankruptcy Code and senior to all other superpriority administrative expenses against each of the Debtors' estates. No person or entity, other than the Stalking Horse Purchaser, shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file

~~with this court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.~~

~~18~~20.    The Stalking Horse Purchaser is authorized to credit bid pursuant to section 363(k) of the Bankruptcy Code. ~~Further,~~, subject to any determination of this Court subsequent to this Order, and provided that nothing in this Order shall limit, modify, or affect the right of the Creditors' Committee or any SCP Secured Party to file an Objection within the Challenge Period (as those terms are defined in section 5.1 of the Interim DIP Order) or to otherwise object to the Sale to the Stalking Horse Purchaser ~~shall be allowed to credit bid the full amount of the Bid Protections in any bid for the Acquired Assets it makes at the Auction~~or other Successful Bidder.

~~19~~21.    The form of the Auction and Hearing Notice and the Assumption and Assignment Notice are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required if the Debtors serve such notices in the manner provided in the Motion and this Order.  No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale.   Within three (3) business days of the entry of this Order or as soon thereafter as practicable, the Debtors shall cause the Auction and Hearing Notice to be served upon, without limitation, (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Prepetition Agents; (iv) counsel to the DIP Agent~~;~~, (v) counsel to the Debtors' postpetition lenders; (vi) the attorneys general for each of the States in which the Debtors are known or reasonably believed by the Debtors to conduct operations; (~~vi~~vii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (~~vii~~viii) the United States Environmental Protection Agency; (~~viii~~ix) the Pension Benefit Guaranty Corporation; (~~ix~~x) all parties that have requested or that are required to receive notice

pursuant to Bankruptcy Rule 2002(i); (xxi) all parties that are known or reasonably believed to have expressed an interest in acquiring any of the Acquired Assets or any of the Other Assets; (xixii) all parties that are known or reasonably believed by the Debtors to have asserted any lien, encumbrance, claim or other interest in the Acquired Assets; (xiixiii) all governmental agencies that are are known or reasonably believed by the Debtors to be an interested party with respect to the Sale and the related transactions; (xiiixiv) all non-Debtor parties to the Assumed and Assigned Agreements and (xivxv) all other known creditors of the Debtors.

22.    Within five business days after entry of this Order, or as soon as practicable thereafter, the Debtors will place a publication version of the Auction and Hearing Notice for one day in the national edition of *The Wall Street Journal* and post it onto the Debtors' restructuring website.

2023.   All Interested Parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

24.    Nothing in this Order shall be deemed to authorize the Debtors to sell or otherwise transfer the "Consigned Goods" (as such term is defined in (i) the Digital Stream Technology objection [Docket No. 308]) or (ii) the Consignment Addendum to the Vendor Agreement between Ignition L.P. (formerly RadioShack Merchandizing L.P.), RadioShack Global Sourcing Limited Partnership, and Skullcandy, Inc. effective as of August 22, 2014,

pursuant to section 363 of the Bankruptcy Code, and the Debtors' and Digital Stream Technology's and Skullcandy, Inc.'s rights under the relevant consignment agreement are reserved in all respects.

25.     The Protected Information (as defined in Section 5 of the Bidding Procedures) shall be subject to the following restrictions:  (i) the Protected Information shall not be made available to (a) any telecommunications providers (and/or any telecommunication provider co-bidders), and/or any of their respective agents, resellers, representatives or affiliates and (b) any manufacturer of mobile devices (and/or any mobile device manufacturer co-bidders), and/or any of their respective agents,  resellers, representatives or affiliates (collectively, the "Restricted Parties" and each a "Restricted Party"); (ii) the Debtors shall maintain the Protected Information in the Data Room in restricted electronic files, which shall not be accessible by any Restricted Party; and (iii) each Interested Party who accesses the Protected Information (a "Viewing Party") shall keep it confidential in accordance with the terms of its confidentiality agreement with the Debtors.  Verizon Wireless ("VZW") and AT&T Mobility LLC and its affiliates ("AT&T") shall be deemed third party beneficiaries of all confidentiality agreements with each Restricted Party and Viewing Party and shall be able to enforce the confidentiality provisions of such agreements.  A copy of this Order and the Bidding Procedures shall be served on all Interested Parties that have executed a confidentiality agreement with the Debtors. Notwithstanding anything to the contrary contained herein, any Protected Information relating to customers and/or subscribers of VZW or AT&T that is subject to federal, state, local laws, rules, or regulations with respect to its use and/or disclosure (including CPNI) or customer lists that identify any customers and/or subscribes of VZW or AT&T and/or service plans, features, customer contract terms, or mobile device information of such customers and/or subscribers shall

not be placed in the Data Room and shall not be disclosed by the Debtors to any third party (including Interested Parties) unless required by law.  The Debtors shall notify VZW and AT&T of the identities of all Interested Parties that have accessed any Protected Information and shall provide VZW and AT&T with copies of the confidentiality agreements with those parties; provided, however, that the Debtors' obligation to provide this information pursuant to these Bidding Procedures shall be subject to having first obtained from VZW and AT&T reasonable assurance that such information shall not be used by persons at VZW and AT&T in connection with a bid for the Debtors' assets.  For the avoidance of doubt, VZW, AT&T and Sprint and/or any of their respective agents, resellers, representatives and affiliates shall be Restricted Parties and the Stalking Horse Purchaser shall not be a Restricted Party.

