**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| RADIOSHACK CORPORATION, *et al.*,[1] | Case No. 15-10197 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Related Docket Nos.: 36, 861** |

**ORDER (I) APPROVING BID AND SALE PROCEDURES,
(II) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE
AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES AND (III) SCHEDULING AN AUCTION AND SALE HEARING**

This matter coming before the Court on the motion (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking, pursuant to sections 105, 363, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), an order (i) authorizing and approving the procedures that are attached hereto as Annex 1 (the "Bidding Procedures") for the sale of certain of the Debtors' assets (the "Sale"), (ii) approving the Bid Protections (as defined below), (iii) scheduling an Auction and Sale Hearing in connection with the Sale, and (iv) approving the form and manner of notice of the

---

[1] The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417). The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

[2] Capitalized terms not otherwise defined in this order shall have the meanings given to them in the Motion, the Bidding Procedures or the Stalking Horse APA, as applicable.

DLI-266511903v9

Auction and the Sale Hearing; the Court having reviewed the Motion and conducted a hearing to consider the relief requested therein regarding the Bidding Procedures and related matters (the "Bidding Procedures Hearing"); various parties having filed objections to the Motion or joinders thereto [D.I. 270, 298, 301, 307, 311, 313, 318, 319, 321, 324, 326, 328, 332, 334, 338, 364, 369, 371, 374, 382, 384, 387, 430, 434, 438 and 461] (collectively, the "Objections"); Standard General, L.P. and the Debtors having filed replies in support of the Motion [D.I. 502 and 509] (together, the "Replies"); and the Court having considered the Declaration of Carlin Adrianopoli in Support of First Day Pleadings [D.I. 17], the Declaration of David S. Kurtz in support of the Motion [D.I. 508] and the statements of counsel and the evidence presented at the Bidding Procedures Hearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.   The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019. Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   The Debtors have offered good and sufficient reasons for, and the best interests of their estates will be served by, this Court granting the Motion to the extent provided in this Order, including approval of (i) the Bidding Procedures, attached hereto as Annex 1,

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

(ii) the procedures described below for the determination of the amounts necessary to cure defaults under the Assumed and Assigned Agreements so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Assumed and Assigned Agreements, and (iii) the form and manner of notice of the Auction and Sale Hearing described in the Motion and this Order.

C. Good and sufficient notice of the relief sought in the Motion has been given under the circumstances, and no further notice is required except as set forth herein with respect to the Auction and the Sale Hearing. Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D. In accordance with Local Rules 6004-1(c) and 9006-1, the Debtors have properly filed and noticed a motion to shorten notice with respect to the scheduling of the Motion as to the relief to be granted pursuant to this Order. The issuance and immediately effectiveness of this Order as of the date hereof, including approval of the Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary immediate and irreparable harm to the Debtors and their estates.

E. The proposed notice of the Auction, the Sale Hearing and the Bidding Procedures, as set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing and the Bidding Procedures, and no other or further notice shall be required for the Sale or the assumption and assignment of executory contracts and unexpired leases.

F.     The Bidding Procedures were negotiated in good faith and at arms' length.

G.     The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets and the Other Assets.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The Motion is GRANTED to the extent provided herein.

2.     The request pursuant to the Motion to approve (a) the Break-Up Fee and the Expense Reimbursement is hereby adjourned to a later date and (b) the Sprint Expense Reimbursement is hereby adjourned to March 12, 2015 at 9:00 a.m. prevailing Eastern time.

3.     All objections to the entry of this Order or to the relief provided herein, including the Objections, that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice, except with respect to the Bid Protections which objections are preserved.

4.     The Bidding Procedures, as attached as Annex 1 hereto, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the Assets. The Debtors and their claim agent are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

5.     The deadline for submitting a Qualified Bid shall be Tuesday, March 17, 2015 at 5:00 p.m. prevailing Eastern Time (the "Bid Deadline"). Notwithstanding the foregoing, the SCP Secured Parties (as defined in the Interim DIP Financing Order, dated February 10, 2015 [D.I. 190] (the "Interim DIP Order")), shall be excused from compliance with the requirements of Section 7 of the Bidding Procedures and may make a bid at the Auction on all or any portion of the SCP Priority Collateral (as defined in the Interim DIP Order) without the requirement of submitting a Qualified Bid by the Bid Deadline; provided, however, that (a) the bid does not include any Acquired Assets and (b) if no Auction in respect to the applicable SCP

Priority Collateral would otherwise be conducted pursuant to Section 9 of the Bidding Procedures, then the SCP Secured Parties will be required to make any bid on such SCP Priority Collateral by no later than one business day prior to the date scheduled for the Auction. If the SCP Secured Parties submit any such bid for all or any portion of the Other Assets, the Debtors will conduct the Auction.

