## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| RADIOSHACK CORPORATION, *et al.*,[1] | : | Case No. 15-10197 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Related Docket Nos.: 779, 946** |
| | : | |

## ORDER AUTHORIZING (I) THE SALE OF THE DEBTORS' NONRESIDENTIAL REAL PROPERTY LEASE FOR STORE NUMBER 9572 FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES; (II) THE DEBTORS TO ASSUME AND ASSIGN THE LEASE; AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of RadioShack Corporation and the other above-captioned debtors, as debtors and debtors-in-possession (collectively, the "Debtors"), for entry of orders, pursuant to sections 105(a), 363, 365, 503 and 507 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing and approving the following:

---

[1] The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417). The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

[2] Unless indicated otherwise, capitalized terms used but not defined herein have the meanings ascribed to them in the Motion or the Assignment Agreement (as defined below), as applicable.

1

(i)     the sale of the Debtors' unexpired, nonresidential real property lease (the "Lease") for Store Number 9572 (the "Leased Premises");

(ii)    the assumption and assignment of the Lease to AT&T Mobility Puerto Rico Inc., (the "Buyer"),[3] pursuant to the terms set forth in that certain Assignment Agreement, dated as of March 26, 2015, and any documents related thereto (collectively, the "Assignment Agreement"), a copy of which is attached hereto as Exhibit 1; and

(iii)   other related relief;

the Court having entered an order approving the bidding procedures and granting certain related relief on March 12, 2015 [Docket No. 946] (the "Bidding Procedures Order"); the Buyer having submitted the highest and best offer for the Lease; the Court having conducted a hearing on the Motion on March 27, 2015 (the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having reviewed and considered the Motion, the Assignment Agreement, the Bidding Procedures Order, the record of the hearing before the Court on March 12, 2015 at which the Bidding Procedures Order was approved and all objections filed in accordance with the Bidding Procedures Order; the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; upon the record of the Sale Hearing, having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; upon all of the proceedings before the Court, all objections and responses to the relief requested in the Motion having been heard and overruled, continued or resolved on the terms set forth in this Order, it appearing that due notice of the Motion, the Assignment Agreement, and the Bidding Procedures Order having been provided; it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and it appearing

---

[3]     The term "Buyer" shall also include any AT&T branded dealer consented to by the Lease Counterparty.

DLI-266518794v1

that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT EXPRESSLY FINDS AS FOLLOWS:[4]**

### Jurisdiction, Venue and Final Order

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein.

### Notice of the Transactions, Sale Hearing and the Cure Amount

C.     On February 5, 2015 (the "Petition Date"), each of the Debtors commenced a case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[4]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated to the extent not inconsistent herewith.

D.    As evidenced by the affidavits of service previously filed with this Court, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Assignment Agreement and the assumption and assignment transaction (the "Transactions") has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rules 2002-1 and 6004-1.  The Debtors have complied with all obligations to provide notice of the Motion, the Sale Hearing, the Assignment Agreement and the Transactions as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the Sale Hearing, the Assignment Agreement or the Transactions is or shall be required.

E.    A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

### Marketing Process

F.    As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel at the Sale Hearing, the Debtors and their representatives, including A&G Realty Partners, LLC, have complied in all material respects with the Bidding Procedures Order.  The Debtors and their professionals have, under the circumstances, adequately and appropriately marketed the Lease.  The Debtors and their professionals (i) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Lease and (ii) considered any bids submitted on or before the deadline established by the Court for the submission of bids.

G.    The Buyer is the Successful Bidder for the Lease in accordance with the Bidding Procedures Order.  The Buyer and its representatives have complied in all material respects with the Bidding Procedures Order and all other applicable orders of this Court in negotiating and

4

entering into the Assignment Agreement, and the sale and the Assignment Agreement likewise comply with the Bidding Procedures Order and all other applicable orders of this Court.

## Highest or Otherwise Best Offer; Business Judgment

H.    The Assignment Agreement, including the form and total consideration to be realized by the Debtors under the Assignment Agreement, (i) constitutes the highest or best offer received by the Debtors for the Lease; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

I.    The Debtors' determination that the consideration provided by the Buyer under the Assignment Agreement constitutes the highest or best offer for the Lease constitutes a valid and sound exercise of the Debtors' business judgment.

J.    Consistent with their fiduciary duties, the Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the Assignment Agreement, including, but not limited to, the fact that (i) the consideration provided by the Buyer under the Assignment Agreement will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative; and (ii) unless the sale is concluded expeditiously as provided for in the Motion and pursuant to the Assignment Agreement, recoveries of creditors will be diminished.

## Good Faith; Arm's Length Sale

K.    The sales process engaged in by the Debtors and the Buyer, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order and the negotiation of the Assignment Agreement, was at arm's length, non-collusive, in good faith, and substantively and procedurally fair to all parties, including with respect to credit bidding.

L.    The Debtors, the Buyer and their respective Representatives have complied, in good faith, in all material respects with the Bidding Procedures Order.

5

DLI-266518794v1

M.    The Buyer is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.  None of the Debtors or the Buyer has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code.

N.    The Assignment Agreement and the Transactions contemplated thereunder were proposed, negotiated and entered into by and among the Debtors and the Buyer without collusion, and none of the Debtors or the Buyer has engaged in any conduct that would cause or permit the Assignment Agreement or the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

O.    Neither the Buyer nor any of its affiliates, present or contemplated members, officers, directors, shareholders or any of their respective successors and assigns is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling shareholders exists between the Debtors and the Buyer.

P.    The Assignment Agreement was not entered into, and none of the Debtors or the Buyer has entered into the Assignment Agreement or proposes to consummate the Transactions, for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors.  None of the Debtors or the Buyer is entering into the Assignment Agreement or proposing to consummate the Transactions, fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

6

Q.     The form and total consideration to be realized by the Debtors under the Assignment Agreement (including any credit bid) constitutes fair value, fair, full and adequate consideration, reasonably equivalent value and reasonable market value for the Lease.

### Corporate Authority

R.     The Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Assignment Agreement and all other Transactions contemplated thereby, and entry into the Assignment Agreement has been duly and validly authorized by all necessary corporate or similar action; (ii) have all of the corporate or other power and authority necessary to consummate the Transactions contemplated by the Assignment Agreement; and (iii) have taken all actions necessary to authorize and approve the Assignment Agreement and the Transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Assignment Agreement, are required for the Debtors to consummate such Transactions.

### Section 363 Is Satisfied

S.     The Debtors have, to the extent necessary, satisfied the requirements of section 363(b)(1) of the Bankruptcy Code.

T.     The Lease constitutes property of the Debtors' estates and exclusive title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

U.     The sale of the Lease to the Buyer under the terms of the Assignment Agreement meets the applicable provisions of section 363(f) of the Bankruptcy Code such that the sale of the Lease will be free and clear of any and all Claims, and except as expressly provided in the Assignment Agreement, the (i) transfer of the Lease to the Buyer and (ii) assumption and/or assignment to the Buyer of the Lease will be free and clear of all Claims and will not subject the

7

Buyer or any of the Buyer's assets to any liability for any Claims whatsoever (including, without limitation, under any theory of equitable law, antitrust, setoff, or successor or transferee liability).    All holders of Claims who did not object, or withdrew their objections to the Transactions, are deemed to have consented to the Transactions pursuant to section 363(f)(2) of the Bankruptcy Code.    All holders of Claims are adequately protected — thus satisfying section 363(e) of the Bankruptcy Code — by having their Claims, if any, attach to the proceeds of the Transactions ultimately attributable to the property against or in which they assert a Claim or other specifically dedicated funds, in the same order of priority and with the same validity, force and effect that such Claim holder had prior to the Transactions, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Transactions.

V.    The Buyer would not have entered into the Assignment Agreement and would not consummate the Transactions, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Lease was not free and clear of all Claims or if the Buyer would, or in the future could, be liable for any Claims, including, without limitation and as applicable, certain liabilities that expressly are not assumed by the Buyer as set forth in the Assignment Agreement or in this Order.    The Buyer asserts that it will not consummate the Transactions unless the Assignment Agreement specifically provides, and this Court specifically orders, that none of the Buyer, its assets or the Lease will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any (i) Claim; or (ii) any successor or transferee liability for any of the Debtors.

8

W.     The Buyer is not a successor to the Debtors or their respective estates by reason of any theory of law or equity, and neither the Buyer nor any of its affiliates shall assume or in any way be responsible for any liability or obligation of any of the Debtors or their respective estates, except as otherwise expressly provided in the Assignment Agreement or this Order.  The Buyer is not a continuation of the Debtors or their respective estates and there is no continuity between the Buyer and the Debtors.  The Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates and the Transactions do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors.

X.     The transfer of the Lease to the Buyer under the Assignment Agreement will be a legal, valid and effective transfer of all of the Debtors' legal, equitable and beneficial right, title and interest in and to the Lease free and clear of all Claims.

Y.     There is no legal or equitable reason to delay the Transactions.  The Transactions must be approved and consummated promptly in order to preserve the value of the Debtors' assets.  All factual predicates to the waiver any stay of this Order under Bankruptcy Rules 6004(h) and 6006(d) have been satisfied.

Z.     The Debtors have demonstrated both (i) good, sufficient and sound business judgment, purposes and justifications; and (ii) compelling circumstances for the Transactions pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transactions, the value of the Debtors' assets will be harmed.  Time is of the essence in consummating the Transactions.

## Assumption and Assignment of the Lease; Proposed Use

AA.     The assumption and assignment of the Lease does not constitute unfair discrimination, is in the best interests of the Debtors, their estates, their creditors and all other

9

parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

BB.     No section of any Lease which purports to prohibit, restrict, or condition the use, consideration or assignment of any such Lease in connection with the Transactions shall have any force or effect.

CC.     The Buyer's proposed use (the "Proposed Use") of the Leased Premises is included on Exhibit 2 hereto.  The Proposed Use does not materially violate the terms of any Lease or otherwise bar the assumption and assignment of such Lease to the Buyer.

DD.     The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for the Lease.  The Buyer has, as provided herein, (a) cured and/or provided adequate assurance of cure of any default existing prior to the closing under the Lease, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (b) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the closing under the Lease, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The Lease is free and clear of all Claims against the Buyer.

EE.     The Buyer has demonstrated adequate assurance of its future performance under the Lease within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Pursuant to section 365(f) of the Bankruptcy Code, the Lease to be assumed and assigned under the Assignment Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

FF.     No monetary or non-monetary defaults exist in the Debtors' performance under the Lease as of the date of this Order other than the failure to pay amounts equal to the cure costs

or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code. Except as otherwise specifically provided in this Order, or as specifically agreed to with the respective Lease Counterparty, the cure amount under the Lease is fixed in the sum set forth on <u>Exhibit 3</u> hereto (the "<u>Cure Amount</u>"). Upon payment of the Cure Amount, each Lease Counterparty shall be barred from asserting any additional Cure Amounts or other claims with respect to its Lease.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

<u>**General Provisions**</u>

2.    The Motion is granted in its entirety and approved in all respects.

3.    Any objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including, without limitation, all Lease Counterparties.

4.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

<u>**Approval of the Assignment Agreement**</u>

5.    The Assignment Agreement, all of the terms and conditions thereof, and consummation of all of the Transactions contemplated therein, are authorized and approved in all respects pursuant to section 363(b) of the Bankruptcy Code. The failure specifically to include any particular provision of the Assignment Agreement in this Order shall not diminish or impair

11

the effectiveness of such provision, it being the intent of the Court that the Assignment Agreement be authorized and approved in its entirety.

6.    The Debtors and their respective officers, employees and agents are authorized and directed to (a) take any and all actions necessary, appropriate or reasonably requested by the Buyer to perform, consummate, implement and close the Transactions.

7.    All persons and entities are prohibited and enjoined from taking any action to prevent, adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Lease to the Buyer in accordance with the Assignment Agreement and this Order.

## Sale and Transfer Free and Clear of Claims

8.    Except as otherwise expressly provided in the Assignment Agreement and the terms of this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Lease shall be sold to Buyer free and clear of all claims, liens (including, without limitation, any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof), liabilities, interests, rights and encumbrances, including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims,

12

employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of licensees or sublicensees (if any) under section 365(n) of the Bankruptcy Code or any similar statute, rights of tenants and subtenants (if any) under section 365(h) of the Bankruptcy Code or any similar statute, and all other matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Bankruptcy Case (but, for the avoidance of doubt, in each case arising from the ownership of the Lease prior to the closing date), and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law or doctrine of successor liability or related theories (all of the foregoing collectively being referred to in this Order as "Claims", and, as used in this Order, the term "Claims" includes, without limitation, any and all "claims" as that term is defined and used in the Bankruptcy Code, including section 101(5) thereof), with all such Claims to attach to the proceeds of the Transactions to be received by the Debtors with the same validity, force, priority and effect which they now have as against the Lease, subject to any claims and defenses the Debtors may possess with respect thereto; provided, however, that setoff rights will be extinguished to the extent there is no longer mutuality after the consummation of the Transactions.

DLI-266518794v1

9.      At closing, all of the Debtors' right, title and interest in and to, and possession of, the Lease shall be immediately vested in the Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear of any and all Claims. Such transfer shall constitute a legal, valid, binding and effective transfer of, and shall vest the Buyer with good and marketable title to, the Lease.

10.     This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Assignment Agreement.

11.     All persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Claims against the Debtors or the Lease arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or affiliates, the Lease, the ownership or sale of the Lease prior to closing or the transfer of the Lease to the Buyer, are hereby forever barred, estopped and permanently enjoined from asserting such Claims against the Buyer, its successors or assigns, their property or the Lease. Following

14

the closing, no holder of any Claim shall interfere with the Buyer's title to or use and enjoyment of the Lease based on or related to any such Claim, or based on any action the Debtors may take in the Chapter 11 Cases.

12.    If any person or entity that has filed financing statements, mortgages, mechanic's Claims, *lis pendens* or other documents or agreements evidencing Claims against or in the Lease shall not have delivered to the Debtors prior to the closing of the Transactions, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims that the person or entity has with respect to the Lease, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Lease; (b) the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Claims against the Buyer and the applicable Lease; and (c) the Buyer may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction and releases of all such Claims with respect to the Lease.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Lease free and clear of Claims shall be self-executing, and none of the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

DLI-266518794v1

13.     To the maximum extent permitted under applicable law, the Buyer shall be authorized, as of the closing date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Lease, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, transferred to the Buyer as of the closing date.

14.     No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Lease on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Transactions to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

## No Successor or Transferee Liability

15.     The Buyer shall not be deemed, as a result of any action taken in connection with the Assignment Agreement, the consummation of the Transactions contemplated by the Assignment Agreement, or the transfer or operation of the Lease to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than with respect to any obligations as an assignee under the Lease arising after the closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, including, without limitation, within the meaning of any foreign, federal, state or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), WARN (defined below), CERCLA (defined below), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations

16

Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"), environmental liabilities, debts, claims or obligations arising from conditions first existing on or prior to closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

## Good Faith; Arm's Length Sale

16.     The Assignment Agreement has been negotiated and executed, and the Transactions contemplated by the Assignment Agreement are and have been undertaken, by Debtors, the Buyer and their respective representatives at arm's length, without collusion and in "good faith," as that term is defined in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Lease), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

17.     None of the Debtors or the Buyer has engaged in any conduct that would cause or permit the Assignment Agreement or the Transactions to be avoided or costs, or damages or costs, to be imposed, under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Lease under the Assignment Agreement is fair and reasonable, and the Transactions may not be avoided under section 363(n) of the Bankruptcy Code.

17

## Assumption and Assignment of Lease; Proposed Use

18.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors are authorized and directed to assume and assign to the Buyer each of the Lease upon the closing of the Transactions, free and clear of all Claims.   The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Lease.   The Buyer has demonstrated adequate assurance of its future performance under the relevant Lease within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.   No monetary or non-monetary defaults exist in the Debtors' performance under the Lease as of the date of this Order other than the failure to pay amounts equal to the cure costs or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.   Except as otherwise specifically provided in this Order, or as specifically agreed to with the respective Lease Counterparty, the Cure Amount under the Lease is fixed in the sum set forth on Exhibit 3 hereto.   Upon payment of the Cure Amount, each Lease Counterparty shall be barred from asserting any additional Cure Amounts or other claims with respect to its Lease.

19.    To the extent that the Lease Counterparty to the Lease did not timely object, such counterparty is deemed to have consented to (i) the assumption and assignment of the Lease pursuant to the terms of this Order; and (ii) the proposed Cure Amount.

20.    Any provision in the Lease that prohibits or conditions the assignment of such Lease or allows the Lease Counterparty to impose any penalty, fee, rent increase, profit sharing arrangement or other condition on renewal or extension, or to modify any term or condition upon the assignment of such Lease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect.   All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Lease have been satisfied.   Upon the closing, in accordance with sections 363 and 365 of the

18

Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Lease, and such Lease shall remain in full force and effect for the benefit of the Buyer.

21.     The assumption and assignment of each of the Lease shall be deemed to have occurred as of March 31, 2015 (the "Closing Date").  Upon the Closing Date, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Lease, and the Debtors and their estates shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Lease.  There shall be no assignment fees, increases or any other fees charged to the Buyer or the Debtors as a result of the assumption and assignment of the Lease. Assumption of the Lease by the Debtors is contingent upon the consummation of the assignment of the Lease to the Buyer.  If the Closing Date has not occurred as of March 31, 2015, the Lease will be rejected as of that date unless the Buyer has agreed to assume all responsibility for rent and other costs associated with the Lease (collectively, the "Obligations") beginning April 1, 2015.  If Buyer so agrees, Buyer shall be responsible for such Obligations even if the Closing Date fails to occur.  All Leases subject to the Motion that are not sold, assumed or assigned shall be rejected as of March 31, 2015.

22.     Notwithstanding any term of the Lease to the contrary, any extension, renewal or purchase options or other rights contained in the Lease that purport to be personal only to the Debtors or to a named entity in the Lease or to be exercisable only by the Debtors or by a named entity or an entity operating under a specific trade name may be freely exercised to their full extent by the Buyer in accordance with the terms of the Lease.  Any extension or renewal options have been timely exercised by the Debtors and the Lease are all in full force and effect and have

not been previously rejected and the Debtors' time to assume or reject the Lease has not otherwise expired.

23.     The Buyer's Proposed Use of the Leased Premises is hereby approved. The Lease may be used by the Buyer for the Proposed Use, any use set forth in the respective Lease or as may be permitted by the respective Lease Counterparty by writing.

24.     Notwithstanding any provision in the Lease, including a covenant of continuous operation or a "go dark" provision, the Buyer shall not be required to operate its business from the leased premises for a reasonable period of time after the Effective Date, but in no event more than 90 days or as otherwise agreed to by the Buyer and Lease Counterparty, in order to perform alterations and remodeling which shall be done in a manner consistent with the Proposed Use and the terms of the Lease and to replace and modify existing signage to the extent necessary to operate at the premises under its applicable trade name and consistent with its business operations, Proposed Use and in a manner consistent with the terms of the Lease.

25.     Each Lease Counterparty to a Lease is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Buyer or their respective property (i) any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing Date or arising by reason of the closing, including any breach related to or arising out of change-in-control in such Lease, or any purported written or oral modification to the Lease; or (ii) any claim, counterclaim, defense, breach, default, condition, setoff or other claim asserted or capable of being asserted against the Debtors existing as of the Closing Date or arising by reason of the closing.

26.     Other than the Lease, the Buyer assumed none of the Debtors' other contracts or leases pursuant to this Order and shall have no liability whatsoever thereunder.

DLI-266518794v1

27.    Nothing in the Motion or this Order shall be deemed or construed as a waiver of any claims or causes of action that the Debtors or the Buyer have or may have against a non-Debtor counterparty to any Lease, whether or not such claims arise under, are related to the assumption of or are independent of the Lease.

28.    Nothing herein shall be deemed to modify any letter agreement or subsequent lease amendment that has been executed or otherwise agreed to between the Buyer and the respective Lease Counterparty with respect to the Lease in the form as agreed to by their respective counsel or other representative.

### Other Provisions

29.    The requirements set forth in Bankruptcy Rules 6003(b), 6004 and 6006 and Local Bankruptcy Rules 6004-1 and 9013-1 have been satisfied or otherwise deemed waived.

30.    The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to give any notice permitted by the Assignment Agreement or to enforce in this Court any of its remedies under the Assignment Agreement or any other sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

31.    The provisions of this Order and the Assignment Agreement are non-severable and mutually dependent.

32.    The Assignment Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

21

33.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Assignment Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transactions. This Court retains jurisdiction to compel delivery of the Lease, to protect the Buyer and its assets, including the Lease, against any Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105(a), 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Lease to the Buyer.

34.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d) or any similar rule that would delay the effectiveness of this Order. Time is of the essence in closing the sale and the Debtors and the Buyer intend to close the sale consummate the Transactions as soon as possible. Therefore, any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

35.     This Order and the Assignment Agreement shall be binding in all respects upon all creditors of (whether known or unknown), and holders of equity interests in, any Debtor, any holders of Claims in, against or on all or any portion of the Lease, the Lease Counterparty to the Lease, all successors and assigns of the Buyer, the Debtors and their affiliates and subsidiaries and any subsequent trustee appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection. Nothing contained in any

DLI-266518794v1

chapter 11 plan confirmed in the Chapter 11 Cases, any order confirming any such chapter 11 plan or any order approving wind-down or dismissal of the Chapter 11 Cases or any subsequent chapter 7 cases shall conflict with or derogate from the provisions of the Assignment Agreement or this Order, and to the extent of any conflict or derogation between this Order or the Assignment Agreement and such future plan or order, the terms of this Order and the Assignment Agreement shall control.

36.   To the extent any provisions of this Order conflict with, or are otherwise inconsistent with, the terms and conditions of the Assignment Agreement or the Bidding Procedures Order, this Order shall govern and control.

Dated: March 30, 2015
        Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

23