# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| RADIOSHACK CORPORATION, *et al.*,[1] | : | Case No. 15-10197(BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Related Docket No.: 1729** |

## ORDER (I) APPROVING BID AND SALE PROCEDURES WITH RESPECT TO THE SALE OF CERTAIN LEASE ASSETS, (II) APPROVING CURE PROCEDURES AND RELATED NOTICE PROCEDURES; (III) SCHEDULING AN AUCTION AND SALE HEARING AND (IV) GRANTING RELATED RELIEF

This matter coming before the Court on the motion (the "Motion"),[2] filed by the

above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking,

pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Local Rule 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), an order (i) authorizing and approving certain sale and bidding procedures (as may be

amended, the "Round Three Bidding Procedures"), (ii) scheduling an auction and sale hearing in

connection with any such sale, (iii) approving cure procedures (the "Cure Procedures") and

---

[1] The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RadioShack Corporation (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RadioShack Customer Service LLC (8866); RadioShack Global Sourcing Corporation (0233); RadioShack Global Sourcing Limited Partnership (8723); RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); Tandy Finance Corporation (5470); Tandy Holdings, Inc. (1789); Tandy International Corporation (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417).  The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

[2] Capitalized terms not otherwise defined in this order shall have the meanings given to them in the Motion or the Round Three Bidding Procedures, as applicable.

related notice procedures, and (v) granting related relief [D.I. 1729]; the Court having reviewed

the Motion and conducted a hearing to consider the relief requested therein regarding the Round

Three Bidding Procedures and related matters (the "Round Three Bidding Procedures Hearing");

and the Court having considered the declarations of Michael Jerbich filed in support of the Initial

Lease Sale Motion [D.I. 416, 654], and the statements of counsel and the evidence presented at

the Round Three Bidding Procedures Hearing;

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

      A.    The Court has jurisdiction over this matter and over the property of the

Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This

matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The

statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R.

Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these cases and the Motion is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      B.    The Debtors have offered good and sufficient reasons for, and the best

interests of their estates will be served by, this Court granting the Motion to the extent provided

in this Order, including approval of (i) the Round Three Bidding Procedures, which are attached

hereto as Annex 1, (ii) the Cure Procedures, and (iii) the form and manner of notice described in

the Motion and this Order.

      C.    Good and sufficient notice of the relief sought in the Motion has been

given under the circumstances, and no further notice is required except as otherwise set forth

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. All findings of fact and conclusions of law announced by the Court at the Round Three Bidding Procedures Hearing are hereby incorporated herein to the extent not inconsistent herewith.

#33139232 v4

herein.  Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

D.      The proposed notice set forth in the Motion and this Order, is appropriate and sufficient, and is reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing and the Round Three Bidding Procedures, and no other or further notice shall be required for the Sale or the assumption and assignment of executory contracts and unexpired leases.

E.      The issuance and immediate effectiveness of this Order as of the date hereof, including approval of the Round Three Bidding Procedures, is supported by evidence of compelling business justifications and other circumstances demonstrating that the relief granted by this Order is necessary to prevent immediate and irreparable harm to the Debtors and their estates.

F.      The Round Three Bidding Procedures are reasonably designed to maximize the value to be achieved for the Lease Assets.

**THEREFORE, IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED to the extent provided herein.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn with prejudice, waived, resolved or settled are hereby denied and overruled on the merits with prejudice.

## Round Three Bidding Procedures and Auction

3.      As provided in the Round Three Bidding Procedures, a Qualified Bid may include a bid for the Lease Designation Rights.

4.      The Round Three Bidding Procedures, as attached as <u>Annex 1</u>, are hereby approved, are incorporated herein by reference, and shall govern all bids and bid proceedings relating to the Lease Assets.  The Debtors and their representatives are authorized to take any and all actions necessary or appropriate to implement such Round Three Bidding Procedures.

5.      The deadline for submitting a Qualified Bid shall be **May 8, 2015 at 4:00 p.m. (prevailing Eastern Time)**, provided that if the Bid is submitted by a Lease Counterparty bidding on its own Lease, the Lease Counterparty may submit its Bid by **May 11, 2015 at 12:00 p.m. (prevailing Eastern Time)** (each, as applicable, the "<u>Bid Deadline</u>").

6.      RadioShack Corporation shall serve as Escrow Agent for the Good Faith Deposit(s).  Good Faith Deposits shall:  (i) be held by the Escrow Agent in a segregated account at Bank of America; (ii) not be deemed to be property of the Seller's bankruptcy estate pending further order of the Court; and (iii) be held in escrow pending further order of the Court or returned to the Bidder in accordance with the Round Three Bidding Procedures or the Bidder's signed agreement.

7.      The Debtors shall deliver any Adequate Assurance Package with respect to a Qualified Bid to Lease Counterparties and, if known, their counsel via email or overnight mail no later than **May 18, 2015**.  To the extent any Lease Counterparty or its counsel has provided an email address to the Debtors or their advisors, such Lease Counterparty or its counsel is deemed to have agreed to service of documents via email.

8.      All bidders are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Lease Assets.

#33139232 v4

9.      No later than **May 9, 2015**, the Debtors shall file with the Court a report stating which Leases, if any, are the subject of a Qualified Bid, including a Qualified Bid for Lease Designation Rights for such Leases (the "<u>Initial Bid Report</u>").

10.      In the event the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct the Auction.  The Auction shall take place at the offices of Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709 on **May 14, 2015 at 11:00 a.m. (prevailing Eastern Time)**.  The Auction may be continued from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment, as applicable, at the Auction.

11.      Each Qualified Bidder, including a Lease Counterparty bidding for its own Lease, participating at the Auction will be required to confirm in writing, that (a) it has not engaged in any collusion with respect to the bidding process, and (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

12.      The Auction will be conducted openly and will be transcribed or videotaped, at the Debtors' option

13.      Upon the conclusion of the Auction, the Debtors will promptly file with the Court and provide written notice, via facsimile, overnight mail or e-mail, of the names of the Successful Bidder and the Next Best Bidder, if applicable, for the applicable Lease Asset to all Lease Counterparties to Leases for which there is a Successful Bidder (other than where the Lease Counterparty is the Successful Bidder).

14.      The Court shall convene a Sale Hearing with respect to the sale of Lease Assets on **May 27, 2015 at 11:00 a.m**. **(prevailing Eastern Time)**, at which time the Court will consider the Sale of any Lease Assets to the Successful Bidder(s), the approval of any

#33139232 v4

assumption and assignment, any request by the Debtors and any Qualified Bidder for approval of

a break-up fee and/or expense reimbursement and the entry of a Sale Order.

15.     Objections shall be filed as provided herein.  If there are no objections

pending as of the applicable Sale Hearing or any objections, except for unresolved objections

relating to Cure Amounts, are overruled or otherwise resolved, then the proposed sale may be

approved at the applicable Sale Hearing.  Any unresolved objections related to Cure Amounts

will be resolved after the proposed sale has closed or as otherwise ordered by the Court, provided

that disputed cure amounts shall be escrowed.

## Cure, Objection and Notice Procedures

16.     The following Cure Procedures and notice procedures are hereby

approved:

     a.    **Cure Schedule.**  A schedule listing the proposed cure amounts (the "Cure Amounts") for those Leases that the Debtors may seek to assume and assign or that may be subject to a sale of the Lease Designation Rights was previously filed in connection with the Asset Sale Motion [Docket No. 939], as such schedule may be amended of record.

     b.    **Cure Objections.**  A Lease Counterparty shall only be required to file a Cure Objection if its Lease appears on the Initial Bid Report. If a Lease Counterparty objects to the Debtors' proposed cure amounts, the Lease Counterparty may send an email indicating the Lease Counterparty's proposed cure amount, which email must include support for such proposed cure amount, to leasecures@radioshack.com such that the parties may reach an informal resolution.  If the parties are unable to reach a resolution by such means, a party must file a formal objection to Cure Amounts (a "Cure Objection").

          Cure Objections must:  (i) be in writing; (ii) be signed by counsel or attested to by the objecting party; (iii) identify the Leases to which the objector is a party; (iv) describe with particularity any cure the claimant contends is required under section 365 of the Bankruptcy Code (the "Cure Claim") and indentify the bases of the Cure Claim under the Lease; and (v) be filed and served so as to be received by the Debtors on or before **May 13, 2015 at 4:00 p.m.**

#33139232 v4

(**prevailing Eastern Time**) (the "<u>Cure Objection Deadline</u>").  A party need not re-file a Cure Objection if one has previously been filed.

Unless a Cure Objection has been filed and served by the Cure Objection Deadline, all Lease Counterparties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert such a Cure Objection and instead shall be deemed to have consented to the Cure Amount and shall be forever barred and estopped from asserting or claiming that any additional amounts are due or defaults exist.

A timely Cure Objection shall not constitute an objection to the relief generally requested in the Motion.

c.    **General Objection Deadline.**  All objections, excluding adequate assurance objections, to the assumption, assignment and sale of any Lease Assets must be submitted by **May 13, 2015 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>General Objection Deadline</u>").

d.    **Adequate Assurance Objections.**  All affected Lease Counterparties shall be required to submit any objections with respect to adequate assurance of future performance by the Successful Bidder or the Next Best Bidder, as applicable, with respect to any Lease by **May 22, 2015 at 12:00 p.m. (prevailing Eastern Time)**.

<u>**Other Findings**</u>

17.    All Interested Parties (whether or not Qualified Bidders) that participate in

the Bidding Process shall be conclusively deemed to have knowingly and voluntarily

(a) consented to the entry of a final order by this Court in connection with the Motion or this

Order (including any disputes relating to the Bidding Process, the Auction and/or the Sale) to the

extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States

Constitution and (b) waived any right to jury trial in connection with any disputes relating to the

any of the foregoing matters.

#33139232 v4

18.     The requirements set forth in Local Rules 6004-1 and 9013-1 are hereby satisfied or waived.

19.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014, this Order shall be immediately effective and enforceable upon entry of this Order. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated:  April _____, 2015
      Wilmington, Delaware

                                           THE HONORABLE BRENDAN L. SHANNON
                                           CHIEF UNITED STATES BANKRUPTCY JUDGE

## <u>Annex 1</u>

## BIDDING PROCEDURES

**BIDDING PROCEDURES**

1.    <u>Definitions</u>:

<u>**A&G Realty**</u>:  A&G Realty Partners LLC

<u>**Agreement**</u>:  The form of agreements attached hereto as <u>Exhibits B</u> and <u>C</u> for the sale and assignment of a lease, the agreement is either:

(i)    For a replacement tenant who is not using a designation rights component, an ASSIGNMENT AGREEMENT in the form attached hereto as <u>Exhibit B</u>, or

(ii)    For the landlord of the subject Leases, a LEASE TERMINATION AGREEMENT in the form attached hereto as <u>Exhibit C</u>.

<u>**Assumed Liabilities:**</u>  All obligations of the tenant or lessee under and with respect to each lease that may be assumed and assigned, including, but not limited to, accrued but unbilled adjustments for common area maintenance, utilities, real estate taxes, insurance and other operating expenses.

<u>**Auction**</u>:  Seller, through the services of A&G Realty, may conduct (pursuant to the terms and conditions of these Bidding Procedures) an auction of the Leases and/or Lease Designation Rights on the Auction Date (or on an adjourned date). The Seller reserves the right to use any auction format that it deems in the best interest of its bankruptcy estate.

<u>**Auction Date**</u>:  The anticipated Auction Date is **May 14, 2015 at 11:00 a.m. (prevailing Eastern Time)**.

<u>**Auction Venue**</u>:  The offices of Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, Delaware 19899-1709.

<u>**Back-Up Bid**</u>:  The Qualified Bid selected by Seller at the conclusion of the Auction as the second highest or best Bid.

<u>**Back-Up Bidder**</u>:  The Bidder who submitted the Back-up Bid.  The Back-up Bidder's Good Faith Deposit is held pursuant to the provisions below and, in the event that the Successful Bidder fails to close, the Back-up Bidder is obligated to close.

<u>**Baseline Auction Bid**</u>:  The highest or best bid for purposes of constituting the opening bid of the Auction.

<u>**Bid**</u>:  A binding offer to purchase the Leases and/or Lease Designation Rights. All Bids are irrevocable pursuant to the terms set forth below.

<u>**Bidder**</u>:  A person or entity that submits a Bid.

**Bid Deadline**:  The anticipated Bid Deadline is **May 8, 2015 at 4:00 p.m. (prevailing Eastern Time)** provided that if the Bid is submitted by a Lease Counterparty bidding on its own lease, the Lease Counterparty may submit its bid by **12:00 p.m. (noon) (prevailing Eastern Time) on May 11, 2015**.

**Closing:**  The closing of any sale of Leases and/or Lease Designation Rights sold through these Bidding Procedures.

**Committee**:  The Official Committee of Unsecured Creditors appointed in these cases on February 13, 2015.

**Court**:  United States Bankruptcy Court for the District of Delaware.

**Cure Amount**:  The applicable cure amount with respect to each Lease that may be assumed and assigned, which shall include prepetition amounts and February amounts.

**Cure Claim:**  The cure a claimant contends is required under section 365 of the Bankruptcy Code.

**Data**:  Information provided by Seller to Bidders or prospective Bidders subject to the conditions and limitations set forth in these Bidding Procedures.  This information may include lease abstracts and leases.

**Escrow Agent**:  RadioShack Corporation, in its capacity as Escrow Agent for the Good Faith Deposit(s).

**Good Faith Deposit**:  A wire transfer in the amount of ten percent (10%) of the Bid.

**Irrevocability Period**:  That period of time that commences upon each Bidder's submission of a Bid and that concludes at the earlier of (i) the Closing or (ii) May 31, 2015.

**Leases**:  Those real property leases where Seller is the tenant, as listed on Exhibit C to the Motion [D.I. 1729] attached hereto and incorporated by reference as may be supplemented as set forth in the Motion and Procedures Order, but excluding the real property leases for store nos. 1961, 2134, 2289 and 9272.

**Lease Counterparties**:  Landlords under the applicable Leases.

**Lease Designation Rights**:  The exclusive right to designate whether and to whom certain of the Leases will be assumed and assigned.

**Minimum Bid Amount**:  Except with respect to a Lease Counterparty bidding for its own Lease(s), (i) $25,000 plus applicable Cure Amounts per Lease plus the assumption of Assumed Liabilities if the Bid is for one or more Leases or (ii) in the case of a Bid for Lease Designation Rights, $15,000 plus applicable Cure

Amounts and the assumption of Assumed Liabilities per Lease for which the Bidder desires Lease Designation Rights, provided that such Bid is for the Lease Designation Rights to 50 or more Leases.

**Offer & Bidder Registration Form**:  The form of document attached hereto as Exhibit A.

**Qualified Bid**:  A Bid that satisfies the requirements set forth below.

**Qualified Bidder**:  A Bidder who submits a Qualified Bid.

**Procedures Order**:  An Order of the Court approving these Bidding Procedures.

**Required Bid Documents**:  The Required Bid Documents are those documents that a Bidder is required to submit by the Bid Deadline, as further described below.

**Sale Hearing**:  The hearing in the Court, at which the Seller will seek an Order approving a sale pursuant to these Bidding Procedures.

**Sale Order**:  An Order of the Court authorizing a sale of the Leases and/or Lease Designation Rights to the Successful Bidder.

**Seller**:  RadioShack Corporation

**Seller's Counsel**:  Jones Day and Pepper Hamilton LLP

**Successful Bid**:  At the conclusion of the Auction, the Qualified Bid selected by the Seller as the winning bid based upon price, any applicable break-up fee or expense reimbursement, financial condition, experience, and such other factors as the Seller may deem relevant, as further detailed below.

**Successful Bidder**:  The Bidder who submitted the Successful Bid.

2.    Bid Deadline:

A.    In order to solicit the highest or best offers for the Leases and/or Lease Designation Rights, the Seller may conduct the Auction herein described.  The first step is the submission of binding Bids in the form of the "Required Bid Documents" on or before the Bid Deadline.  Seller will review the Required Bid Documents and based upon that review, Seller will identify those Bidders who have submitted "Qualified Bids."

B.    You must submit the Required Bid Documents, as applicable, so as to be actually received by no later than 12:00 p.m. (noon) (prevailing Eastern Time) on the Bid Deadline.  The Required Bid Documents, as applicable, must be submitted to Seller's Counsel via email at the following contact information, but the Good

#33140203 v4

Faith Deposit shall be sent via wire transfer to RadioShack Corporation (upon request, A&G Realty will provide wiring instructions):

> Jones Day
> 717 Texas, Suite 3300
> Houston, Texas 77002
> Attn: Thomas A. Howley, Esq.
> email: tahowley@jonesday.com
>
> With copy to:
>
> Pepper Hamilton LLP
> Hercules Plaza, Suite 5100
> 1313 N. Market Street
> Wilmington, Delaware 19899-1709
> Attn: David M. Fournier, Esq.
> email: fournierd@pepperlaw.com

A complete copy of the Required Bid Documents must also be submitted to A&G Realty:  michael@agrealtypartners.com, attn: Michael Jerbich.

C.   Due diligence information can be obtained by contacting A&G Realty.  Seller and A&G Realty shall not be obligated to furnish any Data after the Bid Deadline to any party that the Seller determines is not reasonably likely to be a Qualified Bidder.

3.   Required Bid Documents

A.   Unless expressly waived by Seller, in order for a Bidder to become a Qualified Bidder, except as provided below with respect to Lease Counterparties bidding on their own Leases, a Bidder must submit to Seller's Counsel, with a copy to A&G Realty, the following documents which, taken together, constitute the Required Bid Documents:

(i)   Offer:  With respect to a purchase of one or more Leases, a written "Offer And Bidder Registration Form" in the form attached hereto as Exhibit A. With respect to a purchase of Lease Designation Rights, a duly executed designation rights agreement in a form reasonably acceptable to Seller.  In either case, the offer must expressly state that the Bidder's offer is all cash, on an as-is, where-is basis and irrevocable during the Irrevocability Period.

(ii)   Agreement:  An executed and fully completed Agreement in the form annexed hereto as Exhibit B or C, as applicable.  The Agreement, as tendered, may not contain any contingencies, including, but not limited to due diligence and financing contingencies.  An Agreement shall not be required in the case of a Bid for Lease Designation Rights, provided that

the bidder instead submits a designation rights agreement in a form reasonably acceptable to Seller.

(iii)   <u>Adequate Assurance Package</u>:  Unless such Bid does not require adequate assurance, an Adequate Assurance Package that includes audited and unaudited financial statements, tax returns, bank account statements, any information related to the proposed business to be conducted at the premises, any relevant Offer And Bidder Registration Form and any other documentation that the Seller deems appropriate.  This requirement shall not apply to a Lease Counterparty that is credit bidding for its own lease.

Any Adequate Assurance Package with respect to a Qualified Bid must be delivered by Seller to the Lease Counterparties and, if known, their counsel via email or overnight mail no later than **May 18, 2015**.  To the extent any Lease Counterparty or its counsel has provided an email address, such Lease Counterparty or its counsel will be deemed to have agreed to service of documents via email.

In submitting a Bid, each Qualified Bidder agrees that it will appear at the Sale Hearing and present sufficient evidence of adequate assurance of future performance to satisfy the requirements of section 365 of the Bankruptcy Code, through a witness competent to testify to the same, if it is the Successful Bidder.

(iv)   <u>Other Information</u>:  Any other information that the Seller may reasonably request which would enable Seller to evaluate, among other things, the Bidder's ability to consummate a transaction, the Bidder's legal authority to Bid, and/or the Bidder's ability to fulfill its obligations in connection therewith.

(v)   <u>Good Faith Deposit</u>:  A wire transfer in the amount of ten percent (10%) of the Bid.

B.   Confidentiality:  By submitting a Bid, each Bidder agrees to maintain as confidential and to not disclose to third parties both the fact that Bidder submitted a Bid and the terms and conditions of such Bid.

4.   <u>Qualified Bids</u>

Unless such requirement is waived by the Seller:

A.   In order for a Bid to be a "Qualified Bid," a Bid shall:

(i)   be no less than the Minimum Bid Amount, unless the Bid is submitted by a Lease Counterparty bidding on its own Lease;

(ii)    include the Good Faith Deposit and each of the Required Bid Documents, executed and in form and substance acceptable to the Seller, unless the Bid is submitted by a Lease Counterparty bidding on its own Lease;

(iii)    be a good faith, bona fide, offer to purchase one or more Leases and/or the Lease Designation Rights;

(iv)    not be contingent upon any factor, including obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

(v)    provide evidence satisfactory to the Seller, in its sole discretion, of the bidder's financial wherewithal and operational ability to consummate the transaction;

(vi)    identify the legal name of the Bidder (including any equity holders or other financial backers, if the Bidder is an entity formed for the purpose of consummating the assumption and assignment transaction);

(vii)    be irrevocable during the Irrevocability Period; and

(viii)    be actually received by the Bid Deadline.

B.    A Qualified Bid may only include a request for a break-up fee and/or expense reimbursement if the bid is for a purchase of 50 or more Leases or the Lease Designation Rights to 50 or more Leases.

C.    Failure of a Bidder to fully, accurately and promptly respond to Seller's requests for additional information may result in a Bid no longer being considered a Qualified Bid.

D.    Following the receipt of Bids, Seller will ascertain, in the exercise of its reasonable business judgment, whether a Bid is a Qualified Bid, taking into account, among other things, the quality of the Required Bid Documents, the Bidder's experience, financial capacity to close and reputation in the marketplace, etc.

E.    A&G Realty will notify each Bidder and Bidder's counsel via email or overnight mail if it is a Qualified Bidder.

5.    <u>Good Faith Deposit Requirement</u>

A.    Except as otherwise provided herein, each Bidder shall tender a Good Faith Deposit to Escrow Agent.  The Successful Bidder will be required to tender additional Good Faith Deposits, as set forth below.

B.    The Good Faith Deposit shall be by wire transfer in accordance with wire instructions provided by A&G Realty.  Escrow Agent shall have no liability to

- 6 -

any party in connection with its services with respect to Good Faith Deposits except for willful misconduct, gross negligence or bad faith. Escrow Agent, at its discretion, may either immediately deposit Good Faith Deposits or may hold Good Faith Deposits pending the outcome of the Auction. Good Faith Deposits held by the Escrow Agent shall be segregated by Escrow Agent, shall not be deemed to be property of the Seller's bankruptcy estate pending further order of the Court and shall be held in escrow pending further order of the Court or returned to the Bidder in accordance with these procedures.

C.       Unless otherwise agreed to by Seller, in the event that the Seller does not consummate a sale of the Leases and/or Lease Designation Rights, for any reason (other than the Bidder's failure to consummate a sale), the Seller's sole obligation and liability shall be to refund the Good Faith Deposit to the Bidder.

D.       No Bid shall be deemed to be "accepted" by Seller unless and until the Court has entered the Sale Order. No Bid shall be deemed "rejected" by the Debtors unless and until the sale of the Lease(s) and/or Lease Designation Rights has closed, the offer is rejected in writing, or the Irrevocability Period has lapsed.

6.       Bidding by Lease Counterparties

A.       A Lease Counterparty bidding on its Lease shall execute a Lease Termination Agreement and submit such executed agreement with its Bid. Any Lease Termination Agreement shall become effective only if the Lease Counterparty executing such Lease Termination Agreement is the Successful Bidder for its Lease and the Court approves such Lease Termination Agreement.

B.       A Lease Counterparty bidding on its own Lease shall not be required to submit (i) an "Offer And Bidder Registration Form;" (ii) an Adequate Assurance Package; or (iii) a Good Faith Deposit.

C.       A Lease Counterparty bidding on its own Lease may submit its Bid, which must include the Lease Termination Agreement as provided above, by the Bid Deadline.

D.       With respect to a Bid for its own Lease, a Lease Counterparty may credit bid only an amount equal to the Cure Amount for such Lease that is mutually acceptable to the Seller and such Lease Counterparty or such amount as is determined by the Court. The Lease Counterparty shall receive a dollar-for-dollar credit in the amount of the Credit Bid when such Lease Counterparty bids for such a Lease.

7.       The Auction

A.       No later than May 9, 2015, the Debtors shall file with the Court a report stating which Leases, if any, are the subject of a Qualified Bid, including a Qualified Bid for Lease Designation Rights for such Leases.

B.      Provided that the Debtors timely receive more than one Qualified Bid, then Seller shall Auction the Leases and/or the Lease Designation Rights on the Auction Date at the Auction Venue.  The Seller reserves the right to change the location and time of the Auction.  Only the Bids of Qualified Bidders, including Lease Counterparties as provided herein, will be considered at the Auction.

C.      As soon as possible, but prior to the commencement of the Auction, the Seller shall determine which of the Qualified Bids, at such time, is the Baseline Auction Bid, and shall promptly notify all Qualified Bidders of the Baseline Auction Bid.

D.      Based upon the terms of the Qualified Bids, the level of interest expressed in the Leases and/or Lease Designation Rights, and such other information as the Seller may determine to be relevant, Seller shall have the right to amend the procedures set forth herein and to adopt, at any time, in its sole and absolute discretion, such rules for the bidding process which it determines will better promote the goals of the bidding process.  Among other things, Seller shall determine acceptable bidding increments, which may be modified by the Seller during the Auction. Seller may offer the Leases individually or in packages or may otherwise conduct the Auction in the manner that it deems most appropriate for soliciting the highest or best Bids.

E.      The Seller shall receive Bids at the Auction for the Leases and/or Lease Designation Rights with the intention of selling the Leases and/or Lease Designation Rights to the Successful Bidder(s).  At the conclusion of the Auction, the Seller will determine which Bid, if any, is the highest or best Bid and which Bid, if any, is the next highest or best Bid and, based upon that determination, will announce the Successful Bid(s) and the Back-up Bid(s), respectively.

F.      Seller's determination of what constitutes the first and second "highest or best" Bids will be based upon the exercise of Seller's discretion and shall take into consideration, any applicable break-up fee or expense reimbursement, and may take into consideration modifications to any Assignment Agreement, closing risk, risk of delay, financial condition, experience, use clause, comments from the affected landlord, and such other factors as Seller may deem relevant.

G.      At the conclusion of the Auction, both the Successful Bidder(s) and the Back-up Bidder(s) shall update and re-execute their respective Assignment Agreements or designation rights agreement(s), as applicable, and any other agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid(s) and the Back-up Bid(s) were made.

H.      Formal rejection of a Bid by the Seller will not occur unless and until (i) the Seller expressly rejects a Bid in writing; or (ii) the Irrevocability Period lapses.

I.    The Successful Bidder(s) shall, within one business day of the conclusion of the Auction, supplement its Good Faith Deposit, as necessary, so that the aggregate deposit being held by Seller equals ten percent (10%) of the Successful Bid.

J.    All supplemental Good Faith Deposits shall be paid by wire transfer in accordance with wire instructions provided by A&G Realty.

K.    The establishment of any Successful Bid and a Back-up Bid does not release any Bidder from its obligations, and all Bids shall remain open until the Closing.

L.    Return of Good Faith Deposits:

(i)    The Escrow Agent will retain the Good Faith Deposits of the Successful Bidder(s) until the closing of the applicable transaction, unless otherwise ordered by the Bankruptcy Court.

(ii)   The Good Faith Deposits of the Qualified Bidders will be returned on the earlier of June 8, 2015 and the first business day following the closing of the applicable transaction.

8.    Court Approval

A.    Any objection, except for an objection based on adequate assurance of future performance, to any sale of Leases, and/or Lease Designation Rights must be filed with the Court on or before **May 13, 2015 at 4:00 p.m. (prevailing Eastern Time)**. An objection based on adequate assurance of future performance must be filed with the Court on or before **May 22, 2015 at 12:00 p.m. (prevailing Eastern Time)**. A party need not re-file a cure objection if one has previously been filed.

B.    The Sale Hearing will be held by the Court on **May 27, 2015 at 11:00 a.m. (prevailing Eastern Time)**.

C.    If there are no objections pending as of the Sale Hearing or any objections, except for unresolved objections relating to Cure Amounts, are overruled, then the proposed sale may be approved at the Sale Hearing. Any unresolved objections related to Cure Amounts will be resolved after the proposed sale has closed.

9.    The Closing

A.    Closing shall occur in accordance with the terms of the Assignment Agreement or designation rights agreement, as applicable, and the Sale Order, but in no event later than May 31, 2015. WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE SUCCESSFUL BIDDER(S) IS OF THE ESSENCE.

B.    In the event of the failure by any Successful Bidder to timely consummate a sale of the Leases and/or Lease Designation Rights, the Back-up Bidder(s) for such Leases and/or Lease Designation Rights shall be deemed the Successful Bidder(s)

#33140203 v4

without further Order of the Court and shall proceed to Closing, which shall occur as provided in section 9.A above, so long as such closing can occur prior to May 31, 2015.

C.    The Seller shall be entitled to retain the Good Faith Deposit (as supplemented) of any Successful Bidder who fails to close because of a breach or failure by such Successful Bidder and such Good Faith Deposit shall be deemed forfeited by such defaulting Successful Bidder, shall not be credited against the purchase price for the benefit of a Back-up Bidder, and Seller specifically reserves the right to seek all available damages from the defaulting Bidder.

D.    The balance of the purchase price shall be paid by the Successful Bidder(s) by wire transfer by wire transfer in accordance with wire instructions provided by A&G Realty at the Closing.

E.    With respect to an approved sale of Leases, at the Closing, all undisputed cure amounts shall be paid to the Lease Counterparty.  Disputed cure amounts shall be adjudicated by the Court, but an amount equal to the Cure Claim shall be escrowed at the Closing.  Cure procedures with respect to an approved sale of Lease Designation Rights will be as provided in the designation rights agreement.

10.    <u>Other Provisions</u>

A.    <u>Disclaimer</u>

(i)    Any sale or other disposition of all or a portion of the Leases and/or the Lease Designation Rights shall be without representations or warranties of any kind, nature or description by the Seller, its agents or representatives. The Leases shall be transferred on an "as is" and "where is" basis.

(ii)    Any and all Data provided to prospective Bidders:

a.    has been prepared for informational purposes only; and

b.    is being furnished solely for use by Bidders in considering their interest in acquiring the Leases and/or Lease Designation Rights.

(iii)    By accepting Data from the Seller and/or A&G Realty, the recipient acknowledges and agrees that the Data has been prepared to assist the recipient in making its own evaluation of the Leases and/or Lease Designation Rights and the Data does not purport to be all inclusive or to contain all of the information that a Bidder may desire.  In all cases, Bidders should conduct their own investigation and analysis of the Leases and/or Lease Designation Rights, conduct site inspections, and scrutinize all of the Data.  A&G Realty has assumed no responsibility for independent verification of any of the Data and has not in fact in any way audited such information.  Seller and A&G Realty are not making nor will they make and expressly disclaim making any written or oral statements,

- 10 -

representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Leases and/or Lease Designation Rights and with respect to the accuracy, reliability or completeness of any Data, except as expressly stated in a contract executed by Seller.   Seller and A&G Realty and their respective partners, officers, directors and employees, affiliates and representatives, expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.

    (iv)    Each Bidder, by submitting a Bid for the Leases and/or Lease Designation Rights, shall be deemed to acknowledge and represent:

        a.    that it is bound by these Bidding Procedures;

        b.    that it had an opportunity to inspect and examine the Leases and to review all pertinent documents and information with respect to the Leases prior to making its offer and that it relied solely on that review and upon its own investigation and inspection of the Leases in making its Bid; and

        c.    that it is not relying upon any written or oral statements, representations, or warranties of the Seller, or the Seller's agents or representatives.

B.    All of the Seller's right, title and interest in and to the Leases and/or Lease Designation Rights shall be assigned and sold, pursuant to sections 363(f) and (m) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances and security interests, which shall attach to the net proceeds received by the Seller as a result of the sale with the same force and effect that they now have, subject to further Order of the Court.

C.    Except to the extent of the applicability of section 1146(c) of the Bankruptcy Code, all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of one or more Leases and/or Lease Designation Rights shall be the sole responsibility of the Successful Bidder(s) and shall be paid to the Seller at the Closing.

D.    The Seller, at or before the Auction, may impose such other and additional terms and conditions as it may determine to be in the best interests of the Seller, the Seller's bankruptcy estate, and creditors.

E.    The Seller may reject any Bid that it deems to be:  (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules or these Bid Procedures; or (iii) contrary to the best interest of the Seller, the Seller's bankruptcy estates and creditors.  Such rejection may be made at any time prior to Court Approval.

#33140203 v4

F.      Any and all disputes related or pertaining to or resulting or arising from the marketing process, the Auction, the sale of the Leases and/or Lease Designation Rights, and/or the conduct of the Seller, A&G Realty and/or any of Seller's other professional advisors shall be adjudicated solely by the Court.  The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Court for all such matters.

G.      <u>Notice</u>:  Any correspondence or required notice shall be addressed as follows and shall be sent by overnight mail or electronic mail.  Bidders, including Lease Counterparties that seek to submit Bids, shall be required to provide the Sellers with a valid e-mail address, and any Bidder agrees to consent to receive e-mail notice and correspondence in connection with these Bidding Procedures.

#33140203 v4

**Exhibit A**

**Offer and Bidder Registration Form**

## OFFER AND BIDDER REGISTRATION FORM

Bidder, _____, hereby:

- Offers to buy the following Leases for the price set forth below, pursuant to this Offer & Bidder Registration Form and the terms and conditions of the accompanying executed Assignment Agreement,[1] and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the Bidding Procedures.

Bidder hereby warrants and represents:

(a)    Bidder offers to purchase the Leases listed on the attached <u>Annex 1</u>.

(b)    Bidder understands that unless otherwise agreed to by Seller the sale must close on or before May 31, 2015.

(c)    Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bidding Procedures.

(d)    Bidder has received, reviewed and understands the terms and conditions of the standard form Assignment Agreement.

(e)    Each bid along with any subsequent bid is irrevocable pursuant to the terms of the Bidding Procedures.

(f)    Each bid is and shall be a good faith, bona fide, irrevocable offer to purchase one or more Leases on an all-cash, as-is, where-is basis, with no contingencies.

(g)    Bidder had an opportunity to inspect and examine the Leases and to review all other pertinent documents with respect to the Leases prior to making its bid and Bidder relied solely on that review and upon its own investigation and inspection of the Leases in making its bid.  Bidder is not relying upon any written or oral statements, representations, or warranties of the Debtors, Debtors' counsel and/or A&G or any of Debtors' other agents or representatives.

(h)    Bidder is either not represented by a broker seeking a commission, or if Bidder is represented by a broker, Bidder is wholly responsible for its broker's commission.

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Debtors' Motion for (I) and Order (A) Establishing Bid Procedures for the Sale of Certain of the Debtors' Nonresidential Real Property Leases, and (B) Granting Certain Related Relief and (II) and Order (A) Approving the Sale of Certain of the Debtors' Nonresidential Real Property Leases Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Leases, and (C) Granting Certain Related Relief (the "<u>Motion</u>") or the Bidding Procedures and the form of Assignment Agreement attached to the Motion.

#33140203 v4

Bidder hereby indemnifies and agrees to hold the Debtors and A&G harmless from claims of a broker seeking a commission based upon Bidder's bid.

(i)     Bidder intends to operate the Leases listed in Annex 1 using the tradename: _____ (the "<u>Tradename</u>").

(j)     Bidder currently operates ___ stores using the Tradename.

(k)     Bidder's intended use of the premises complies completely with the use clause in the Leases listed in <u>Annex 1</u>, except as follows: _____ _____. (Attach additional pages as necessary)

(l)     Bidder currently operates stores in shopping or strip centers owned and/or managed by the landlords of the Leases listed in <u>Annex 1</u>, except as follows: _____ _____. (Attach additional pages as necessary)

(m)     Bidder consents to receive e-mail notice and correspondence in connection with this Bid.

    a.   E-mail address: _____

(n)     If needed to prove to the Bankruptcy Court that Bidder can provide "adequate assurance of future performance" (as required by the Bankruptcy Code), Bidder will make the following available to testify at the Sale Hearing:

    a.   Name: _____

    b.   Title: _____

#33140203 v4

## ANNEX 1

| Lease (including store number) | Bid Price |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

**Exhibit B**

**Assignment Agreement**

## ASSUMPTION AND ASSIGNMENT AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**") is made as of _____, 2015, by and between _____, a _____ _____ ("**Assignor**"), and _____, a _____ _____ ("**Assignee**").

WHEREAS, Assignor, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (together with any other court having proper jurisdiction, the "**Bankruptcy Court**"); and

WHEREAS, Assignor has agreed to assign and Assignee has agreed to assume the real property lease(s) listed on the attached Schedule A (collectively, the "**Assigned Leases**," and each, an "**Assigned Lease**") with respect to the premises set forth on Schedule A (the "**Premises**") on the terms and conditions set forth herein and as authorized under sections 363 and 365 of the Bankruptcy Code, and Assignor has determined that an assumption and assignment in accordance with sections 363 and 365 of the Bankruptcy Code is in the best interests of its creditors and interest holders.

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, Assignor and Assignee hereby agree as follows:

1.    Assignment and Assumption.

(a)    Assignor hereby sells, transfers, conveys, assigns and sets over to Assignee and its successors and assigns all of Assignor's right, title and interest in and to the Assigned Leases.

(b)    Assignee hereby assumes and undertakes to pay, perform and discharge all of the obligations and duties of Assignor as tenant or lessee under and with respect to the Assigned Leases, whether accruing before, on or after the date of this Agreement.

2.    Payment of Purchase Price.  Assignee shall, on the date hereof, deliver the purchase price for the Assigned Leases in the amount of $_____ in immediately available funds wired to the account specified by Assignor plus the amount of any security deposit applicable to any Assigned Lease that has not been applied in accordance with the terms of the relevant Assigned Lease.

3.    Assumption of Liabilities.  In addition to assuming all obligations on the part of the tenant or lessee under and with respect to each Assigned Lease, including, but not limited to, accrued but unbilled adjustments for common area maintenance, utilities, real estate taxes, insurance and other operating expenses, Assignee shall assume and cure all outstanding liabilities with respect to each Assigned Lease, including, without limitation, the payment to the landlord under the Assigned Lease of overdue rent and other charges and the deposit of any amount required to meet the security deposit requirements of the Assigned Lease.

4.      No Further Liability of Assignor.  From and after the date hereof, Assignor shall have no further obligations or duties with respect to any Assigned Lease, and Assignee agrees to indemnify Assignor, and hold Assignor harmless, from and against all loss, cost and expense suffered or incurred by Assignor as a result of any failure on the part of Assignee to fulfill its obligations as required by this Agreement under and with respect to the Assigned Leases.

5.      Further Assurances.  At any time and from time to time after the date hereof, without further consideration, (a) at the request of Assignee, Assignor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment and confirmation or consents and take such other action as Assignee may reasonably request as necessary or desirable in order to more effectively transfer, convey and assign to Assignee all of Assignor's rights to the Assigned Leases, and (b) at the request of Assignor, Assignee shall execute and deliver such other instruments of assumption and confirmation and take such other action as Assignor may reasonably request as necessary or desirable in order to more effectively evidence Assignee's assumption of Assignor's obligations as tenant or lessee under and with respect to the Assigned Leases.

6.      "As Is, Where Is" Transaction.  Assignee hereby acknowledges and agrees that Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to any Assigned Lease.  Without in any way limiting the foregoing, Assignor hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any Assigned Lease.  Assignee further acknowledges that Assignee has conducted an independent inspection and investigation of the physical condition of the Premises and all such other matters relating to or affecting the Assigned Leases as Assignee deemed necessary or appropriate and that in proceeding with its acquisition of the Assigned Leases, Assignor is doing so based upon such independent inspections and investigations.  Accordingly, Assignor accepts the Premises and the Assigned Leases "AS IS" and "WHERE IS."

7.      Miscellaneous.

(a)      This Agreement is binding upon and shall inure to the benefit of Assignor's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under chapter 7 or chapter 11 of the Bankruptcy Code, and is binding upon and shall inure to the benefit of Assignee's successors and assigns.

(b)      Each of Assignor and Assignee warrants and represents that it has the power and authority to enter into this Agreement.

(c)      This Agreement and any additional agreements delivered in connection herewith together contain the entire agreement between the parties hereto, and except as otherwise specifically set forth herein, supersede all prior agreements and undertakings between the parties hereto relating to the subject matter hereof.

(d)      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument, and presentation of any copy of this Agreement, whether original or facsimile

2

(including in portable document format (pdf)), signed by Assignor and Assignee shall constitute sufficient proof of this Agreement.

      (e)    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law, and any disputes shall be resolved by the Bankruptcy Court, which shall have exclusive jurisdiction at all times during which Assignor's bankruptcy case is pending.

      (f)    Any and all sales, transfer and recording taxes, stamp taxes or similar taxes or fees, if any, relating to the assignment of the Assigned Leases shall be the sole responsibility of Assignee and shall be paid, if applicable, to the proper governing body on the date of this Agreement.

      (g)    This Agreement may not be amended orally but rather may be amended only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

*[Signatures are on the following page.]*

#33140203 v4

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

ASSIGNOR:

[Name of Assignor]

By:_____

    Name:
    Title:

ASSIGNEE:

[Name of Assignee]

By:_____

    Name:
    Title:

**Schedule A**

**Assigned Leases**

<u>Premises</u>
(street address, including
suite number and store
number)

<u>Lease Description</u>
(description of lease instruments)

**<u>Exhibit C</u>**

**Lease Termination Agreement**

## LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (this "**Agreement**") is made as of _____, 2015, by and between _____, a _____ _____ ("**Landlord**"), and _____, a _____ _____, as debtor and debtor-in-possession ("**Tenant**").

WHEREAS, Landlord and Tenant entered into a certain lease dated _____ (as the same may have been amended from time to time, and together with any and all other agreements affecting the subject premises, the "**Lease**"), covering certain premises commonly known as _____ (the "**Premises**"); and

WHEREAS, Tenant, along with its affiliated debtors and debtors in possession, has filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (together with any other court having proper jurisdiction, the "**Bankruptcy Court**"); and

WHEREAS, subject to the conditions set forth herein, the parties desire to terminate the Lease effective on the earlier of the date the Tenant vacates premises and May 31, 2015 (the "**Termination Date**").

NOW, THEREFORE, in consideration of the premises and the mutual agreements contained herein, Landlord and Tenant hereby agree as follows:

11.    <u>Payment of Purchase Price</u>.  Landlord shall on the Termination Date deliver the purchase price for the Lease in the amount of $_____, which amount includes $_____ constituting a credit bid for cure claim amounts, in immediately available funds wired to the account specified by Tenant plus the amount of any security deposit applicable to the Lease that has not been applied in accordance with the terms of the Lease.

12.    <u>Termination and Surrender</u>.

A.    As of the Termination Date, Tenant hereby surrenders the Premises to Landlord and does hereby give, grant and surrender unto Landlord all of Tenant's right, title and interest in and to the Premises, including, without limitation, all of Tenant's right, title and interest in, to and under the Lease, and Landlord hereby accepts such surrender.  Except as otherwise expressly provided herein, each of the parties hereto acknowledges performance of all obligations of the other party under the Lease or otherwise in connection with the Premises through and including the Termination Date.  The Lease is hereby agreed to be null and void and of no further force and effect as of the Termination Date.  In addition, any and all rights and obligations of the parties that may have arisen in connection with the Premises shall be deemed to have expired and terminated as of the Termination Date.

B.    As of the Termination Date, except as to the obligations of Tenant and Landlord expressly set forth in this Agreement, Tenant and Landlord hereby mutually release each other and their respective successors and assigns of and from any and all claims, damages,

obligations, liabilities, actions and causes of action of every kind and nature whatsoever that may arise under or in connection with the Lease before, on or after the Termination Date, including, without limitation, any claims under section 502(b)(6) of the Bankruptcy Code.

C.    To the extent Landlord has filed or files any proof of claims with respect to the Lease or the Premises, Landlord consents to the expungement of such claims, with prejudice.

13.    <u>Further Assurances</u>.    At any time and from time to time after the date hereof, without further consideration, (a) at the request of Landlord, Tenant shall execute and deliver such other instruments of sale, transfer, conveyance and termination or consents and take such other action as Landlord may reasonably request as necessary or desirable in order to more effectively transfer, convey and surrender to Landlord all of Tenant's rights to the Premises and under the Lease, and (b) at the request of Tenant, Landlord shall execute and deliver such other instruments of assumption and confirmation and take such other action as Tenant may reasonably request as necessary or desirable in order to more effectively evidence Landlord's acceptance of Tenant's surrender of the Lease.

14.    <u>"As Is, Where Is" Transaction</u>.    Landlord hereby acknowledges and agrees that Tenant makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Premises or the Lease.    Accordingly, Landlord accepts the Premises "AS IS" and "WHERE IS."

15.    <u>Miscellaneous</u>.

A.    This Agreement is binding upon and shall inure to the benefit of Tenant's successors and assigns, including, without limitation, a trustee, if any, subsequently appointed under chapter 7 or chapter 11 of the Bankruptcy Code, and is binding upon and shall inure to the benefit of Landlord's successors and assigns.

B.    Each of Tenant and Landlord warrants and represents that it has the power and authority to enter into this Agreement.

C.    This Agreement and any additional agreements delivered in connection herewith together contain the entire agreement between the parties hereto, and except as otherwise specifically set forth herein, supersede all prior agreements and undertakings between the parties hereto relating to the subject matter hereof.

D.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument, and presentation of any copy of this Agreement, whether original or facsimile (including in portable document format (pdf)), signed by Tenant and Landlord shall constitute sufficient proof of this Agreement.

E.    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to principles of conflicts of law, and any disputes shall be resolved by the Bankruptcy Court, which shall have exclusive jurisdiction at all times during which Tenant's bankruptcy case is pending.

#33140203 v4

       F.      Any and all sales, transfer and recording taxes, stamp taxes or similar taxes or fees, if any, relating to the termination of the Lease shall be the sole responsibility of Landlord and shall be paid, if applicable, to the proper governing body on the Termination Date.

       G.      This Agreement may not be amended orally but rather may be amended only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

*[Signatures are on the following page.]*

#33140203 v4

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement as of the date first written above.

TENANT:

[Name of Tenant]

By:_____

    Name:
    Title:

LANDLORD:

[Name of Landlord]

By:_____

    Name:
    Title: