IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**RS Legacy Corp.**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10197 (BLS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 3651, 3689, 3700, and 3786 |

## OPINION[2]

Before the Court is Mark Haywood's (the "Movant") motion for allowance and payment of an administrative expense claim under 11 U.S.C. § 503(b)(4) (the "Motion").[3] The Liquidating Trustee of the RSH Liquidating Trust and the United States Trustee (the "UST") each filed an objection to the Motion.[4] For the reasons set forth below, the Court will deny the Motion.

## I.   BACKGROUND

On February 5, 2015, the above-captioned debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On the next day, the Court held a "first day" hearing where it approved, among other things, the Debtors' motion to

---

[1] The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): RS Legacy Corporation (f/k/a RadioShack Corporation) (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RS Legacy Customer Service LLC (f/k/a RadioShack Customer Service LLC) (8866); RS Legacy Global Sourcing Corporation (f/k/a RadioShack Global Sourcing Corporation) (0233); RS Legacy Global Sourcing Limited Partnership (f/k/a RadioShack Global Sourcing Limited Partnership) (8723); RS Legacy Global Sourcing, Inc. (f/k/a RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); RS Legacy Finance Corporation (f/k/a Tandy Finance Corporation) (5470); RS Legacy Holdings, Inc. (f/k/a Tandy Holdings, Inc.) (1789); RS Legacy International Corporation (f/k/a Tandy International Corporation) (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417).

[2] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

[3] D.I. 3651.

[4] Doc. Nos. 3689 & 3700.

maintain certain customer programs and honor related prepetition obligations to their customers (the "Customer Programs Motion").[5] Among the obligations the Customer Programs Motion sought authorization to pay or honor were outstanding prepetition gift cards (the "Gift Card Claim Holders"). A few months later, the Debtors filed a motion to establish bar dates for filing claims (the "Bar Date Motion").[6] The Bar Date Motion excluded the Gift Card Claim Holders from having to file claims by a date certain. The Court granted the Customer Programs Motion and the Bar Date Motion.[7]

During the pendency of this case, the Debtors, the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the Texas Attorney General's Office ("Texas") were actively involved in an adversary proceeding that directly involved the Gift Card Claim Holders. On June 18, 2015, Texas initiated an adversary proceeding (the "Texas Adversary Proceeding") by filing a complaint (the "Complaint").[8] On the same date, Texas filed a motion for summary judgment[9] (the "Summary Judgment Motion") and a proof of claim[10] on behalf of Texas consumers holding unredeemed gift cards. The Complaint asserted three counts: (1) a declaration that the unredeemed gift cards were entitled to priority status under section 507(a)(7); (2) a declaration that Texas had standing to file a proof of claim on behalf of the Gift Card Claim Holders residing in Texas; and (3) a declaration that any remaining gift card funds after the Gift Card Claim Holders were paid constituted unclaimed property. The Debtors filed a motion to dismiss

---

[5] D.I. 109.
[6] D.I. 2108.
[7] Doc. Nos. 894 & 2214.
[8] Adv. Proc. 15-50870, D.I. 1.
[9] Adv. Proc. 15-50870, D.I. 3. The Summary Judgment Motion asserted that there was no material factual disputes and requested summary judgment on all the counts contained in the Complaint.
[10] Claim No. 4515.

the Complaint, and also opposed the Summary Judgment Motion.[11]    The Creditors'

Committee intervened in the Texas Adversary Proceeding,[12] and joined in the Debtors'

opposition to the Summary Judgment Motion.[13]    After the Creditors' Committee

intervened, the Movant also intervened and then filed his own summary judgment motion

(the "Movant's Summary Judgment Motion") seeking priority treatment for all the Gift

Card Holders Claims.[14]

On July 17, 2015, the Movant commenced his own adversary proceeding by filing

a complaint (the "Movant's Complaint").[15]    The Movant's Complaint contained two

counts: (1) a declaratory judgment certifying the Gift Card Claim Holders as a class;[16]

and (2) a declaratory judgment that the Gift Card Claim Holders are entitled to priority

under section 507(a)(7).  In his adversary proceeding, the Movant also filed a motion for

class certification (the "Class Certification Motion").[17]

While these adversary proceedings were pending, the Debtors, Creditors'

Committee, Texas, and certain state attorneys general—including, New Hampshire, New

York, Oregon, Pennsylvania, and Tennessee (collectively, the "Multistate Working

Group")—were engaged in substantial negotiations to resolve the issues involving the

Gift Card Claim Holders.  Although the Movant eventually participated in the

negotiations, the Movant did not participate in the initial settlement discussions.  On

---

[11] Adv. Proc. 15-50870, Doc. Nos. 7 & 16.

[12] Adv. Proc. 15-50870, D.I. 19.

[13] Adv. Proc. 15-50870, D.I. 23.

[14] Adv. Proc. 15-50870, D.I. 26.

[15] Adv. Proc. 15-50930, D.I. 1.

[16] The Movant filed a proof of claim on behalf of himself and "on behalf of all others similarly situated." (Claim No. 5437).

[17] Adv. Proc. 15-50930, D.I. 5.

Case 15-10197-BLS    Doc 3837    Filed 03/17/16    Page 4 of 14

August 28, 2015, the Debtors filed a motion for approval of a comprehensive settlement (the "Settlement")[18] among the Debtors, the Creditors' Committee, and Texas (collectively, the "Parties"). The Multistate Working Group supported the Settlement.[19] The Settlement resolved the Texas Adversary Proceeding and the Parties reached terms on the priority treatment of the Gift Card Claim Holders, notice procedures, and the unclaimed property issue. The Movant objected to the Settlement[20] and filed a motion to estimate and for temporary allowance of his class claim (the "Estimation Motion").[21] On September 10, 2015, the Court approved the Settlement, and denied both the Estimation Motion and Class Certification Motion.

On October 2, 2015, the Court confirmed the Debtors' First Amended Joint Plan of Liquidation (the "Plan").[22] The Plan established the RSH Liquidating Trust and appointed the Liquidating Trustee. On December 7, 2015, the Movant filed the Motion seeking reimbursement of expenses and compensation pursuant to sections 503(b)(3)(D) and 503(b)(4). The Movant requests the allowance and payment of an administrative claim in the total amount of $203,105.51.[23] The UST and the Liquidating Trustee objected to the Motion. The Court heard oral argument on February 10, 2016 and took the matter under advisement. The matter has been fully briefed and is ripe for decision.

---

[18] D.I. 2870.

[19] Doc. Nos. 2886, 2889, 2890, 2891, & 2903.

[20] D.I. 2902.

[21] D.I. 2927.

[22] D.I. 3114.

[23] Of this amount, $169,620 represents Movant's counsel fees, $29,584 represents Movant's local counsel fees, and the remaining amount is counsel's expenses.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(B).

## III.    THE PARTIES' POSITIONS

The Movant argues that his efforts substantially contributed to the resolution of the Gift Card Claim Holders.  The Movant contends that he obtained significant concessions and recoveries for the benefit of the Gift Card Claim Holders, not just the Movant, by (i) filing a class proof of claim, an intervention motion in the Texas Adversary Proceeding, the Class Certification Motion, and the Movant's Summary Judgment Motion; (ii) persuading the State of Virginia to abandon its unclaimed property claim; (iii) obtaining agreements to honor certain types of gift cards; and (iv) improving the notice to the Gift Card Claim Holders.  The Movant asserts that, but for his involvement, the Gift Card Claim Holders would not have received a meaningful recovery.  The Movant claims that he facilitated the Settlement by breaking the litigation deadlock and pressuring the Parties to settle.  The Movant emphasizes that he was the only party that tenaciously advocated for treating all the Gift Card Claim Holders as priority claimants.

The Liquidating Trustee objects to the Motion on grounds that the Movant has not carried his burden in showing that his alleged contribution provided an actual and direct benefit to this case.  The Movant presented no evidence, by testimony or otherwise, to

overcome the presumption that he acted other than in his own self-interest. The Liquidating Trustee also asserts that the Movant did not establish a causal connection between his involvement and subsequent positive developments. The Liquidating Trustee further argues that the Movant has not satisfied section 503(b)(3)(D) because his services were largely duplicative of the Parties and the Multistate Working Group who were actively working towards resolving the issues relating to the Gift Card Claim Holders.

Likewise, the UST argues that the Movant's involvement does not satisfy section 503(b)(3)(D) because he did not directly and materially contribute to the Debtors' case.[24] The Movant's routine actions were in the ordinary course of representing his interests. Even if the Movant's actions benefited the Gift Card Claim Holders, the UST contends that any benefit the estate received was incident to the Movant protecting his own interests. The UST asserts that the Movant's two main litigation initiatives—the Class Certification Motion and objecting to the Settlement—were both aimed at furthering his own position in this case. The UST contends therefore that the Movant has not shown his efforts directly benefited the entire case.

## IV.  DISCUSSION

Section 503(b)(4) allows a court to grant an administrative expense claim for "reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expenses is allowable under . . . [section 503(b)(3)(D)]." Allowance of attorneys' fees under section 503(b)(4) is therefore contingent upon establishing a

---

[24] The UST and Liquidating Trustee object to the Motion on many of the same grounds. For purposes of brevity, the Court will not repeat these arguments.

claim under section 503(b)(3)(D). *See Xifaras v. Morad (In re Morad)*, 328 B.R. 264, 269 (B.A.P. 1st Cir. 2005) (holding that legal fees under section 503(b)(4) are allowable only if a creditor can demonstrate a qualifying occurrence under section 503(b)(3)). That subsection provides, in relevant part, that the court may allow "the actual, necessary expenses, . . . incurred by a creditor . . . in making a *substantial contribution* in a *case* under chapter 9 or 11 of this title . . . ." 11 U.S.C. § 503(b)(3)(D) (emphasis added). The burden rests with the movant to prove by a preponderance of the evidence that it made a substantial contribution to the debtor's case. *E.g., In re Bayou Grp., LLC*, 431 B.R. 549, 557 (Bankr. S.D.N.Y. 2010); *In re Syntax-Brillian Corp.*, No. 08-11407, 2009 WL 1606474, at *2 (Bankr. D. Del. June 5, 2009). A movant's acts are analyzed in hindsight with particular scrutiny upon the actual benefits provided to the entire bankruptcy case. *In re Worldwide Direct, Inc.*, 334 B.R. 112, 121 (Bankr. D. Del. 2005).

Section 503(b)(3)(D) aims to balance two objectives: encouraging meaningful creditor participation in the chapter 11 process while keeping administrative expenses to a minimum to enhance creditor recoveries. *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). Because the Bankruptcy Code does not define "substantial contribution," courts have relied on these competing yet equally important policy objectives in formulating a standard that seeks to strike a balance between the two. While courts differ slightly on what constitutes a substantial contribution, nearly all courts agree that the contribution must provide a "tangible, clearly demonstrable benefits to the estate." 5 *Collier on Bankruptcy*, ¶ 503.10[a] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2015) (collecting cases). As with all of the Bankruptcy Code's

priority statutes, section 503(b)(3) is strictly construed to keep administrative expenses at a minimum. *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 548 (Bankr. D. Del. 1998). "[C]ompensation under section 503 is reserved for those rare and extraordinary circumstances when the creditor's involvement truly enhances the administration of the estate." *In re Dana Corp.*, 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008).

In the Third Circuit, a substantial contribution means "an actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron*, 27 F.3d at 944. The movant must establish a causal connection between its involvement and the contribution to the debtor's case. *In re Worldwide Direct*, 334 B.R. at 121. A creditor is presumed to act in a self-interested manner, and as an initial matter, must show that its efforts went beyond self-protection. *Id.*; *see, e.g., In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012); *In re Dana Corp.*, 390 B.R. at 108 ("Creditors face an especially difficult burden in passing the substantial contribution test since they are presumed to act primarily for their own interests."). To overcome this presumption, the movant must offer "something more than self-serving statements regarding its involvement in the case." *In re Worldwide*, 334 B.R. at 123 (internal citation and quotation marks omitted). The benefit conferred to the estate must be more than an incidental one that typically arises from the creditor protecting its own interests. *Lebron*, 27 F.3d at 944 (explaining that "substantial contribution" should be construed to exclude reimbursement for activities of creditors that are "designed primarily to serve their own interest").

While the phrase "substantial contribution" does not lend itself to a set of exacting criteria, a well-developed body of case law teaches that the sort of contribution that

reaches the substantial threshold is exceedingly narrow: extensive and active participation alone does not qualify, *In re Bayou Grp.*, 431 B.R. at 557; services that are duplicative of other estate professionals are insufficient, *In re Worldwide Direct*, 334 B.R. at 134; activities that primarily further the movant's self-interest do not suffice, *Lebron*, 27 F.3d at 944; and expected or routine activities in a chapter 11 case—such as encouraging negotiation among parties, commenting and participating in successful plan negotiations, and reviewing documents—generally do not constitute a substantial contribution, *In re American Plumbing & Mech., Inc.*, 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005); *In re Columbia Gas*, 224 B.R. at 548. A substantial contribution is one that confers a benefit to the entire estate and fosters the reorganization process. *Lebron*, 27 F.3d at 944.

The Movant has not overcome the presumption that his efforts were not primarily designed to serve his own interests. As acknowledged by the Movant, his principal objective was to obtain priority treatment for all the Gift Card Claim Holders. Even when the Debtors agreed to the Settlement, which provided for priority status to certain Gift Card Claim Holders, the Movant continued to object to the Settlement. Such opposition in the face of a global resolution among many sophisticated parties after months of negotiations and numerous pleadings tends to show the Movant was self-motivated in his quest for priority status for the Gift Card Claim Holders. The Court takes no issue with the Movant continuing to object to the Settlement and advocating for the best possible treatment for the Gift Card Claim Holders. However, efforts undertaken by a creditor that are predominantly aimed at furthering its own position in a case does not satisfy section 503(b)(3)(D). *Id.*; *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34,

39 (Bankr. D.N.J. 1996) ("[W]here creditor self-interest appears to dominate a creditor's actions courts have not allowed substantial contribution claims."). Indeed, if the Movant had accomplished his objective and obtained priority treatment for all the Gift Card Claim Holders, it would have reallocated distributions under the Plan to the detriment of the general unsecured creditors. The Movant's intended end result therefore would diminish the funds available to a certain group of stakeholders while not enhancing overall recoveries to the creditor body. *See In re Bayou Grp.*, 431 B.R. at 557.

Additionally, the Movant continued to seek class certification of the Gift Card Claim Holders even after the Parties and the Multistate Working Group agreed upon the Settlement. The Movant certainly had a strong economic self-interest in obtaining certification of the class because Movant's counsel would then be entitled to attorneys' fees. *See* Fed. R. Civ. P. 23(h) (stating that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"). Nothing the Movant did went beyond what is expected from a general unsecured creditor trying to enhance his recovery and have his counsel fees paid. *See In re Essential Therapeutics, Inc.*, 308 B.R. 170, 174 (Bankr. D. Del. 2004) ("Creditors are presumed to be self-interested unless they establish that their actions are designed to benefit others who would foreseeably be interested in the estate."). Thus, the Court finds that the Movant is not entitled to compensation under section 503(b)(3)(D) because he has not overcome the presumption that his efforts transcended self-protection. *Lebron*, 27 F.3d at 944.

Even assuming the Movant overcame the presumption by showing that the benefit received by the estate was more than an incidental one arising out of protecting his own self-interest, the Movant presented no evidence showing that his efforts resulted in an actual and demonstrable benefit to the Debtors' estate. The Movant posits that, but for his involvement, the Gift Card Claim Holders would not have received a meaningful recovery.

The Movant has not established a causal connection between his involvement and the treatment of the Gift Card Claim Holders. The Movant operates under the false assumption that a causal connection exists because his involvement was followed by the Settlement. But merely because the Movant's participation was followed eventually by the Settlement does not mean that the Movant's services caused the Settlement. *In re Granite Partners*, 213 B.R. 440, 452 (Bankr. S.D.N.Y. 1997) ("The fallacy of logic— *post hoc, ergo propter hoc*—reasons from sequence to consequence, assuming a causal connection simply because one event follows another. This however, is speculation not proof."). It is uncontroverted that there were many "cooks around the pot" in the sense that many parties had a similar agenda: enhancing the recoveries to the Gift Card Claim Holders and, more generally, resolving the issues related to these claimants to allow the case to move forward to confirmation. The Movant provides no evidence on what special ingredient he added that galvanized the Parties to enter into the Settlement. *See In re Worldwide Direct*, 334 B.R. at 125 (requiring movant to present evidence as to its individual contribution when other parties were similarly situated and providing the same services). With the Parties and Multistate Working Group actively involved in this case,

the onus is on the Movant to identify his unique contribution. Indeed, this is not a case where the Movant was the only party looking after the interests of the Gift Card Claim Holders.[25] The Movant has not demonstrated that it was his services, rather than one of the other parties, that resulted in the beneficial treatment to the Gift Card Claim Holders.

Furthermore, the Court cannot draw a causal connection between the Movant's involvement and the outcome for the Gift Card Claim Holders because the Movant's services were duplicative of other paid professionals.[26] The Movant's efforts largely followed the acts of other parties: the Movant commenced an adversary proceeding seeking priority status for the Gift Card Claim Holders, but this occurred nearly a month after Texas filed the Complaint that sought similar relief; the Movant filed a claim on behalf of the Gift Card Claim Holders, but Texas had already filed a class proof of claim; the Movant's Summary Judgment Motion was not filed until after Texas filed the Summary Judgment Motion—notably, both of these motions sought priority treatment for the Gift Card Claim Holders; and lastly, the Movant did not participate in settlement discussions until after the Parties and Multistate Working Group had already begun negotiations. Absent the Movant's involvement, there is nothing in the record to suggest that the resolution of the issues relating to the Gift Card Claim Holders would have turned out materially differently.

---

[25] Texas and the Creditors' Committee had interests that were aligned with the Gift Card Claim Holders, and these parties along with the Debtors and Multistate Working Group, were actively seeking a comprehensive settlement.

[26] The Movant providing services that were redundant of other paid professionals is an independent ground to deny his request for compensation under section 503(b)(3)(D). *In re Bayou Grp.*, 431 B.R. at 557; *In re Essential Therapeutics*, 308 B.R. at 175.

- 13 -

The Movant's extensive involvement also does not constitute a substantial contribution under section 503(b)(3)(D). *E.g., In re Bayou Grp.*, 431 B.R. at 558; *In re Worldwide Direct*, 334 B.R. at 121. By its terms, section 503(b)(3)(D) unequivocally mandates results. Unlike section 330(a) where courts consider whether the services were reasonably likely to result in benefit to the estate at the time they were performed, section 503(b)(3)(D) requires a *post hoc* analysis of the actual benefit conferred to the case. The record reflects that the sum of the Movant's efforts resulted in the Parties agreeing to minor revisions to the Settlement; namely, revisions to the email noticing to the Gift Card Claim Holders, and making certain public filings regarding the Gift Card Claim Holders.[27] It is a close call whether these revisions materially benefited the Gift Card Claim Holders because the Settlement already had notification requirements. It is not difficult to conclude, however, that such minor revisions to a settlement that only involved a subset of the Debtors' unsecured creditors did not foster and enhance the progress of this case.[28] *See Lebron*, 27 F.3d at 944 ("Services which substantially contribute to a case are those which foster and enhance . . . the progress of reorganization.").

---

[27] The Liquidating Trustee acknowledges it made these revisions to the Settlement because of the Movant.
[28] Even if this Court agrees that the Movant's efforts provided a direct and demonstrable benefit to the Gift Card Claim Holders, that does not mean he satisfies section 503(b)(3)(D).

- 13 -

## V.    CONCLUSION

For all these reasons, the Court will deny the Motion.   An appropriate order will

issue.

**BY THE COURT**:

Dated: March 17, 2016
Wilmington, Delaware

Brendan Linehan Shannon
Chief United States Bankruptcy Judge