26.    Nothing in this Order or the Bidding Procedures shall be deemed or construed as consent to the assumption and any assignment of any executor contract with AT&T or VZW (together, the "Wireless Carriers") nor a waiver of any rights under the Strategic Alliance Agreement and the Agent Agreement, respectively (the "Wireless Carrier Agreements"), including without limitation the right to assert that defaults and/or breaches have occurred and are continuing under the Wireless Carrier Agreements.  The Wireless Carriers reserve all of their respective rights, including without limitation, any rights to (i) object to any proposed assumption or assumption and assignment by the Debtors of the Wireless Carrier Agreements, (ii) object to the Sale, (iii) enforce the terms of the Wireless Carrier Agreements against the Debtors, their agents, and any third parties and (iv) seek discovery with respect to any of the foregoing.  The Wireless Carriers reserve all other rights under the Bankruptcy Code and other applicable law.

27.     The Stalking Horse Bidder shall not disclose to any Wireless Carrier or provide access to any Wireless Carrier the terms of any other Wireless Carrier's Wireless Carrier Agreement.

28.     The Debtors shall promptly file with the Court any agreements with the Stalking Horse Purchaser that may affect bidders.

~~21~~29.    The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied or waived.

~~22~~30.    Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

~~23~~31.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.


Dated: _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

## ANNEX 1

## BIDDING PROCEDURES

**ANNEX 2**

**STALKING HORSE APA**

| Summary report: Litéra® Change-Pro TDC 7.5.0.96 Document comparison done on 3/5/2015 5:18:43 PM | |
|---|---|
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:**iw://DLI/DLI/266511903/2 | |
| **Modified DMS:** iw://DLI/DLI/266511903/7 | |
| **Changes:** | |
| Add | 101 |
| Delete | 79 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 180 |

## BIDDING PROCEDURES[1]

An asset purchase agreement (collectively with all exhibits, schedules and ancillary agreements related thereto, the "Stalking Horse APA"), dated as of [_____] [ **March 5**], 2015, has been entered into among RadioShack Corporation ("RadioShack") and its subsidiaries party thereto (collectively, the "Seller") and General Wireless Inc. (the "Stalking Horse Purchaser").  The Stalking Horse APA contemplates the sale by the Seller of the Acquired Assets (as defined in the Stalking Horse APA) outside the ordinary course of business.  The Seller'sCertain other assets other than thethat are not Acquired Assets under the Stalking Horse APA, including the Seller's equity interest in RadioShack de Mexico, global sourcing group, Antenncraft business, RadioShack trademark and trade name are collectively referred to herein as the "Other Assets".[2]

In connection with the Stalking Horse APA, a retail alliance agreement (collectively with all exhibits, schedules and ancillary agreements related thereto, the "Alliance Agreement"), dated as of [_____] [ ]February 23, 2015, has been entered into between the Stalking Horse Purchaser and Sprint Solutions, Inc. ("Sprint").

By motion (the "Motion"), dated [_____][ ]February 5, 2015, RadioShack and its affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "Debtors"), sought, among other things, approval of the process and procedures for soliciting bids for and obtaining approval of the sale of the Acquired Assets and the Other Assets, in each case either as a going concern transaction (a "Going Concern Transaction") or a liquidation transaction (a "Liquidation Transaction").

On [_____][ ], 2015, theThe United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has entered an order (the "Bidding Procedures Order") that, among other things, authorizedauthorizes the Debtors to solicit going concern and liquidation bids in respect of the Acquired Assets and the Other Assets through the procedures described below (the "Bidding Procedures"), subject to the approval of theone or more Successful BidBids (as defined below) by the Bankruptcy Court following a hearing before the Bankruptcy Court scheduled for [ ]:00 [ ]9:30 a.m. (prevailing Eastern time) on [_____][ ]March 26, 2015, before the Honorable [_____]Brendan L. Shannon (the "Sale Hearing").

1. **Important Dates and Contact Information**

The Debtors will:

---

[1] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order or the Motion, as applicable.

[2] For the avoidance of doubt, the term the Other Assets does not include owned real estate (other than owned real estate in the Antennacraft business).

(a)     assist Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept Qualified Bids (as defined below) until the deadline for receipt of Qualified Bids, which is 5:00 p.m. (prevailing Eastern time) on March ~~11~~17, 2015 (the "Bid Deadline");

(b)     in consultation with the statutory committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "Creditors' Committee"), the Debtors' postpetition lenders and the SCP Secured Parties (as defined in the Interim DIP Financing Order, dated February 10, 2015 [D.I. 190] (the "Interim DIP Order") (collectively, the "Consultation Parties")). evaluate bids and negotiate with ~~Qualified Bidders (as defined below)~~bidders in preparation for an auction (the "Auction") to begin at 10:00 a.m. (prevailing Eastern time) on March ~~16~~23, 2015 (the "Auction Date"); and

(c)     in consultation with the Consultation Parties, select the Successful Bidder (as defined below) for each of the Acquired Assets and the Other Assets (if applicable) at the conclusion of the Auction and seek approval of the Successful Bid for such Acquired Assets and Other Assets at the Sale Hearing.

Information that must be provided under these Bidding Procedures must be provided to the following parties (the "Notice Parties"): (a) RadioShack Corporation, RadioShack Circle, Fort Worth, Texas 76102 (Attn: Bob Donohoo), email: ~~bob.donohoo@radioshack.com~~bob.donohoo@radioshack.com; (b) Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201 (Attn:  Gregory M. Gordon, Esq.), email: ~~gmgordon@jonesday.com~~gmgordon@jonesday.com; (c) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709 (Attn: David M. Fournier, Esq.), email: ~~fournierd@pepperlaw.com~~fournierd@pepperlaw.com; (d) FTI Consulting, Inc., 227 West Monroe Street, Suite 900, Chicago, IL 60606 (Attn:  Carlin Adrianopoli), email: ~~Carlin.Adrianopoli@FTIConsulting.com~~Carlin.Adrianopoli@FTIConsulting.com; and (e) Lazard Frères & Co. LLC**,** 190 S. LaSalle Street, 31st Floor, Chicago, IL  60603 (Attn: David A. Kurtz), email: ~~David.Kurtz@lazard.com.~~David.Kurtz@lazard.com.

2.     **The Sale Hearing.**

At the Sale Hearing, the Debtors will seek the entry of an order in substantially the form of the order attached as Exhibit D to the Motion, *inter alia,* authorizing and approving the sale of the Acquired Assets and potentially additional assets (the "Acquired Assets Sale Order") (a) if no other Qualified Bid with respect to the Acquired Assets is received by the Debtors by the Bid Deadline, to the Stalking Horse Purchaser pursuant to the terms and conditions set forth in the Stalking Horse APA, or (b) if ~~another~~one or multiple Qualified ~~Bid~~Bids with respect to any portion of the Acquired Assets ~~is~~are received by the Debtors by the Bid Deadline, to the Successful Bidder pursuant to the terms and conditions set forth in the Successful Bid.  At the Sale Hearing, the Debtors may also seek the entry of an order or orders authorizing and

approving the sale of one or more of the Other Assets (the "Other Assets Sale Order" and, together with the Acquired Assets Sale Order, the "Sale Orders"), to the Successful Bidder(s) pursuant to the terms and conditions set forth in the Successful Bid(s) for such Other Assets.  The Sale Hearing may be adjourned or rescheduled (after consultation with the ~~Stalking Horse Purchaser~~Consultation Parties) without notice or with limited and shortened notice to parties, including by (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing.

3.    **Determination by the Debtors**

The Bidding Procedures as described herein are calculated to obtain the highest and/or best offer for the Acquired Assets and the Other Assets.  The Debtors will (a) determine, with the assistance of their advisors, and in consultation with the Consultation Parties, whether any person or entity is a Qualified Bidder, (b) receive bids from Qualified Bidders, (c) evaluate and negotiate such bids, and (d) conduct the Auction (clauses (a) through (d) and Section 1 above, collectively, the "Bidding Process").  ~~Any person or entity who wishes to make a bid to purchase or liquidate the Acquired Assets or the Other Assets in the Bidding Process must be a Qualified Bidder.~~ Neither the Debtors nor any of their representatives will be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets or the Other Assets to any person or entity who is not a Consultation Party or a Qualified Bidder and who does not comply with the requirements set forth herein.

4.    **Participation Requirements**

Unless otherwise ordered by the Bankruptcy Court, to participate in the Bidding Process, each interested person or entity (each, an "Interested Party") must deliver the following to the ~~Notice Parties~~Debtors so as to be received no later than the Bid Deadline:

(a)    an executed confidentiality agreement in form and substance satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidder(s);

(b)    a statement and other factual support demonstrating to the Debtors' satisfaction (after consultation with the Consultation Parties) that the Interested Party has a *bona fide* interest in purchasing or liquidating any of the Acquired Assets or the Other Assets;

(c)    sufficient information, as determined by the Debtors, in consultation with the Consultation Parties, to allow the Debtors to determine that the Interested Party has the financial wherewithal, and any required internal corporate, legal or other authorizations to complete a Going Concern Transaction or Liquidation Transaction, as applicable (a "Sale Transaction"), including financial statements of the Interested Party (or

such other form of financial disclosure acceptable to the Debtors in their discretion); and

(d)    the items comprising a bid, as prescribed by <u>Section 7</u> below.

If the Debtors determine that an Interested Party has a *bona fide* interest in any of the Acquired Assets or the Other Assets, no later than two Business Days after the Debtors make that determination and have received the materials described in items (a)-(c) above, such Interested Party will be deemed a "<u>Potential Bidder</u>" and the Debtors will deliver to such Potential Bidder access to the Debtors' confidential electronic data room concerning the Acquired Assets and the Other Assets (the "<u>Data Room</u>").  The Debtors<u>, in consultation with the Consultation Parties,</u> reserve the right to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder.  <s>Once an</s><u>The Debtors will provide prompt notice to the Consultation Parties in the event the Debtors determine (after receipt of the information identified in clauses (a) – (d) above) that any</u> Interested Party <s>is deemed</s><u>does not qualify as</u> a Potential Bidder<s>, its identity will be disclosed to the Notice Parties and may be disclosed to any other Potential Bidders</s>.

5.    **Due Diligence**

Until the Bid Deadline, in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors determine to be reasonable in the circumstances.  All additional due diligence requests must be directed to Christian Tempke of Lazard Frères & Co. LLC ("<u>Lazard</u>') at <s>christian.tempke@lazard.com</s><u>christian.tempke@lazard.com</u>.  The Debtors, with the assistance of Lazard, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  In the event that any such due diligence material is in written form and has not previously been provided to the Stalking Horse Purchaser or any other Potential Bidder, <u>subject to any confidentiality issues related to the material,</u> the Debtors will simultaneously provide access to such materials to (a) the Stalking Horse Purchaser, (b) all Potential Bidders, (c) the professionals (the "<u>Creditors' Committee Professionals</u>") retained by the <s>official committee of unsecured creditors appointed in the Debtors' chapter 11 cases (the "</s>Creditors' Committee<s>") and</s><u>;</u> (d) counsel to Cantor Fitzgerald Securities, in its capacity as prepetiton and postpetition administrative agent for certain senior secured lenders and counsel to Salus Capital Partners, LLC, in its capacity as administrative and collateral agent for certain senior secured lenders (together, the "<u>Agents</u>")<u>; (e) counsel to the Debtors' postpetition lenders and (f) counsel to the SCP Secured Parties (as defined in the Interim DIP Order</u>.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if:  (a) the Potential Bidder does not become a Qualified Bidder during the period commencing on the Bid Deadline and concluding on the Auction Date; or (b) the Bidding Process is terminated.  Except as provided above with respect to access to the Data Room, neither the Debtors nor their representatives

will be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets or the Other Assets to any party.

The VZW Protected Information (as defined below) and the AT&T Protected Information (as defined below)  (collectively, the "Protected Information") shall be subject to the following restrictions:  (i) the Protected Information shall not be made available to (a) any telecommunications providers (and/or any telecommunication provider co-bidders), and/or any of their respective agents, resellers, representatives or affiliates and (b) any manufacturer of mobile devices (and/or any mobile device manufacturer co-bidders), and/or any of their respective agents,  resellers, representatives or affiliates (collectively, the "Restricted Parties" and each a "Restricted Party"); (ii) the Debtors shall maintain the Protected Information in the Data Room in restricted electronic files, which shall not be accessible by any Restricted Party; and (iii) each Interested Party who accesses the Protected Information (a "Viewing Party") shall keep it confidential in accordance with the terms of its confidentiality agreement with the Debtors.  VZW and AT&T shall be deemed third party beneficiaries of all confidentiality agreements with each Restricted Party and Viewing Party and shall be able to enforce the confidentiality provisions of such agreements.  A copy of these Bidding Procedures and the order approving these Bidding Procedures will be served on all Interested Parties that have executed a confidentiality agreement with the Debtors. Notwithstanding anything to the contrary contained herein, any Protected Information relating to customers and/or subscribers of VZW or AT&T that is subject to federal, state, local laws, rules, or regulations with respect to its use and/or disclosure (including CPNI (as defined below) or customer lists that identify any customers and/or subscribes of VZW or AT&T and/or service plans, features, customer contract terms, or mobile device information of such customers and/or subscribers shall not be placed in the Data Room and shall not be disclosed by the Debtors to any third party (including Interested Parties) unless required by law.  The Debtors shall notify VZW and AT&T of the identities of all Interested Parties that have accessed any Protected Information and shall provide VZW and AT&T with copies of the confidentiality agreements with those parties; provided, however, that the Debtors' obligation to provide this information pursuant to these Bidding Procedures shall be subject to having first obtained from VZW and AT&T reasonable assurance that such information shall not be used by persons at VZW and AT&T in connection with a bid for the Debtors' assets.  For the avoidance of doubt, VZW, AT&T and Sprint and/or any of their respective agents, resellers, representatives and affiliates shall be Restricted Parties.

"VZW Protected Information" means (i) that certain agreement between Cellco Partnership d/b/a Verizon Wireless ("VZW") and RadioShack Corporation, effective September 15, 2011 (collectively, with all exhibits and amendments, the "Agent Agreement") and (ii) any Confidential Information, Trade Secrets, Subscriber Information, CPNI, Subscriber lists, or Compensation data or information (all as defined and referenced in the Agent Agreement).

"AT&T Protected Information" means (i) the Strategic Alliance Agreement between RadioShack Corporation and AT&T Mobility LLC (formerly Cingular Wireless II, LLC) (together with its affiliates, "AT&T"), dated as of July 29, 2005 and as subsequently

amended, (ii) Information (as defined in the Strategic Alliance Agreement, (iii) proprietary information of customers of AT&T and (iv) customer propriety network information (as defined in 47 U.S.C.§ 222(h)(1)) ("CPNI") of customers of AT&T.

6.    **Bid Deadline**

A Potential Bidder that desires to make a bid must deliver written and electronic copies of its bid (in accordance with Section 7) in both Portable Document Format (.pdf) and Microsoft Word (.doc/.docx) format to the Notice Parties so as to be received no later than the Bid Deadline.  Notwithstanding the foregoing, the SCP Secured Parties shall be excused from compliance with the requirements of Section 7 hereof and may make a bid at the Auction on all or any portion of the SCP Priority Collateral (as defined in the Interim DIP Order) without the requirement of submitting a Qualified Bid by the Bid Deadline; provided, however, that (a) the bid does not include any Acquired Assets and (b) if no Auction in respect to the applicable SCP Priority Collateral would otherwise be conducted pursuant to Section 9 of the Bidding Procedures, then the SCP Secured Parties will be required to make any bid on such SCP Priority Collateral by no later than one business day prior to the date scheduled for the Auction.  If the SCP Secured Parties submit any such bid for all or any portion of the Other Assets, the Debtors will conduct the Auction.

7.    **Form and Content of a Qualified Bid**

A Qualified Bid in respect of the Acquired Assets or the Other Assets is a proposal from a Potential Bidder that, at a minimum:

(a)    identifies the legal name of the Potential Bidder (including any equity holders or other financial backers, if the Potential Bidder is an entity formed for the purpose of consummating the Sale Transaction);

(b)    with respect to bids for a Going Concern Transaction for ~~any portion~~all or most of the Acquired Assets, provides that the Potential Bidder offers to purchase the assets at the purchase price and upon the terms and conditions set forth in a copy of the Stalking Horse APA enclosed therewith, marked to show any proposed amendments and modifications to the version attached as Exhibit D to the Motion (the "Marked Agreement");

(c)    with respect to bids that include an agreement with Sprint, includes a copy of the Alliance Agreement, marked to show any proposed amendments and modifications to it (the "Marked Alliance Agreement");

(d)    with respect to bids for the Seller's intellectual property, equity interest in RadioShack de Mexico, global sourcing group, Antennacraft business, franchise agreements or any of the Other Assets and/or any other assets, properties or rights, is based on a proposed purchase agreement to be provided by the Debtors to prospective bidders and contains a copy of the

Debtors' proposed purchase agreement marked to show any proposed amendments and modifications to it (the "Marked Purchase Agreement");

(d~~e~~) with respect to bids for a Liquidation Transaction, is based on a proposed agency agreement to be provided by the Debtors to prospective Liquidation Transaction bidders and contains a copy of the Debtors' proposed agency agreement marked to show any proposed amendments and modifications to it (the "Marked Agency Agreement" and, with the Marked Agreement ~~and~~, the Marked Alliance Agreement and the Marked Purchase Agreement, the "Bid Documents");

(e~~f~~) states that all necessary filings under applicable regulatory, antitrust and other Laws will be made (pursuant to the terms and conditions in the applicable Bid Documents) and that payment of the fees associated with such filings will be made by the Potential Bidder;

(f~~g~~) is formal, binding and unconditional (except for those conditions expressly set forth in the applicable Bid Documents), is not subject to any due diligence and is irrevocable until the earlier of March 31, 2015 and the first Business Day following the closing of the Sale Transaction;

(g~~h~~) includes a commitment to close the transactions contemplated by the bid no later than March 31, 2015;

(h~~i~~) does not entitle such Potential Bidder to a breakup fee, termination fee, expense reimbursement or similar type of payment or reimbursement and includes a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the Acquired Assets or the Other Assets;

(i~~j~~) with respect to a bid or collection of bids for any portion of the Acquired Assets,

   (i) ~~is~~alone or together are determined by the Debtors (after consultation with the Consultation Parties) to be higher or better than the terms of the Stalking Horse APA, taking into account the conditions set forth in the Stalking Horse APA and also taking into account, to the extent they are approved by the Bankruptcy Court prior to the Auction. (i) the Break-Up Fee (as defined in the Stalking Horse APA), (ii) the maximum Expense Reimbursement Amount (as defined in the Stalking Horse APA) and (iii) the maximum amount of any expense reimbursement payable to Sprint (the amounts in clauses (ii) and (iii) together, the "Expense Reimbursements"); and

      (ii)     includes cash consideration sufficient to pay the Break-Up Fee and Expense Reimbursements, to the extent they are approved by the Bankruptcy Court prior to the Auction;

(j<u>k</u>)     is accompanied by the Good Faith Deposit (as defined below); and

(k<u>l</u>)     is received by the Bid Deadline.

In addition, in determining whether the terms of the bid or bids for any portion of the Acquired Assets are materially more burdensome or conditional than the terms of the Stalking Horse APA and are not offset by a material increase in purchase price or other terms, the Debtors may take into consideration:

(a)     indemnification and other provisions;

(b)     whether the bid ~~provides~~<u>or bids provide</u> sufficient cash consideration to pay the cash costs of the transaction (including professionals' fees, ~~the~~ <u>and any</u> Break-Up Fee and ~~the~~ Expense Reimbursements <u>to the extent they are approved by the Bankruptcy Court prior to the Auction</u>);

(c)     whether the bid <u>or bids</u> includes a non-cash instrument or similar consideration that is not freely marketable;

(d)     the ability to obtain any and all necessary antitrust or other applicable regulatory approvals for the proposed transaction; and

(e)     any other factors the Debtors<u>, in consultation with the Consultation Parties,</u> may deem relevant.

A Potential Bidder must accompany its bid with<u> or include in it, as applicable</u>: (a) written evidence of available cash, a commitment for financing (not subject to any conditions other than those expressly set forth in the applicable Bid Documents) or such other evidence of ability to consummate the transaction contemplated by the Bid Documents (and, as applicable, to provide adequate assurance of future performance of all obligations to be assumed in such Sale Transaction) as the Debtors may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; (c) a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and other applicable regulatory requirements; (d) if the purchase price includes non-cash consideration or fewer contingencies than are in the Stalking Horse APA, an analysis in reasonable detail of the value of the non-cash consideration and sufficient back-up documentation that demonstrates that the bid is a higher and/or better offer than the transaction contemplated by the Stalking Horse APA; ~~and~~ (e) if the Qualified Bid includes a Marked Agreement, Marked Alliance <u>Agreement, Marked Purchase</u> Agreement or Marked Agency Agreement that is not executed, a signed statement that such bid is irrevocable until the earlier of March 31, 2015 and the first Business Day following the closing of the

Sale Transaction.; (f) if the bid includes any of the Other Assets, an allocation of the purchase price payable on account of each of the Other Assets included in the bid; and (g) if the bid includes an offer to purchase SCP Priority Collateral and ABL Priority Collateral (as defined in the Interim DIP Order), a separate allocation of the purchase price payable on account of each such assets and if the bid contemplates a Liquidation Transaction, a statement that the bid is not conditioned upon the bidder being declared the Successful Bidder for both the SCP Priority Collateral and the ABL Priority Collateral.

A Potential Bidder must deposit with an escrow agent selected by the Debtors (the "Escrow Agent") a cash deposit equal to 15% of the gross consideration payable at Closing pursuant to the applicable Bid Documents, as calculated in good faith by the Debtors, in consultation with the Consultation Parties (any such deposit, a "Good Faith Deposit").  The Good Faith Deposit must be made by wire transfer and will be held by the Escrow Agent in accordance with the terms of a customary escrow agreementDebtors in a segregated bank account.

If a bid is received and, in the Debtors' judgment, it is not clear to the Debtors whether the bid is a Qualified Bid, the Debtors may consult with the Potential Bidder and seek additional information in an effort to establish whether or not a bid is a Qualified Bid.

A bid or collection of bids received from a Potential BidderBidders for any portion of the Acquired Assets or any of the Other Assets that is determined by the Debtors (after consultation with the Consultation Parties) to meet the above requirements will each be considered a "Qualified Bid," and each Potential Bidder that submits a Qualified Bidsuch a bid will be considered a "Qualified Bidder."  For purposes hereof and notwithstanding anything to the contrary contained herein, the Stalking Horse Purchaser is a Qualified Bidder with respect to the Acquired Assets and each of the Other Assets, and the Stalking Horse APA executed by the Stalking Horse Purchaser is a Qualified Bid. and the Stalking Horse Purchaser may bid at any Auction for any of the Other Assets.  No later than one business day after the Bid Deadline, the Debtors shall provide copies of all bids received by the Debtors to each of the Consultation Parties

The Debtors will, in their discretion (after consultation with the Consultation Parties), determine whether a bid received from a Potential Bidder for any of the Other Assets that does not include any of the Acquired Assets is a Qualified Bid.  The Debtors may determine, in their business judgment (after consultation with the Consultation Parties), which Qualified Bids are the highest and best offers for one or more of the Other Assets.  Further, the Debtors may, in their discretion,(after consultation with the consent of the the AgentsConsultation Parties), withdraw some or all of the Other Assets from the Auction or sale at any time before entry of an order approving a sale of the Other Assets to a Qualified Bidder.

A Qualified Bid and bids at the Auction may be valued by the Debtors (after consultation with the Consultation Parties) based upon factors as they determine in good faith to be relevant, including:  (a) the purported amount of the Qualified Bid,

including non-cash consideration, if applicable; (b) the value to be provided to the Debtors under the Qualified Bid, including the net economic effect upon the Debtors' estates after payment of the Break-Up Fee and the Expense Reimbursements to the extent approved by the Bankruptcy Court prior to the Auction, if applicable; (c) contingencies with respect to the Sale Transaction and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtors, and any incremental costs to the Debtors in closing delays; (d) the ability to obtain any and all necessary antitrust or other applicable regulatory approvals for the proposed transaction; and (e) any other factors the Debtors may deem relevant.

The Debtors (in consultation with the Consultation Parties) reserve the right to impose additional terms and conditions with respect to Qualified Bidders not otherwise inconsistent with these Bidding Procedures.  With respect to the Stalking Horse Purchaser, the terms of the Stalking Horse APA (as it may be consensually modified at the Auction) and not the terms of this paragraph will control in connection with the matters described in the immediately preceding sentence.

By no later than one Business Day prior to the Bid Deadline, the Debtors shall file a statement with the Court setting forth an analysis in reasonable detail of the value of the Stalking Horse Purchaser's bid, including an allocation of cash consideration and non-cash consideration (including any credit bid), as determined in good faith by the Debtors in consultation with the Consultation Parties.

By no later than March 16, 2015, the Debtors shall file with the Court a list of the retail stores identified by the Stalking Horse Purchaser as the retail stores it is offering to acquire under the Stalking Horse APA, and identify on the list whether the Stalking Horse Purchaser or Sprint will be the proposed assignee of the store leases.

8.   **Baseline Bid**

Except as otherwise provided in Sections 6 or 7, only (a) Qualified Bidders that haveand (b) Potential Bidders who submitted a bid that satisfies the requirements of a Qualified BidsBid except for Section 7(j) and are invited by the Debtors, in their discretion (after consultation with the Consultation Parties), to participate in the Auction, are eligible to participate in the Auction.  The Debtors will (in consultation with the Consultation Parties) select what they determine to be the highest and/or best Qualified Bid or combination of bids that together constitute a Qualified BidsBid for any portion of the Acquired Assets and/or the Other Assets (the "Baseline Bid(s)") to serve as the starting point at the Auction taking into account all relevant considerations, including payment of theany Break-Up Fee and Expense Reimbursement Amount to the extent approved by the Bankruptcy Court prior to the Auction, the financial condition of the applicable bidder and certainty of closing.  As soon as reasonably practicable and not later than two daysone day prior to the Auction, the Debtors will identify the Baseline Bid(s) and provide to the Creditors' Committee ProfessionalsConsultation Parties, Sprint, and counsel to the Agents copies of all Qualified Bids and to the Qualified Bidders copies of all applicable QualifiedBaseline Bids (with such distribution

permissible by electronic means, including posting to the Data Room).  Sprint shall be permitted to negotiate the Alliance Agreement with any bidder at any time.

9.   **Auction**

If at least one Qualified Bid or bid submitted by a Potential Bidder invited by the Debtors (in consultation with the Consultation Parties) to participate in the Auction in respect of the Acquired Assets, other than that of the Stalking Horse Purchaser, is received by the Bid Deadline, the Debtors will conduct the Auction for the Acquired Assets.  In addition, if at least two Qualified Bids in respect of the a particular Other Assets Asset is received by the Bid Deadline (or as otherwise contemplated by Sections 6 or 7), the Debtors will conduct the Auction for such Other Assets.  The Auction will take place at the offices of Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, at 10:00 a.m. (prevailing Eastern time) on the Auction Date, or such other time as the Debtors, in consultation with the Stalking Horse Purchaser, as applicable Consultation Parties, may notify Qualified Bidders who have submitted Qualified Bids.  Only a Qualified Bidder that has submitted a Qualified Bid or a Potential Bidder invited by the Debtors to participate at the Auction will be eligible to participate at the Auction, subject to such limitations as the Debtors may impose in consultation with the Consultation Parties.  A reasonable number (as determined by the Debtors) of representatives of the Qualified Bidders, Creditors' Committee, such Potential Bidders, and each Consultation Party and Sprint and the Agents will be permitted to attend and observe the Auction.

Each Qualified Bidder bidder participating in the Auction will be required to confirm, in writing, that (a) it has not engaged in any collusion with respect to the Bidding Process, and (b) its Qualified Bid bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

At the Auction, participants will be permitted to increase their bids and improve their terms; provided that any such increased or improved bid or combination of bids must be a Qualified Bid (except that the Bid Deadline will not apply).  Bidding for any part of the Acquired Assets or any of the Other Assets will start at the purchase price and terms proposed in the applicable Baseline Bid.  The Debtors (after consultation with the Consultation Parties) will announce the bidding increments for bids (the "Minimum Overbid") at the outset of the Auction with respect to the Acquired Assets and Others Assets, as applicable.  If the Stalking Horse Purchaser bids at the Auction on the Acquired Assets, the Stalking Horse Purchaser (i) subject to Bankruptcy Court approval prior to the Auction of the Break-Up Fee and Expense Reimbursements, will be entitled to a "credit" in the amount of the Expense Reimbursements (which will be deemed to be $2,000,000) and the Break-Up Fee (which is $6,000,000) to be counted towards its bid such that the cash and other consideration proposed by the Stalking Horse Purchaser plus the Expense Reimbursements and Break-Up Fee "credit" must exceed the most recent bid by at least the Minimum Overbid amount and (ii) notwithstanding anything else contained herein, may credit bid pursuant to section 363(k) of the Bankruptcy Code secured claims that ; provided, however, that nothing in the order approving these Bidding Procedures or these Bidding Procedures shall limit, modify or affect the right of

the Creditors' Committee or any SCP Secured Party to file an Objection within the Challenge Period (as those terms are defined in section 5.1 of the Interim DIP Order) or to otherwise object to the Sale to the Stalking Horse Purchaser holds or otherwise controls or other Successful Bidder.  The SCP Secured Parties may credit bid their secured claims against the Debtors as contemplated by the Stalking Horse APA.in respect of any SCP Priority Collateral (other than furniture, fixture and equipment).   Any Qualified Bid for the purchase of any Other Asset (including a credit bid by the SCP Secured Parties) will not require payment of any Break-Up Fee or Expense Reimbursements as part of any such bid, provided that such bid does not include any portion of the Acquired Assets.

The Debtors (after consultation with the Consultation Parties) may at any time adopt rules for the Auction that the Debtors reasonably determine to be appropriate to promote the goals of the Bidding Process and not in conflict with these Bidding Procedures, including one or more adjournments of the Auction; provided that any Auction rules adopted by the Debtors with respect to the Acquired Assets will not modify or conflict with any of the terms of the Stalking Horse APA (as it may be consensually modified at the Auction) without the consent of the Stalking Horse Purchaser.

The Debtors (after consultation with the Consultation Parties) reserve the right to and may reject at any time before entry of the final Sale Order any bid that, in the Debtors' judgment, is:  (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Sale Transaction; or (c) contrary to the best interests of the Debtors and their estates, except that if the Stalking Horse Purchaser's bid as reflected in the Stalking Horse APA is the only Qualified Bid for the Acquired Assets, the foregoing provisions of this sentence shall be inoperative.

Prior to the conclusion of the Auction, the Debtors will in consultation with the Consultation Parties:  (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) in the exercise of their good faith business judgment and consistent with the Bidding Procedures, identify the highest or otherwise best offer or collection of offers in respect of the Acquired Assets and/or any of the Other Assets (the "Successful Bid(s)"); and (c) inform and consult with the professional advisors to the Creditors' Committee and the Agents regarding the foregoing; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder or bidders (the "Successful Bidder(s)") and the amount and other material terms of the Successful Bid(s).  Absent irregularities in the conduct of the Auction or reasonable and material confusion during the bidding, each as determined by the Bankruptcy Court, the Debtors will not consider bids made after the Auction has been closed.  In the event the Stalking Horse Purchaser's bid is the only Qualified Bid for any part of the Acquired Assets received by the Debtors by the Bid Deadline, no Auction will be conducted for the Acquired Assets, the Stalking Horse APA will be the Successful Bid and the Stalking Horse Purchaser will be the Successful Bidder.

After determining the Successful Bid(s) for the Acquired Assets and, if applicable, any of the Other Assets, the Debtors may determine, in their reasonable business judgment, in consultation with the ~~professional advisors to the Creditors' Committee and the Agents~~Consultation Parties, which Qualified Bid(s) are the next best bids for the Acquired Assets and/or the Other Assets  (the "Next Best Bid(s)").

At the Sale Hearing, the Debtors will present the Successful Bid(s) to the Bankruptcy Court for approval.  Following the entry of the Sale Order(s), the Debtors will proceed to close the Sale Transaction upon the satisfaction or waiver of all applicable conditions precedent to closing.

10.    **Acceptance of Qualified Bids**

The Debtors presently intend to consummate the Sale Transaction(s) with the Successful Bidder(s); however, the Debtors' presentation of the Successful Bid(s) to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such bid(s).  The Debtors will be deemed to have accepted a Successful Bid only when a contract therefor has been executed and such bid has been approved by the applicable Sale Order.

If a failure to consummate the transaction is the result of a breach by a Successful Bidder of the applicable Successful Bid contract, the Debtors may retain the Good Faith Deposit of such Successful Bidder and reserve the right to seek, in addition to the Good Faith Deposit, specific performance as well as any and all available additional damages from such Successful Bidder; provided that, with respect to the Stalking Horse Purchaser and the Stalking Horse APA, the terms of the Stalking Horse APA (as it may be consensually modified at the Auction) and not the terms of this paragraph will control

If a Successful Bidder does not close the applicable Sale Transaction contemplated by the applicable Successful Bid by the date agreed to by the Debtors and such Successful Bidder, then the Debtors will be authorized, but not required, to close with the party that submitted the applicable Next Best Bid, pursuant to the applicable Sale Order.

11.    **Modification of Bidding Procedures**

The Debtors may (after consultation with the Consultation Parties) amend these Bidding Procedures or the Bidding Process at any time and from time to time in any manner that they determine in good faith will best promote the goals of the Bidding Process and are not inconsistent with the terms of these Bidding Procedures, including extending or modifying any of the dates described herein; provided that, with respect to the Stalking Horse Purchaser and the Stalking Horse APA, the terms of the Stalking Horse APA (as it may be consensually modified at the Auction) and not the terms of this paragraph will control.

12.    **"As Is, Where Is"**

Any Sale Transaction will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors, their agents or the Debtors' chapter 11 estates, except and solely to the extent expressly set forth in the final Sale Transaction agreement approved by the Bankruptcy Court.  Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the assets that are the subject of the Auction prior to making its bid, that it has relied solely upon its own independent review and investigation in making its bid and that it did not rely on the completeness of any information provided in connection with the Auction or its bid.  Except as otherwise provided in the final agreement approved by the Bankruptcy Court, all of the Debtors' right, title and interest in the Acquired Assets and any of the Other Assets will be sold free and clear of all liens, claims (as such term is defined in section 101(5) of the Bankruptcy Code), interests and encumbrances (collectively, "Liens"), with any Liens to attach to the proceeds of the Sale Transaction as provided in the final Sale Order.

13.    **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the ~~Escrow Agent~~Debtors and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to ~~terms of the applicable escrow agreement or pursuant to~~ further order of the Bankruptcy Court.  The ~~Escrow Agent~~Debtors will retain the Good Faith Deposits of the Successful Bidder(s) until the closing of the Sale Transaction(s) unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned on the earlier of March 31, 2015 and the first Business Day following the closing of the Sale Transaction. At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit (not including interest accrued thereon).  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that has accrued thereon.

14.    **Consultation Matters**

In the event that (a) any member of the Creditors' Committee or an affiliate thereof or (b) any of the Debtors' senior secured lenders or postpetition lenders submits a Qualified Bid (a "Consultation Party Bidder"), advisors to the Creditors' Committee or the Agents, as applicable, must not provide any material, nonpublic information to such ~~member or lender~~Consultation Party Bidder regarding competing bids for any part of the Acquired Assets or Other Assets for which the Consultation Party Bidder has submitted a Qualified Bid.  In addition, the Debtor will not be required to consult with such ~~party~~Consultation Party Bidder under the Bidding Procedures if the ~~party~~Consultation Party Bidder is an active bidder ~~at the applicable time.~~with respect to the assets for which the Consultation Party Bidder has submitted a Qualified Bid, but the Debtors will be required to otherwise consult with the Consultation Party Bidder with respect to bids on assets for which the Consultation Party Bidder has not submitted a bid.

| Summary report: Litéra® Change-Pro TDC 7.5.0.96 Document comparison done on 3/5/2015 5:21:45 PM | |
|---|---|
| **Style name:** JD Color | |
| **Intelligent Table Comparison:** Inactive | |
| **Original DMS:**iw://DLI/DLI/266510319/6 | |
| **Modified DMS:** iw://DLI/DLI/266510319/13 | |
| **Changes:** | |
| Add | 151 |
| Delete | 86 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format Changes | 0 |
| **Total Changes:** | 237 |