6. The Stalking Horse APA, as attached as Annex 2 hereto, is a Qualified Bid and the Stalking Horse Purchaser is a Qualified Bidder, for all purposes and requirements pursuant to the Bidding Procedures.

7. All bidders submitting a bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Assets.

8. In the event the Stalking Horse Purchaser's bid is the only Qualified Bid in respect of the Acquired Assets received by the Debtors by the Bid Deadline, no Auction will be conducted for the Acquired Assets, and the Stalking Horse Purchaser will be the Successful Bidder for the Acquired Assets.

9. If at least one Qualified Bid in respect of the Acquired Assets, other than that of the Stalking Horse Purchaser, is received by the Bid Deadline, the Debtors will conduct the Auction for the Acquired Assets. In addition, if at least two Qualified Bids in respect of a particular Other Asset is received by the Bid Deadline (or as otherwise contemplated by Sections 6 or 7 of the Bidding Procedures), the Debtors will conduct the Auction for such Other Assets. The Auction will take place at the offices of Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709, at 10:00 a.m. (prevailing Eastern time) on March 23, 2015, or such other time as the Debtors, in

consultation with the Consultation Parties, if the Auction is being conducted for the Acquired Assets, may notify Qualified Bidders, the Creditors' Committee, the Agents and the SCP Secured Parties.

10. Each bidder participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

11. The Auction will be conducted openly and will be transcribed or videotaped, at the Debtors' option.

12. The Court shall convene the Sale Hearing on Thursday, March 26, 2015 at 9:30 a.m. (prevailing Eastern Time) or as soon thereafter as counsel and interested parties may be heard, at which time the Court will consider approval of the Sale to the Successful Bidder(s) and the entry of the Sale Order. Any obligations of the Debtors set forth in the Stalking Horse Agreement, that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order. The Debtors in their sole discretion (but after consultation with the Consultation Parties) may adjourn the Sale Hearing from time to time without further notice to creditors or other parties in interest other than by announcement of said adjournment at the Sale Hearing.

13. Except as set forth in paragraphs 15 and 16, below, objections to approval of the Sale, including the sale of the Debtors' assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, must be in writing, state the basis of such objection with specificity and be filed with this Court and served so as to be

received on or before March 19, 2015 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") by: (a) *the Debtors,* c/o RadioShack Corporation, RadioShack Circle, Fort Worth, Texas 76102 (Attn: Bob Donohoo, Esq.); (b) *Debtors' counsel,* (i) Jones Day, 2727 N. Harwood Street, Dallas, Texas 75201 (Attn:  Gregory M. Gordon, Esq.), and (ii) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, Wilmington, Delaware 19801 (Attn: David M. Fournier, Esq.); (c) *the Stalking Horse Purchaser's counsel,* (i) Debevoise & Plimpton LLP, 919 Third Avenue, New York, New York 10022 (Attn:  Richard Hahn, Esq.), (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19801 (Attn: Gregory Werkheiser, Esq.), and (iii) DLA Piper, LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn:  Gregg Galardi, Esq.); (d) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; and (e) *Creditors' Committee's counsel*, Quinn Emanuel Urguahart and Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010 (Attn:  Susheel Kirpalani, Esq.) (collectively, the "Notice Parties").  Failure to timely file an objection in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order, or consummation of the Sale, and shall be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

14. As soon as practicable, but no later than two business days following entry of this Order, the Debtors shall file a schedule of cure obligations (the "Cure Schedule") for the Assumed and Assigned Agreements.  The Cure Schedule will include a description of each Assumed and Assigned Agreement potentially to be assumed and assigned by a potential buyer and the amount, if any, the Debtors believe is necessary to cure, or compensate the non-Debtor

parties for, any defaults under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Costs"). A copy of the Cure Schedule, together with the Assumption and Assignment Notice, will be served on each of the non-Debtor parties listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Court. For the avoidance of doubt, the presence of an Assumed and Assigned Agreement on the Cure Schedule (a) does not constitute an admission that such Assumed and Assigned Agreement is an executory contract or unexpired lease and/or (b) shall not prevent the Debtors or the Stalking Horse Purchaser from subsequently withdrawing such assumption or rejecting such Assumed and Assigned Agreement at any time before such Assumed and Assigned Agreement is actually assumed and assigned pursuant to an Order of the Court. Such Cure Schedule shall be without prejudice to the Stalking Horse Purchaser's rights under Section 7.8 of the Stalking Horse Agreement to subsequently exclude such item from assumption and assignment.

15. Objections to the Cure Costs set forth in the Cure Schedule must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before Monday, March 16, 2015 at 4:00 p.m. Eastern Time by the Notice Parties.

16. Objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Schedule, on any basis permitted under the Bankruptcy Code or any other applicable law, must be in writing, state the basis of such objection with specificity and be filed with the Court, and be actually received on or before Thursday, March 19, 2015 at 4:00 p.m. Eastern Time by the Notice Parties; *provided, however*, that the deadline for objecting to the assignment of the Assumed and Assigned Agreements to the Stalking Horse Bidder or Sprint on the basis of adequate assurance of future performance shall

be March 24, 2015 at 4:00 p.m. Eastern Time. As soon as practicable following the conclusion of the Auction, the Debtors shall file a notice identifying the Successful Bidder(s) and the Next Best Bid(s), if any, with the Court and serve such notice upon each party identified in the Cure Schedules. If the Successful Bidder is not the Stalking Horse Purchaser, the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder on the basis of adequate assurance of future performance shall be the commencement of the Sale Hearing, and, as soon as practicable following the conclusion of the Auction, the Debtors shall file copies of the Successful Bid(s) and the Next Best Bid(s) with the Court.

17. The Stalking Horse Bidder or Sprint, as applicable, shall provide adequate assurance information to the non-Debtor counterparties to each Assumed and Assigned Agreement that may be assumed and assigned to it under the Stalking Horse Agreement or Alliance Agreements by no later than March 16, 2015. The Debtors shall provide or cause to be provided adequate assurance information regarding all Qualified Bidder(s) to the non-Debtor counterparties to each Assumed and Assigned Agreement that may be assumed and assigned to such Qualified Bidder(s) as soon as practicable following the Bid Deadline. Each of the non-Debtor counterparties to the Assumed and Assigned Agreements who receive adequate assurance information in the form of voluntary disclosures or discovery from the Debtors or a proposed assignee regarding a proposed assignment and/or assignee shall keep the adequate assurance information confidential and only use or disclose the information as may be necessary to conduct due diligence on the proposed assignee and/or object to a proposed assignment of the Assumed and Assigned Agreement.

18. Unless a non-Debtor party to an Assumed and Assigned Agreement has timely and properly filed and served an objection to the assumption and assignment of its

Assumed and Assigned Agreement or the Cure Costs, all counterparties to that Assumed and Assigned Agreements shall (a) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Agreements, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; (b) be deemed to have consented to the assumption and assignment; and (c) be forever barred, estopped and permanently enjoined from asserting or claiming against the Debtors, the Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed and Assigned Agreement or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Agreement. In addition, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-Debtor parties to the Assumed and Assigned Agreements for all purposes in these chapter 11 cases and otherwise, and will constitute a final determination of the total Cure Costs required to be paid by the Debtors in connection with the assumption and assignment of the Assumed and Assigned Agreements; *provided, however,* that the Cure Cost set forth in the Cure Schedule may be reduced by any amounts Debtors pay under an Assumed and Assigned Agreement on or after the Petition Date.

19. Where a non-Debtor counterparty to an Assumed and Assigned Agreement files an objection asserting a cure amount higher than the proposed Cure Amounts (the "Disputed Cure Amounts"), then (a) to the extent that the parties are able to consensually resolve the Disputed Cure Amounts prior to the Sale Hearing, and subject to the Successful Bidder's consent to such resolution, the Debtors shall promptly provide the Creditors' Committee and the Successful Bidder notice and an opportunity to object to such proposed resolution or (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale

Hearing, then such objection will be heard at the Sale Hearing or, at the sole discretion of the Debtors (with the consent of the Successful Bidder, at such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

20. The Stalking Horse Purchaser is authorized to credit bid pursuant to section 363(k) of the Bankruptcy Code to the extent permitted thereunder, subject to any determination of this Court subsequent to this Order, and provided that nothing in this Order shall limit, modify, or affect the right of the Creditors' Committee or any SCP Secured Party to file an Objection within the Challenge Period (as those terms are defined in section 5.1 of the Interim DIP Order) or to otherwise object to the Sale to the Stalking Horse Purchaser or other Successful Bidder.

21. The form of the Auction and Hearing Notice and the Assumption and Assignment Notice are hereby approved and appropriate and sufficient for all purposes and no other or further notice shall be required if the Debtors serve such notices in the manner provided in the Motion and this Order. No finding or ruling is made in this Order as to the merits of any motion for approval of the Sale. Within three (3) business days of the entry of this Order or as soon thereafter as practicable, the Debtors shall cause the Auction and Hearing Notice to be served upon, without limitation, (i) the U.S. Trustee; (ii) counsel to the Creditors' Committee; (iii) counsel to the Prepetition Agents; (iv) counsel to the DIP Agent; (v) counsel to the Debtors' postpetition lenders; (vi) the attorneys general for each of the States in which the Debtors are known or reasonably believed by the Debtors to conduct operations; (vii) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (viii) the United States Environmental Protection Agency; (ix) the Pension Benefit Guaranty

Corporation; (x) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002(i); (xi) all parties that are known or reasonably believed to have expressed an interest in acquiring any of the Acquired Assets or any of the Other Assets; (xii) all parties that are known or reasonably believed by the Debtors to have asserted any lien, encumbrance, claim or other interest in the Acquired Assets; (xiii) all governmental agencies that are known or reasonably believed by the Debtors to be an interested party with respect to the Sale and the related transactions; (xiv) all non-Debtor parties to the Assumed and Assigned Agreements and (xv) all other known creditors of the Debtors.

22. Within five business days after entry of this Order, or as soon as practicable thereafter, the Debtors will place a publication version of the Auction and Hearing Notice for one day in the national edition of *The Wall Street Journal* and post it onto the Debtors' restructuring website.

23. All Interested Parties (whether or not Qualified Bidders) that participate in the Bidding Process shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

24. Nothing in this Order shall be deemed to authorize the Debtors to sell or otherwise transfer the "Consigned Goods" (as such term is defined in (i) the Digital Stream Technology objection [Docket No. 308]) or (ii) the Consignment Addendum to the Vendor Agreement between Ignition L.P. (formerly RadioShack Merchandizing L.P.), RadioShack

Global Sourcing Limited Partnership, and Skullcandy, Inc. effective as of August 22, 2014, pursuant to section 363 of the Bankruptcy Code, and the Debtors' and Digital Stream Technology's and Skullcandy, Inc.'s rights under the relevant consignment agreement are reserved in all respects.

25. The Protected Information (as defined in Section 5 of the Bidding Procedures) shall be subject to the following restrictions: (i) the Protected Information shall not be made available to (a) any telecommunications providers, and/or any of their respective agents, resellers, representatives or affiliates and (b) any manufacturer of mobile devices, and/or any of their respective agents, resellers, representatives or affiliates (collectively, the "Restricted Parties" and each a "Restricted Party"); (ii) the Debtors shall maintain the Protected Information in the Data Room in restricted electronic files, which shall not be accessible by any Restricted Party; and (iii) each Interested Party who accesses the Protected Information (a "Viewing Party") shall keep it confidential in accordance with the terms of its confidentiality agreement with the Debtors. Verizon Wireless ("VZW") and AT&T Mobility LLC and its affiliates ("AT&T") shall be deemed third party beneficiaries of all confidentiality agreements with each Restricted Party and Viewing Party and shall be able to enforce the confidentiality provisions of such agreements. A copy of this Order and the Bidding Procedures shall be served on all Interested Parties that have executed a confidentiality agreement with the Debtors. Notwithstanding anything to the contrary contained herein, any Protected Information relating to customers and/or subscribers of VZW or AT&T that is subject to federal, state, local laws, rules, or regulations with respect to its use and/or disclosure (including CPNI) or customer lists that identify any customers and/or subscribes of VZW or AT&T and/or service plans, features, customer contract terms, or mobile device information of such customers and/or subscribers shall not be placed in the Data Room

and shall not be disclosed by the Debtors to any third party (including Interested Parties) unless required by law. The Debtors shall notify VZW and AT&T of the identities of all Interested Parties that have accessed any Protected Information and shall provide VZW and AT&T with copies of the confidentiality agreements with those parties; provided, however, that the Debtors' obligation to provide this information pursuant to these Bidding Procedures shall be subject to having first obtained from VZW and AT&T reasonable assurance that such information shall not be used by persons at VZW and AT&T in connection with a bid for the Debtors' assets. For the avoidance of doubt, VZW, AT&T and Sprint and/or any of their respective agents, resellers, representatives and affiliates shall be Restricted Parties.

26. Nothing in this Order or the Bidding Procedures shall be deemed or construed as consent to the assumption and any assignment of the Wireless Carrier Agreements (as defined below) or any executory contract with AT&T or VZW (together, the "Wireless Carriers") nor a waiver of any rights under the Strategic Alliance Agreement and the Agent Agreement, respectively (the "Wireless Carrier Agreements"), including without limitation the right to assert that defaults and/or breaches have occurred and are continuing under the Wireless Carrier Agreements. The Wireless Carriers reserve all of their respective rights, including without limitation, any rights to (i) object to any proposed assumption or assumption and assignment by the Debtors of the Wireless Carrier Agreements, (ii) object to the Sale, (iii) enforce the terms of the Wireless Carrier Agreements against the Debtors, their agents, and any third parties and (iv) seek discovery with respect to any of the foregoing. The Wireless Carriers reserve all other rights under the Bankruptcy Code and other applicable law.

27. Neither the Stalking Horse Bidder nor any other bidder shall disclose any Protected Information to any Restricted Party.

28. The Debtors shall promptly file with the Court any agreements with the Stalking Horse Purchaser that may affect bidders.

29. The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied or waived.

30. Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: March 9, 2015
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE